Christopher Sproul (State Bar No. 126398)
Christopher Hudak (State Bar No. 282283)
Danielle Rathje (State Bar No. 300167)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone:  (415) 533-3376
Facsimile:  (415) 358-5695
Emails:  csproul@enviroadvocates.com,
christopherwhudak@gmail.com,
dnrathje@gmail.com

Fredric Evenson (State Bar No. 198059)
Law Offices of Fredric Evenson
109 Quarry Lane
Santa Cruz, CA 95060
Telephone: (831) 454-8216
Facsimile:  (415) 358-5695
Email: ecorights@earthlink.net

Attorneys for Plaintiff
ECOLOGICAL RIGHTS FOUNDATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, a non-profit corporation, | Case No. 16-cv-05254-MEJ |
| Plaintiff, | PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, an agency of the Department of Homeland Security, | |
| Defendants. | Hearing date: May 11, 2017<br>Time: 10:00 a.m.<br>Location: Courtroom B, 15th Floor. |

# TABLE OF CONTENTS

I.      UPDATED STATEMENT OF FACTS.................................................................1

II.     FEMA HAS VIOLATED FOIA'S MANDATORY RESPONSE DEADLINES ....................3

        A.      FEMA's Final Determinations Were Untimely, Its Document Productions Have Been
                Consistently Late, and Documents are Still Being Improperly Withheld ...................3

        B.      FEMA Failed to Promptly Refer Documents to Other Agencies ................................6

        C.      EcoRights' Timeliness Claims are Not Moot................................................7

III.    FEMA HAS FAILED TO DEMONSTRATE THAT IT PROPERLY WITHHELD
        MATERIAL PURSUANT TO FOIA EXEMPTIONS............................................8

        A.      FEMA Has Failed To Provide a Coherent *Vaughn* Index ...........................8

        B.      FEMA Has Failed to Demonstrate That It Has Properly Withheld
                Documents under FOIA Exemption 5 ........................................11

                1.      FEMA Has Failed to Demonstrate the Withheld Documents Fall Within the
                        Deliberative Process Privilege..............................................11

                2.      FEMA Has Failed to Demonstrate the Withheld Documents Fall Within the
                        Attorney Client Privilege........................................14

                3.      FEMA Has Failed to Demonstrate the Withheld Documents Fall
                        Within the Attorney Work Product Doctrine .......................................15

        C.      FEMA Has Failed To Demonstrate It Properly Withheld Material Pursuant
                To Exemption 6....................................................16

                1.      The Court Should Not Grant Defendant's Cross-Motion on Exemption 6
                        Claims Since the Controversy is Potentially Moot................................16

                2.      FEMA Cannot Be Granted Summary Judgment On Exemption 6
                        Withholdings Without *Vaughn* Index Entries Related to these
                        Withholdings ............................................... 17

                3.      FEMA Has Failed to Substantively Demonstrate It Properly Withheld
                        Material Pursuant to Exemption 6 .......................................17

IV.     FEMA HAS FAILED TO DEMONSTRATE IT SEGREGATED EXEMPT FACTUAL
        MATERIAL FROM THE DOCUMENTS IT WITHHELD ...................................19

V.      FEMA HAS EMPLOYED AN IMPROPER SEARCH CUTOFF APPROACH ..................21

VI.     FEMA HAS FAILED TO PROVIDE SUFFICIENT REASONS FOR ITS
        WITHHOLDINGS AT THE ADMINISTRATIVE STAGE ....................................................23

VII.    FEMA SHOULD BE ENJOINED TO COMPLY WITH FOIA'S MANDATES ...................24

VIII.   CONCLUSION......................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*ACLU v. DOJ,*
     No. 13-03127, 2015 U.S. Dist. LEXIS 90672 (N.D. Cal. July 13, 2015) ........................11, 14

*Assembly of California v. United States Dep't of Commerce,*
     968 F.2d 916 (9th Cir. 1992) ...................................................................................................19

*Citizens for Responsibility & Ethics in Wash. v. FEC ("CREW"),`*
     711 F.3d 180 (D.C. Cir. 2013)..........................................................................................5, 6, 23

*Ecological Rights Found. v. FEMA*, No. 15-04068,
     2017 U.S. Dist. LEXIS 1054 (N.D. Cal. Jan. 3, 2017) ("*ERF I*") ..........................................10

*Elec. Frontier Found. v. DOJ,*
     No. 15-03186, 2016 U.S. Dist. LEXIS 177630 (N.D. Cal. 2016) ...........................8, 10, 15, 16

*Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence,*
     639 F.3d 876 (9th Cir. 2010) ...................................................................................................18

*Fiducia v. U.S. Dep't of Justice,*
     185 F.3d 1035 (9th Cir. 1999). .................................................................................................19

*Gilmore v. U.S. Dep't of Energy,*
     33 F. Supp. 2d 1184 (N.D. Cal. 1998) ...................................................................................5, 7

*Judicial Watch, Inc. v. Clinton*
     880 F. Supp. 1 (D.D.C. 1995)...................................................................................................23

*Keys v. Department of Homeland Security,*
     570 F. Supp. 2d 59 (D.D.C. 2008) ...........................................................................................18

*Long v. I.R.S.,*
     693 F.2d 907 (9th Cir. 1982) ....................................................................................................24

*Manna v. Dep't of Justice,*
     51 F.3d 1158 (3d Cir. 1995)......................................................................................................18

*McGehee, III v. Central Intelligence Agency,*
     697 F.2d 1095 (D.C. Cir. 1983)............................................................................................6, 21

*Mead Data Cent., Inc. v. United States Dep't of the Air Force*,

    566 F.2d 242 (D.C. Cir. 1977) ...................................................................20

*Munger, Tolles & Olson LLP v. United States Dep't of Army*,

    No. 13-06890, 2014 WL 5781394 (C.D. Cal. Nov. 6, 2014) ...................................6

*Nix v. United States*,

    572 F.2d 998 (4th Cir. 1978) ...................................................................18

*NRDC v. U.S. Dep't of Def.*,

    442 F. Supp. 2d 857 (C.D. Cal. 2006) .......................................................20

*Or. Natural Desert Ass'n v. Gutierrez*,

    409 F. Supp. 2d 1237 (D. Or. 2006) .........................................................21

*Oregon Natural Desert Association v. Gutierrez*,

    419 F. Supp. 2d 1284 (D. Or. 2006). ........................................................21

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,

    85 F. Supp. 3d 1074 (N.D. Cal. 2015) .............................................7, 17, 18

*Payne Enterprises, Inc. v. United States*,

    837 F.2d 486 (D.C. Cir. 1988) ..................................................................7

*Pub. Citizen v. Dep't of State*,

    276 F.3d 634 (D.C. Cir. 2002) .................................................................21

*Roth v. U.S. Dep't of Justice*,

    642 F.3d 1161 (D.C. Cir. 2011). ..........................................................19, 20

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,

    2008 U.S. Dist. LEXIS 107177 (E.D. Cal. June 20, 2008)...........................21, 22

*Thomas v. Cate*,

    715 F. Supp. 2d 1012 (E.D. Cal. 2010).......................................................19

*United States v. Graf*,

    610 F.3d 1148 (9th Cir. 2010). ...............................................................14

*U.S. Department of Justice v. Tax Analysts*,

    492 U.S. 136 (1989)..............................................................................6

*White v. Lee*,

    227 F.3d 1214 (9th Cir. 2000). ......................................................................19

*Wiener v. FBI*,

    943 F. 2d 972 (9th Cir. 1991) ...............................................................17, 20

*Yonemoto v. Dep't of Veterans Affairs*,

    686 F.3d 681 (9th Cir. 2012) ...........................................................7, 8, 17

## Statutes

5 U.S.C. § 552(a)(4)(B) ...............................................................................8, 24

5 U.S.C. § 552(a)(6)(A)(i) ........................................................................19, 23

5 U.S.C § 552(a)(6)(A)(i)(III)(aa) ................................................................13

5 U.S.C. § 552(a)(6)(B)(i). .................................................................................3

5 U.S.C. § 552(a)(6)(B)(iii)(III) .......................................................................6

5 U.S.C. § 552(a)(6)(C)(i). ................................................................................5

5 U.S.C. §§ 552(h)(2)(A) and (B) .....................................................................5

5 U.S.C. § 552(a)(8)(A)(i) ................................................................................13

5 U.S.C. § 552(a)(8)(A)(ii) ..............................................................................19

5 U.S.C. § 552(b) .............................................................................................19

5 U.S.C. § 552(b)(6) .........................................................................................17

## Other Authorities

H. Rep. No. 876, 93d Cong., 2d Sess.,

    reprinted in 1974 U.S. Code Cong. & Admin. News 6267, 6267. ............................5

## I.    UPDATED STATEMENT OF FACTS

As detailed in Plaintiff's Motion for Summary Judgment ("Plaintiff's MSJ") (Dkt. 42), this case concerns EcoRights' FOIA requests sent to FEMA on April 8, 2016 ("April 2016 Request"), October 17, 2016 ("October 17, 2016 Request") and October 19, 2016 ("October 19, 2016 Request"). Plaintiff's MSJ at 2-7. Plaintiff's MSJ explained the facts concerning FEMA's failure to provide timely and complete responses to these requests and improper withholding of documents responsive to these requests. There have been some new factual developments concerning these FEMA failures.

As noted in Plaintiff's MSJ, on January 19, 2017, EcoRights and FEMA entered into a partial settlement agreement ("Settlement Agreement") (Dkt. 42-21) resolving some of the controversies concerning FEMA's FOIA responses. FEMA has complied with some requirements of the Settlement Agreement, but not all--despite the deadlines for FEMA's compliance with these requirements having passed. Declaration of Christopher Hudak in Support of Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Hudak Opp. Decl.") ¶ 2 (describing FEMA compliance and noncompliance to date with the Settlement Agreement). EcoRights continues to confer with FEMA to secure compliance with the Settlement Agreement's requirements and remains hopeful that FEMA will comply fully. *Id*. If FEMA does not do so, EcoRights will seek further relief in a subsequent filing.

Several aspects of FEMA's Settlement Agreement noncompliance bear further mention. First, the third term of the Settlement Agreement required that FEMA resolve EcoRights' failure to receive documents FEMA apparently referred to the U.S. Fish and Wildlife Service ("FWS") for FWS's review and release. Settlement Agreement at 3-4. At the time of filing Plaintiff's MSJ on March 7, 2017, EcoRights had not received from FWS any of these documents. Hudak Opp. Decl. ¶ 5. FEMA had earlier represented to EcoRights that it had referred to FWS 2 pages from FEMA's third interim release of documents responsive to the April 2016 Request and 3 pages from FEMA's first interim release of documents responsive to the October 19, 2016 FOIA request. *Id*. ¶ 6. However, on March 8, 2017, FWS sent a contradictory letter to EcoRights ("FWS March 2017 Letter") which stated that on February 2, 2017 FEMA had sent FWS *21 pages* responsive to the October 19, 2016 Request. *Id*. ¶ 5, Ex. 2. The FWS March 2017 Letter made no mention of the two pages responsive to the April 2016 Request that FEMA ostensibly had also referred to FWS for review and release. To date, EcoRights has not received

1    any communication from FWS stating that it was responding to a FEMA referral of documents

2    responsive to the April 2016 Request. *Id.* ¶¶ 5-6. EcoRights has unsuccessfully attempted to secure an

3    explanation from FEMA why it indicated that it had referred to FWS two pages responsive to the April

4    2016 Request and three pages responsive to the October 19, 2016 Request whereas FWS has indicated it

5    only has received a differing number of pages (21) responsive to the October 19, 2016 Request. *Id.* ¶ 6.

6        Second, FEMA's fourth interim response to EcoRights' April 2016 Request was apparently

7    missing attachments or e-mails referred to in the documents provided. The Settlement Agreement, *inter*

8    *alia*, required FEMA by February 18, 2017 to provide these missing attachments and e-mails or an

9    explanation of any determination that it made that these attachments or e-mails were not in fact

10    missing/did not exist. Settlement Agreement at 4. On April 13, 2017, FEMA sent a letter and

11    accompanying documents to EcoRights ("FEMA April 13, 2017 Release") that ostensibly constituted

12    the missing attachments and e-mails. Hudak Opp. Decl. ¶ 7. However, after reviewing the FEMA April

13    13, 2017 Release in detail, EcoRights has discovered that FEMA has employed a number of different

14    pagination schemes in this new release compared to the pagination FEMA employed in its original

15    fourth interim release of documents responsive to the April 2017 Request. *Id.* ¶ 7. This has at least two

16    impacts that are relevant here. First, this makes it essentially impossible for EcoRights to determine how

17    the newly released FEMA documents compare to the gaps in what FEMA previously produced in its

18    fourth interim release and thus to determine whether what appeared to be missing attachments to e-mails

19    or missing e-mails in e-mail strings in the fourth interim release have now been provided in FEMA's

20    April 13, 2017 Release. Second, assuming that the *Vaughn* Index intended to refer to the documents in

21    the April 13, 2017 Release through the use of such headings as "Interim 4.2 (Missing Documents)," (a

22    point discussed in Section III.A. below) the pagination problems of the April 13, 2017 Release make it

23    essentially impossible to match those entries with released documents.

24        Third, the fifth term of the Settlement Agreement required that FEMA promptly refer documents

25    from which it redacted names of other agencies' personnel to those other federal agencies where such

26    personnel work with a request to consider authorizing FEMA to release those names. FEMA had to

27    attempt to obtain decisions from these other agencies within 30 days. After FEMA had exhausted this

28    process, the Settlement Agreement allowed Plaintiffs to bring a renewed motion for summary judgment

on this issue if they were unsatisfied with the outcome. Settlement Agreement at 4-5. FEMA partially complied by apparently referring only the documents in its first of four interim responses to the April 2016 Request to the relevant other agencies, but not the documents in its three other interim releases responding to the April 2016 Request or documents responsive to the October 17, 2016 Request. Hudak Opp. Decl. ¶ 2. EcoRights objected to this oversight and FEMA has committed to asking the other agencies to consider releasing the names and the rest of these documents. Given this FEMA commitment, EcoRights is holding off asking the Court for further relief about this issue at this time.

## II. FEMA HAS VIOLATED FOIA'S MANDATORY RESPONSE DEADLINES.

FEMA's argument that its violations of FOIA's deadlines should simply be ignored by the Court and it should be granted summary judgment on EcoRights' claims that FEMA has violated FOIA deadlines lacks merit. *See* FEMA Opposition and Cross-Motion for Summary Judgment (Dkt. 46) ("FEMA Opp.") at 18-19. FEMA concedes that it has delayed its responses to EcoRights' FOIA requests until well after FOIA's statutory deadlines. *Id*. FOIA unambiguously requires federal agencies to make final determinations as to which documents they will release in response to FOIA requests within 20 working days, or within 30 working days if they inform the requester that "unusual circumstances" necessitate such an extension.[1] 5 U.S.C. § 552(a)(6)(B)(i). FEMA does not dispute that it did not issue such final determinations for the April 2016 and October 19, 2016 Requests. Furthermore, FOIA unambiguously requires federal agencies to "promptly" provide the documents it determines it will release. FEMA cannot credibly claim it has met this obligation. Indeed, FEMA still has not provided complete sets of the documents responsive to EcoRights's requests.

### A. FEMA's Final Determinations Were Untimely, Its Document Productions Have Been Consistently Late, and Documents are Still Being Improperly Withheld.

FEMA's Opp. and the Declaration of Eric Neuschafer ("Neuschafer Decl.") (Dkt. 46-1) confirm that FEMA's final determination letters as to what documents it would release ("final determination letters") to Plaintiff's FOIA requests violated FOIA's statutory deadlines. FEMA does not dispute that FEMA sent its "fourth/final interim letter," which ostensibly constituted FEMA's final determination

---

[1] Under FOIA, "unusual circumstances" means the need: (1) to search for and collect requested records from locations separate from the office processing the request; (2) to search for, collect, and appropriately examine a voluminous amount of separate and distinct records; or (3) for consultation with another agency having a substantial interest in the determination of the request. 5 U.S.C. § 552(a)(6)(B)(i).

1    regarding Plaintiff's April 2016 Request, on September 16, 2016, more than four months after the

2    statutory deadline and its final response to Plaintiff's October 19, 2016 Request on December 29, 2016,

3    27 days after the statutory deadline.

4         Furthermore, FEMA has been quite dilatory in providing documents responsive to the April 2016

5    Request. As detailed in Plaintiff's MSJ, FEMA stated *after* the statutory deadline had passed for its

6    response to the April 2016 Request that it would provide a portion of the documents "approximately

7    every three weeks" leaving "three or four installments of documents anticipated." Plaintiff's MSJ at 2.

8    Thus, FEMA granted itself another 9 to 12 week extension, on top of the 10 working day "unusual

9    circumstances" extension it had already invoked. *See id.* FEMA missed its own deadlines first by 13

10   days, then 11 days, and then 50 days. *Id.* at 2-3. For the October 19, 2016 Request, FEMA sent its first

11   interim response on the deadline for its *final* determination on all the documents, its second interim

12   response 13 days later, and its final response 2 weeks after that. *Id.* at 6. Moreover, as discussed below,

13   FEMA's production of documents responsive to the April 2016 Request *still* remains incomplete more

14   than one year after the Request was made.

15        FEMA implores the Court to ignore the admitted fact that FEMA still has not produced a number

16   of documents responsive to the April 2016 Request, including "certain emails that had been collected in

17   connection with the search" that were obviously only partial copies, or were missing attachments.

18   FEMA Opp. at 18, n.1. Without explanation, FEMA claims that the incomplete disclosures were due to

19   an "IT error." The Neuschaefer Decl. (at ¶ 8) states that "FEMA is working to correct the error and

20   expects to have the documents processed for release by April 14." But an agency's representation that

21   records were not produced more quickly due to processing backlogs, confusion, and administrative error

22   are "practical explanations, not reasonable legal bases" for withholding. *Miller v. Dep't of State*, 779

23   F.2d 1378, 1390 (8th Cir. 1985).

24        After Plaintiff was forced to file suit, the parties, in settlement negotiation overseen by

25   Magistrate Judge Laporte, entered into the Settlement Agreement committing FEMA to produce such

26   documents as the missing emails/attachments from the fourth interim response to the April 2016 Request

27   within 30 days (by February 18, 2017). However, FEMA failed to meet that deadline as well (and other

28   deadlines in the Settlement Agreement for that matter). *See* Hudak Opp. Decl. ¶¶ 2, 5-7. In regards to the

1    missing emails/attachments, it was not until April 13, 2017 that FEMA produced a set of the documents

2    in response to the missing documents identified by Plaintiff. But as detailed further below, this (late)

3    release is so flawed that it is impossible to tell whether FEMA has at last provided the missing e-

4    mails/attachments to its fourth interim response. Hudak Opp. Decl. ¶ 7.

5            FEMA suggests that the Court hold off finding it in violation of FOIA while simply retaining

6    jurisdiction while FEMA completes producing the still missing documents/comply with the Settlement

7    Agreement. FEMA Opp. at 21. This would be tantamount to giving FEMA more time to comply with

8    FOIA, something the Court may only do if it finds that "exceptional circumstances" exist. 5 U.S.C. §

9    552(a)(6)(C)(i); *see also Citizens for Responsibility & Ethics in Wash. v. FEC,* 711 F.3d 180,

10   185 (D.C. Cir. 2013). However, the term "exceptional circumstances" does not include a delay that

11   results from a predictable agency workload of FOIA requests, unless the agency demonstrates

12   reasonable progress in reducing its backlog of pending requests. 5 U.S.C. § 552(a)(6)(C)(i). FEMA has

13   made no such showing it would be unlikely to be able to do so. FEMA's FOIA response delays and

14   problems with administering FOIA are well known, as reflected for example in a report by the Office of

15   Government Information Services (OGIS), the agency responsible for reviewing federal agencies' FOIA

16   compliance (*see* Open Government Act of 2007, 5 U.S.C. §§ 552(h)(2)(A) and (B)). This report

17   identified poor FEMA management and oversight, and inefficient use of technology as leading to a

18   significant backlog in FOIA responses. Hudak Opp. Decl., ¶ 12, Ex. 13. OGIS observed that it often

19   takes FEMA a year or more to respond to simple FOIA requests. *Id.*

20           FEMA's contention that its foot dragging in actually providing responsive documents should

21   merit no sanction lacks merit. Congress intended FOIA's deadline provisions to be meaningful, not the

22   dead letter FEMA urges, to advance the statutes's overarching purpose, which is "to contribute to the

23   fuller and faster release of information." H. Rep. No. 876, 93d Cong., 2d Sess., reprinted in 1974 U.S.

24   Code Cong. & Admin. News 6267, 6267; *Gilmore v. U.S. Dep't of Energy,* 33 F. Supp. 2d 1184, 1186-

25   88 (N.D. Cal. 1998).

26           Even if FEMA did not have to provide the responsive documents on the day that its final

27   determination letters were due, it had a statutory duty to make them "promptly available." Making

28   responsive documents "promptly available" means releasing them within days or a few weeks of a

1    determination, not months or years. *CREW*, 711 F.3d at 188 (D.C. Cir. 2013). FEMA obviously failed to

2    provide the requested documents within a few days or weeks of timely determinations as to which

3    documents to release. FEMA's counterargument that its responses have been "reasonably prompt,"

4    erroneously conflates FOIA's hard and fast statutory deadlines for response timeliness, with the quite

5    different and more flexible standard for what constitutes an adequate agency search for documents under

6    FOIA. FEMA Opp. at 19. Whether an agency document search was "reasonable" has no bearing on

7    whether an agency's release of documents is timely. *See U.S. Department of Justice v. Tax Analysts,* 492

8    U.S. 136, 151 n.12 (1989) (an untimely response to a FOIA request is a separate injury to the requesting

9    party, even if there was no agency bad faith in withholding a document); *see also Munger, Tolles &*

10   *Olson LLP v. United States Dep't of Army*, No. 13-06890, 2014 WL 5781394, at *8 (C.D. Cal. Nov. 6,

11   2014) (defendant's delay in processing plaintiff's request and appeal constituted a FOIA violation

12   independent of underlying disclosure issues).

### B.    FEMA Failed to Promptly Refer Documents to Other Agencies.

14          The evidence also clearly shows that FEMA did not consult with the National Marine Fisheries

15   Service ("NMFS") and FWS with all practicable speed as FOIA requires. 5 U.S.C. §

16   552(a)(6)(B)(iii)(III); *see also McGehee*, 697 F.2d at 1111-12 (agency's referral of documents to another

17   agency for release determination is valid only if "made *promptly* with notice to the requestor")

18   (emphasis added). The record shows that pursuant to Plaintiff's April 2016 Request, FEMA referred 38

19   pages to NMFS for review on September 16, 2016, about 4 months after the May 20, 2016 statutory

20   deadline for final determination. *See* Hudak Declaration in Support of Plaintiff's Motion for Summary

21   Judgment ("Hudak MSJ Decl") (Dkt 42-1), ¶¶ 3, 15. In addition, FEMA allegedly referred two pages to

22   FWS from the third interim release to the April 2016 Request for FWS's review and release, yet

23   EcoRights has never received any communication from FWS that it received this referral. *See* Hudak

24   Opp. Decl. ¶¶ 5-6.

25          FEMA also referred three pages of its first interim response to Plaintiff's October 19, 2016 to

26   FWS for the latter's review and release. *See* Hudak Opp. Decl. ¶ 6. However, FEMA did not actually

27   send the referral to FWS until February 2, 2017, or 2 months after the December 2, 2016 statutory

28   deadline for final determination. *See id.* ¶ 6; Plaintiff's MSJ, at 6. As detailed above, when Plaintiff did

1   receive FWS's determination, FWS stated that FEMA had in fact referred *21* pages from the October 19,

2   2016 Request, not 3. Hudak Opp. Decl. ¶ 5-6. At a minimum, this creates doubt about whether FEMA is

3   responding to EcoRights' FOIA requests and tracking its production to these requests in any organized

4   manner.

5          FEMA does not attempt to demonstrate how its referral process comports with FOIA's mandate

6   to consult with other agencies with all practicable speed. The Neuschaeffer Decl. sheds no light on

7   FEMA's methodology for selecting and referring documents to other federal agencies. Furthermore,

8   FEMA must concede that it has provided no evidence that either it or FWS has yet provided all the

9   documents FEMA referred to FWS for review and release. EcoRights is thus entitled to summary

10  judgment that one aspect of FEMA's failure to make documents "promptly available" has been its

11  failure to timely refer documents to other agencies for review and release and for these latter agencies to

12  then provide the referred documents.

13         **C.      EcoRights' Timeliness Claims are Not Moot.**

14         FEMA's contention that EcoRights' claims that FEMA has violated FOIA's statutory deadlines

15  (FEMA Opp. at 19-20) are moot lacks merit. One, as discussed above, FEMA still has not provided all

16  the documents responsive to EcoRights' FOIA requests (as it appears that there still are documents

17  referred to FWS that have not been provided and at a minimum it remains unclear whether FEMA has

18  provided corrected copies all documents it attempted to as its fourth interim response to the April 2016

19  Request) and thus remains in ongoing violation of the duty to make responsive documents "promptly

20  available." *See* Hudak Opp. Decl. ¶¶ 2, 3, 5-7. Surely an agency in ongoing violation of FOIA deadlines

21  cannot contend that a claim for these violations is now moot. *See, e.g.*, *Yonemoto v. Dep't of Veterans*

22  *Affairs,* 686 F.3d 681, 685 (9th Cir. 2012) (FOIA claims are not moot so long as agency has not

23  provided all responsive documents). Moreover, it is well-established that declaratory relief finding

24  federal agencies in violation of FOIA deadlines even after they have fully complied with those deadlines

25  is appropriate when agencies are shown to be repeat violators of those deadlines. *E.g.*, *Payne*

26  *Enterprises, Inc. v. United States,* 837 F.2d 486 (D.C. Cir. 1988); *Our Children's Earth Found. v. Nat'l*

27  *Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1089-1091 (N.D. Cal. 2015); *Gilmore*, 33 F. Supp. 2d at

28  1186 (and cases cited therein). As discussed above, OGIS, the federal agency in charge of for

1    compliance, has singled FEMA out for criticism for its FOIA record. FEMA's record here is similarly

2    sorry. EcoRights has already sent and plans to continue to send additional FOIA requests to FEMA as

3    part of its ongoing public interest campaign to advocate for more environmentally protective

4    implementation of the NFIP. Hudak Opp. Decl. ¶ 19. Accordingly, there is a strong need here for

5    declaratory relief that will send an appropriate message to FEMA that it needs to improve its FOIA

6    compliance and not repeat similar lengthy delays in responding to EcoRights' future FOIA requests.

7

8    **III.    FEMA HAS FAILED TO DEMONSTRATE THAT IT PROPERLY WITHHELD
         MATERIAL PURSUANT TO FOIA EXEMPTIONS.**

9        **A.  FEMA Has Failed To Provide a Coherent *Vaughn* Index.**

10       Federal agencies bear the burden to prove that documents they withhold in response to FOIA

11   requests are properly exempt from disclosure. 5 U.S.C. § 552(a)(4)(B); *Yonemoto v. Dep't of Veterans*

12   *Affairs*, 686 F.3d 681, 688 (9th Cir. 2012). To carry their burden on summary judgment, agencies must

13   submit what is commonly referred to as *Vaughn* indices, *i.e.*, "'detailed public affidavits' that, together,

14   'identify[ ] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of

15   why each document falls within the claimed exemption.'" *Elec. Frontier Found. v. DOJ*, No. 15-03186,

16   2016 U.S. Dist. LEXIS 177630, at *9 (N.D. Cal. 2016) (James, J.) (citing *Yonemoto*, 686 F.3d at 688

17   (edits in original). *Vaughn* indices must be "from 'affiants [who] are knowledgeable about the

18   information sought' and 'detailed enough to allow [a] court to make an independent assessment of the

19   government's claim [of exemption].'" *Id.* at *10.

20       FEMA's *Vaughn* index (Neuschaeffer Decl., Ex. B) ("*Vaughn* Index" or "Index") falls woefully

21   short of these standards. The apparently haphazardly created Index fails to reasonably identify how

22   specific Index entries correspond to the documents withheld by FEMA. The Index uses a series of

23   cryptic codes at the top of the Index pages: "Interim 1 (parts 1 and 2)," "Interim 2," "Interim 3

24   (Misprinted Pages)," "Interim 3," "Interim 4.1," "Interim 4.2 (Misprinted Pages)," "Interim 4.2,"

25   "Interim 4.3 (Misprinted Pages)," and "Interim 4.3." Neither the Index nor the Neuschaeffer Decl.

26   provides any key explaining this coding system. EcoRights guesses that these codes referred to the four

27   rounds of FEMA interim responses to the April 2016 Request. While the entries in the Index for

28   "Interim 1 (parts 1 and 2)," "Interim 2," and "Interim 3" appear to at least largely match FEMA's first,

second, and third interim releases to EcoRights in response to the April 2016 Request, the other 5 headings pose challenges. First, "Interim 3 (Misprinted Pages)" (*Vaughn* Index at 32-33) is instantly confusing because FEMA has never indicated to EcoRights that there were any "misprinted pages" in FEMA's third interim response to the April 2016 Request and EcoRights has never discerned any problem with this interim response. Second, the numbers "4.1," "4.2," and "4.3" perhaps was meant to correspond to the separate computer files FEMA released to EcoRights in its fourth interim release to the April 2016 Request, but there are significant problems with such an interpretation. FEMA gave EcoRights four separate computer files in its fourth interim release, not three, and none of those files were assigned numbers. Instead, FEMA gave them names: "Kristin Fontenot," "EHP_Mark Eberlain," "EHP_Kathryn Bissell," and "Region IX - California Consultation Documents (Additional)." *See* Hudak Opp. Decl. ¶ 7. Thus, on its face the *Vaughn* Index is unclear which sub-files "4.1," "4.2," and "4.3" correspond to. Even a close side-by-side comparison of the *Vaughn* Index entries and the released documents does not conclusively resolve the issue.

The meanings of the headings "Interim 4.2 (Misprinted Pages)" and "Interim 4.3 (Misprinted Pages)" are indecipherable. EcoRights assumes that "Misprinted Pages" refers to the pages that EcoRights identified to FEMA as missing from the fourth interim release of the April 2016 Request, in accordance with the fourth term of the Settlement Agreement. *See* Hudak Opp. Decl. ¶ 3, Ex. 1. On April 13, 2017, FEMA provided EcoRights what was ostensibly FEMA's release of these documents six days *after* it filed its *Vaughn* Index. *See* Hudak Opp. Decl. ¶ 7. However, it is nearly impossible to match any entries under the "Interim 4.2 (Misprinted Pages)" and "Interim 4.3 (Misprinted Pages)" headings to the documents in the April 13, 2017 Release, because there is no corresponding pagination or other clues to utilize, and/or the documents are too redacted to discern the content.[2] For example, none of the pages in any of the fourth interim release documents or the April 13, 2017 Release correspond to the entry for "Interim 4.3 (Misprinted Pages)," pages 111, 142-48, or 150. Hudak Opp. Decl. ¶¶ 15, 18, 17 Exs. 15,

---

[2] Assuming that the "Misprinted Pages" headers were supposed to correspond to the April 13, 2017 Release, and even if these entries could be matched, FEMA failed to also include any header/entries for the missing pages of "4.1" despite EcoRights's clear notice to FEMA of missing documents from three of the four sub files to the fourth release. *See* Hudak Opp. Decl. ¶ 3, Ex. 1.

18, 17. In addition, none of the pages in any of the fourth interim release documents or the April 13, 2017 Release correspond to the entry for "Interim 4.2 (Misprinted Pages)," pages 124-127. Hudak Opp. Decl. ¶ 16, Ex. 16.

So far as EcoRights can tell, the Index only addresses FEMA's withholdings of documents responsive to the April 2016 Request and only to Exemption 5 redactions. Thus, FEMA has apparently failed to produce a *Vaughn* Index justifying its withholdings of documents responsive to the October 17, 2016 Request and October 19, 2016 Request, as further discussed below.

In addition to these problems, FEMA has failed to show that the *Vaughn* Index was prepared by FEMA staff who are knowledgeable about: the documents withheld, who prepared the documents and to whom they were circulated, the content of the documents; how the documents relate to communications which could be considered deliberative process, attorney client communication, or attorney work-product, and why releasing them would create "foreseeable harm" to FEMA as required by the FOIA Improvement Act of 2016 ("Improvement Act"). Indeed, the Neuschaeffer Decl. (at ¶ 10) only states that the *Vaughn* Index was "prepared by FEMA employees familiar with the agency's rule- and policy-making process, the role of other agencies in the process, and the general role of the FEMA employees named in the e-mails and other documents redacted or otherwise withheld from release." The Neuschaeffer Decl. fails to identify these staff, much less corroborate that they have the requisite personal knowledge to prepare an adequate, reliable *Vaughn* index.

FEMA's argument that it should be given a second chance to correct deficiencies in the *Vaughn* Index lacks merit. *See* FEMA Opp. at 14. Such an outcome would delay this case's resolution and unfairly prejudice EcoRights by perpetuating the very harm at the heart of this case--the failure by FEMA to "promptly" provide documents to which EcoRights is entitled under FOIA. FEMA has been on notice for months of its *Vaughn* index obligations, as EcoRights filed its complaint on September 14, 2016. In *Ecological Rights Found. v. FEMA*, No. 15-04068, 2017 U.S. Dist. LEXIS 1054 (N.D. Cal. Jan. 3, 2017) ("*ERF I*"), the Court noted that more in-depth explanation could possibly have justified finding documents in question to be deliberative process, yet did not grant FEMA a second chance. *ERF I*, at *22. FEMA was obligated to justify its withholdings in its Opposition. Its failure to do so should be deemed dispositive now. *See Elec. Frontier Found*, 2016 U.S. Dist. LEXIS 177630, at *12-*33

(ordering release of documents upon finding *Vaughn* index inadequate without extending federal agency second opportunity to fix index); *ACLU v. DOJ*, No. 13-03127, 2015 U.S. Dist. LEXIS 90672, at *8-*14 (N.D. Cal. July 13, 2015) (same).

## B. FEMA Has Failed to Demonstrate That It Has Properly Withheld Documents under FOIA Exemption 5.

### 1. FEMA Has Failed to Demonstrate the Withheld Documents Fall within the Deliberative Process Privilege.

FEMA's *Vaughn* Index does not meet FEMA's burden to justify withholding responsive documents under the deliberative process privilege, as indicated in EcoRights' line by line response to the Index ("Plts. *Vaughn* Objections"). *See* Hudak Opp. Decl. ¶ 13, Ex. 14.[3] Notably, Magistrate Judge Ryu in a prior case reviewed documents that are almost certainly analogous to the documents FEMA has withheld in this case and determined they did not appear to fall within the deliberative process privilege. *ERF I*, U.S. Dist. LEXIS 1054 (N.D. Cal. Jan. 3, 2017). As Judge Ryu correctly observed, to withhold documents as deliberative process:

> the agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process. . . .Defendant [FEMA] must describe the nature of the decision making authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents.

*ERF I*, at *12-13 (internal citations and quotations omitted). Judge Ryu found that FEMA did "not provide basic context and information about the documents at issue, such as a description of the individuals involved in authoring the documents and emails, their roles within their respective agencies, or their roles in the rulemaking process." *Id*.

FEMA's *Vaughn* Index here repeats the same problem. For example, the entry on the third line of the first page of the *Vaughn* Index does not describe who wrote the documents nor their roles in the rulemaking process. *See id*. This example is emblematic of the boilerplate responses that are replicated throughout the Index. *See* Hudak Opp. Decl. ¶ 13, Ex. 14.

Moreover, the type of materials FEMA for which asserts the deliberative process privilege

---

[3] Responding to each entry of the 71 page *Vaughn* Index would be too voluminous a discussion for this brief. Accordingly, EcoRights has prepared a summary spreadsheet itemizing why each entry of the *Vaughn* Index fails to meet FEMA's burden to justify withholding the corresponding documents responsive to EcoRights' FOIA requests.

appear to be the same type that *ERF I* found appeared not to be deliberative process. *ERF I*, at *14-*15.

In *ERF I*, FEMA contended that letters exchanged between NMFS and FEMA stating these agencies'

respective views about a controversy between them concerning whether FEMA must consult with

NMFS under Endangered Species Act ("ESA") § 7 in conjunction with FEMA rulemaking on the NFIP

were deliberative process. However, Judge Ryu found that these two letters and an additional email

chain appeared to be neither predecisional nor deliberative. *ERF I*, at *14-15. Hudak Opp. Decl ¶ 8, Exs.

6-9 (letters and email chain at issue, collectively the "Clawback Documents"). The *Vaughn* Index here,

though vague, strongly suggests that at least many of the documents FEMA has withheld are analogous

documents that also address the NMFS-FEMA conflict over whether FEMA must consult with NMFS

under ESA § 7 over NFIP rulemaking. The Index repeatedly refers to a perspective FEMA rulemaking

as the decision that its putatively predecisional documents relate to. *Compare Vaughn* Index, Dkt. 46-1,

Row 3, "Exemption Justification" with Hudak Opp. Decl. ¶ 8, Exs. 7-8.

   NMFS's responses to a series of separate FOIA requests from EcoRights both further

corroborates that the documents FEMA is withholding are like the documents it unsuccessfully sought

withhold in *ERF I* and provide additional bases to conclude that these documents are not deliberative

process. NMFS's FOIA responses have repeatedly provided EcoRights copies of documents further

memorializing the FEMA-NMFS conflict over FEMA's ESA § 7 consultation duties in conjunction with

FEMA's NFIP.[4] NMFS's FOIA responses have plainly found these documents not to be protected

deliberative process. NMFS has invoked deliberative process to withhold some documents, but has

released others--indicating NMFS has carefully reviewed and determined which documents related to

this controversy are not deliberative process and which documents concerning evaluation of FEMA's

NFIP program are. *See* Hudak Opp. Decl. ¶¶ 10-11. See *ERF I* at 15, n.3 (observing that the Clawback

Documents had been "published online by NMFS . . . indicating that NMFS was not concerned that

disseminating the communications would undermine the goal of promoting the 'frank and independent

discussion' between the two agencies"). Notably, NMFS has included in its recent FOIA responses

---

[4] Through its FOIA requests, EcoRights has acquired numerous additional documents, primarily from NMFS, that clearly illustrate the NMFS opinion that FEMA must consult with the resource agency under ESA § 7 over NFIP implementation, and that the agencies' conflicting positions remains a matter of deep divide between them. The documents underscore NMFS perspective that this is a matter of great environmental significance and a highly salient issue as to the agencies' implementation of the ESA.

*unredacted copies of at least some of the same documents that FEMA has withheld here*, plainly evidencing that NMFS, just as it did for the Clawback Documents, has found that the documents should not be withheld as deliberative process. For example, Hudak Opp. Decl. Exhibit 10 is a completely unredacted copy of a letter from a high-level official at FEMA to a high level of official at NMFS that NMFS released to EcoRights whereas FEMA withheld from EcoRights. (The FEMA withheld version of the letter is Hudak Exhibit 12).[5] This letter is plainly a decision document, reciting FEMA's version of what the two agencies had agreed to concerning ESA § 7 consultation--something quite different from confidential advice made in advance of an agency decision--where keeping the communication confidential is important for promoting candor in those providing advice to decision makers.

An additional problem for FEMA's deliberative process contentions is FEMA's total failure to address to the Improvement Act's new "foreseeable harm" standard. Agencies must now do more than simply demonstrate a document falls within a FOIA exemption; they must demonstrate that disclosure *would harm an interest protected by an exemption*. 5 U.S.C. § 552(a)(8)(A)(i). The Neuschaffer Decl. fails to show any specific harm that would result from releasing the documents in issue. Instead, the Neuschaffer Decl. and FEMA Opp. essentially rebottle similar FEMA arguments made before the Improvement Act was enacted--that releasing any internal predecisional deliberations is *per se* harmful because it would tend to chill frank discussion. However, this equates to a rule that all predecisional deliberations can be withheld simply because they are predecisional deliberation, which would render superfluous the Improvement Act's enactment of the foreseeable harm standard.[6]

---

[5] Plaintiff can provide the Court with further examples of such documents received from NMFS under FOIA at the Court's request.

[6] FEMA should have applied the Improvement Act to its responses to the October 17 and October 19, 2016 Requests, but it should also have applied the Act to its third and fourth interim responses to the April 2016 Request, as these responses were all dated after the Improvement Act's June 30, 2016 enactment. FEMA's reliance on *Edelman v. Securities and Exchange Commission* ("*Edelman*"), 2017 U.S. Dist. LEXIS 31262, at *17 n.5 (D.D.C. March 6, 2017) to support its contention that need not have applied the Improvement Act to the third and fourth interim responses to the April 2016 Request is misplaced. FEMA Opp., at 8. *Edelman* is factually distinguishable; *Edelman* found the Improvement Act inapplicable because *both* the plaintiff's FOIA request *and* the agency's response in that case came before the Improvement Act's enactment. *See Edelman*, at *2 and *17 n.5. Here, FEMA's third and fourth interim responses to the April 2016 Request came *after* the Improvement Act's enactment. FEMA contends that the Improvement Act nonetheless cannot apply to its third and fourth interim responses because the April 2016 Request came before the Improvement Act's enactment and the Improvement Act only applies to FOIA requests made after the Act's enactment. But here, FEMA has been inconsistent. FEMA itself has construed changes made by the Improvement Act to 5 U.S.C § 552(a)(6)(A)(i)(III)(aa) of FOIA as applying to its fourth interim release of documents responsive to the

### 2. FEMA Has Failed to Demonstrate the Withheld Documents Fall within the Attorney Client Privilege.

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, as well as communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *ACLU*, 2015 U.S. Dist. LEXIS 90672, at *9 (citations omitted). "In the FOIA context, the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege." *Id.* "The attorney-client privilege protects communications between a client and an attorney from disclosure: '(1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection be waived.'" *Id.*, *citing United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). However, "the attorney-client privilege does not apply to all communications between attorney and client," only those for legal advice. *Id.* at *11 (citations omitted). Finally, "the Government bears the burden of proving its claimed exemption applies." *Id.* (citations omitted).

FEMA's *Vaughn* Index fails to provide sufficient information to meet FEMA's burden to justify withholding documents under the attorney client privilege. For example, the very first entry in the *Vaughn* Index, (Dkt. 46-1 at 11), is ambiguous as to which document or documents it actually refers. The entry appears under the heading "Interim 1 (parts 1 and 2)" and apparently asserts that every single document redacted in or withheld from FEMA's first interim response to the April 2016 Request

---

April 2016 Request when it informed EcoRights in writing that EcoRights had 90 days to appeal the determination in response to the April 2016 Request. Before the Improvement Act, the appeal period was limited to 60 days; the Improvement Act enlarged this period to 90 days. Dkt. 42-1, ¶ 11; FOIA, in redlined form, 552(a)(6)(A)(i)(III)(aa), available at https://www.justice.gov/oip/freedom-information-act-5-usc-552. FEMA has thus applied the Improvement Act in a selective fashion to the April 2016 Request but should have applied it in full to at least the third and fourth interim releases.

FEMA might contend that whatever harm EcoRights has suffered by FEMA's failure to apply the Improvement Act to its third and fourth interim responses to the April 2016 Request has been obviated by EcoRights asking again in its October 17, 2016 Request for the same documents that it asked for in the April 2016 Request. But the October 17, 2016 Request explicitly stated that FEMA need not provide any documents that it had already provided in response to the April 2016 Request. Dkt. 42-1, ¶ 12. Thus it seems likely that FEMA would not have looked again at documents it turned over in response to the April 2016 Request and evaluated them for determination under the Improvement Act. Even if the Court finds that the Improvement Act did not apply to any of the April 2016 Request, the Court's order should nonetheless ensure that FEMA has reviewed the April 2016 Request under the "foreseeable harm" standard, as requested by the October 17, 2016 Request.

constitutes a privileged attorney-client communication. Such a blanket boilerplate recitation of the elements of attorney client privilege provides insufficient information to reasonably support a conclusion that the document was prepared by an attorney or provided to an attorney for the purposes of legal advice and remains confidential. *See, e.g., Elec. Frontier Found.*, 2016 U.S. Dist. LEXIS 177630, at *25 ("something beyond regurgitation of the elements" of attorney-client privilege is required for justifying withholding documents under FOIA).The entry lists attorneys' names but does not specifically identify any given documents they prepared, provide enough information to reasonably support an inference that the documents involve legal advice, or identify to whom the document has been circulated (thus providing evidence of preservation of its confidentiality). To the extent this entry might assert that every document redacted or withheld in FEMA's Interim 1 response was for the purpose of legal advice between an attorney and client, this assertion is implausible. As detailed in Plts. *Vaughn* Objections, what FEMA has revealed about at least some of the withheld documents tends to indicate that the documents were not generated by a client seeking legal advice or an attorney providing such advice; at least some of these documents do not appear to have been directed to an attorney or sent by an attorney at all. Hudak Opp. Decl. ¶ 13, Ex.14.

### 3.    FEMA Has Failed to Demonstrate the Withheld Documents Fall within the Attorney Work Product Doctrine.

To fall within the attorney work-product doctrine, documents must be prepared in anticipation of litigation by an attorney or at attorneys direction. *E.g.*, *Elec. Frontier Found.*, 2016 U.S. Dist. LEXIS 177630, at *25. "The primary concern in determining whether a document is protected as work product . . . [is] whether it was created in anticipation of litigation in the way the work-product doctrine demands, i.e., by risking revealing mental impressions, conclusions, opinions, or legal theories of an agency attorney, relevant to any specific, ongoing, or prospective case or cases." *Id.* at *26. FEMA's *Vaughn* Index and declarations do not meets its burden to support its withholdings under the attorney work-product doctrine. For example, the second entry in the *Vaughn* Index, (Dkt. 46-1 at 11), is ambiguous as to which document or documents it actually refers because it appears under the heading "Interim 1 (parts 1 and 2)," and apparently asserts that every single document redacted in or withheld from FEMA's first interim response to the April 2016 Request constitutes attorney work product. This blanket entry's

boilerplate recitation of the elements of attorney work product provides insufficient information to reasonably support a conclusion that the document was prepared by an attorney or at an attorney's direction in anticipation of litigation. *See, e.g., Elec. Frontier Found.*, 2016 U.S. Dist. LEXIS 177630, at *27, 29 (the Government cannot satisfy its burden of proof by relying on a mere recitation of the elements [of the attorney work product doctrine] . . . if the agency were allowed to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.").The entry lists attorneys' names but does not specifically identify any given documents they prepared, provide enough information to reasonably support an inference that the documents were prepared for any identifiable litigation, or identify to whom the document has been circulated (thus providing evidence of preservation of its confidentiality). To the extent this entry might assert that every document redacted or withheld in FEMA's Interim 1 response was prepared by an attorney or at an attorney's direction in anticipation of litigation, this assertion is implausible. As detailed in Plts. *Vaughn* Objections, what FEMA has revealed about at least some of the withheld documents tends to indicate that the documents were not generated by or for a lawyer in anticipation of litigation; at least some of these documents do not appear to have been directed to an attorney or sent by an attorney at all. Hudak Opp. Decl. ¶ 13, Ex.14.

### C.  FEMA Has Failed To Demonstrate It Properly Withheld Material Pursuant To Exemption 6.

#### 1.  The Court Should Not Grant Defendant's Cross-Motion on Exemption 6 Claims Since the Controversy is Potentially Moot.

FEMA asserts that it has allegedly referred its redactions under Exemption 6 of the names of other agencies' staff to these agencies for potential release. FEMA Opp. at 14. It is thus possible that these agencies will agree to release these names, potentially obviating the need for the Court to resolve whether these names were properly withheld under Exemption 6. Additionally, the Settlement Agreement requires FEMA to code the identities of the names of third parties redacted from FEMA's FOIA responses who are not federal employees (in lieu of providing the names). This coding may suffice to meet EcoRights' interests in learning the identities of these third parties as the coding will allow EcoRights to tell which documents relate to a given person (as all references to that person will

1   have the same code). It may be that upon reviewing FEMA's work and the totality of the documents,

2   EcoRights ultimately determines it does need to know the names of individuals that FEMA will not

3   release, in which case EcoRights will return to court to press the matter. But as this may not happen, the

4   Court should conserve judicial resources, presently decline to determine whether FEMA's Exemption 6

5   invocations have been proper, and deny FEMA's cross-motion for summary judgment without prejudice

6   to the extent it seeks judgment that it has properly invoked Exemption 6.

7
8
### 2.   FEMA Cannot Be Granted Summary Judgment On Exemption 6 Withholdings Without *Vaughn* Index Entries Related to these Withholdings.

9   FEMA's *Vaughn* index does not include any entries regarding FEMA's invocation of Exemption

10  6. As the Ninth Circuit has stated, "the purpose of the index is to afford the FOIA requester a

11  meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness

12  of the withholding." *Wiener v. FBI*, 943 F. 2d 972, 977 (9th Cir. 1991) (citations omitted). On this basis

13  alone, FEMA has failed to show entitlement to summary judgment on its Exemption 6 withholdings.

14
15  ### 3.   FEMA Has Failed to Substantively Demonstrate It Properly Withheld Material Pursuant to Exemption 6.

16  Should the Court decide to rule on the propriety of FEMA's Exemption 6 withholdings, the

17  Court should reject FEMA's arguments. FOIA Exemption 6 exempts from disclosure "personnel and

18  medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of

19  personal privacy . . . ." 5 U.S.C. § 552(b)(6). The first question is thus whether the documents in

20  question fall within one of the statutory categories. *See Our Children's Earth Found. v. Nat'l Marine

21  Fisheries Serv.*, 85 F. Supp. 3d 1074, 1084-86 (N.D. Cal. 2015) (citing *Yonemoto v. Dept. of Veterans

22  Affairs*, 686 F.3d 681, 693 (9th Cir. 2011) as amended (Jan. 18, 2012). Next, the "Court must determine

23  if 'disclosure implicates a personal privacy interest that is 'nontrivial . . . .'" *Id.* at 1084-86. "If the

24  agency fails to establish that disclosure 'would lead to the invasion of a non-trivial personal privacy

25  interest protected by Exemption 6, the FOIA demands disclosure, without regard to any showing of

26  public interest." *Id.* "If, on the other hand, the agency meets its burden, the Court then engages in a

27  balancing approach, asking whether the privacy interests the agency identified outweigh the public's

28  interest in the disclosure of information that "'would shed light on an agency's performance of its

    statutory duties or otherwise let citizens know what their government is up to.'" *Id.*

1    The FEMA Opp. and Neuschaeffer Decl. offer no evidence that disclosure of the names in

2    question "would lead to the invasion of a non-trivial personal privacy." Indeed, the Neuschaeffer Decl.

3    (at ¶ 9) instead apparently recites that FEMA in wholesale fashion indiscriminately "redacted the names

4    and contact information of federal personnel employed by other agencies (*i.e.,* non-FEMA personnel)."

5    Similarly, FEMA's Opp. does not detail any specific non-trivial privacy that is implicated, but instead

6    cites to passages in three cases that pertain to FOIA Exemption 7, not Exemption 6, and are thus

7    irrelevant here. *See* FEMA Opp. at 15; *Keys v. Department of Homeland Security*, 570 F. Supp. 2d 59,

8    68 (D.D.C. 2008), *Manna v. Dep't of Justice*, 51 F.3d 1158, 1166 (3d Cir. 1995), and *Nix v. United*

9    *States*, 572 F.2d 998, 1006 (4th Cir. 1978). FEMA also inexplicably attributes quotes to *Elec. Frontier*

10   *Found. v. Office of the Dir. of Nat'l Intelligence,* 639 F.3d 876, 887–88 (9th Cir. 2010) that are not in the

11   opinion. *See* FEMA Opp. at 15. To the extent that these cases raise concerns about "harassment," FEMA

12   has offered no evidence to support this argument, which must therefore be rejected. *See Our Children's*

13   *Earth Found*, 85 F. Supp. 3d 1074 at 1085-86 ("the investigation of the [fish kills] at the Searsville Dam

14   is not hotly controversial and is unlikely to subject any of the individuals involved to harassment or

15   embarrassment."). Second, any claim that disclosure "would lead to the invasion of a non-trivial

16   personal privacy" is undercut by the fact that, per the fifth term of the Settlement Agreement FEMA was

17   to refer all Exemption 6 materials to sister agencies from the April 2016 and October 17, 2016 Requests.

18   According to FEMA, FEMA's sister agencies have now released unredacted copies of all Exemption 6

19   withholdings from the first interim release to the April 2016 Request, and, as discussed above, FEMA is

20   arranging for the release of the remaining Exemption 6 redactions of the April 2016 and October 17,

21   2017 Requests. This suggests that any privacy interest in the information always was in fact "trivial" and

22   that the withholdings were generated not by a thought out concern about the implications of releasing

23   the names in *these* documents, but reflexive application of a habit of automatically redacting the

24   identities of non-FEMA personnel.

25   FEMA has failed to meets its burden for the second part of the test, because (1) it has failed to

26   provide "a particularized explanation of what non-trivial privacy interest" is at stake, and (2) any privacy

27   interest FEMA has indentified is outweighed by the public's interest in the disclosure of information. *See*

28   *Our Children's Earth Found*, 85 F. Supp. 3d 1074 at 1085-86. Plaintiff's MSJ identified two valid

public interests in the Exemption 6 information: (1), knowing who the authors and recipients of given documents are is typically essential for discerning which documents relate to other documents and thus developing the narrative shown by the series of documents and (2) learning the identity of third parties that are possibly harming ESA listed species to be able to advocate for change in these third parties' actions. *See* Plaintiff's MSJ, at 10, n.5. A third reason for EcoRights to learn the identity of agency personnel is to know who within the government to correspond to ask questions about matters within government agencies' expertise or to urge the government to take given action. While EcoRights cannot likely compel anyone in the government to answer this correspondence (other than of course by sending FOIA requests), it surely is inconsistent with the First Amendment right to petition the Government for FEMA to maintain that FEMA and other federal agencies have an interest in hiding from EcoRights who within the government has knowledge about and is working on given issues of concern to EcoRights. *See, e.g., White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000). FEMA is wrong that *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1019 (E.D. Cal. 2010) supports that federal agencies have such an interest. This case is readily distinguishable as it was not a FOIA case, did not address Exemption 6, and instead focused on the deliberative process privilege. FEMA's citation to *Assembly of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) similarly fails as the case also did not address Exemption 6, and instead focused on the deliberative process privilege.

## IV.    FEMA HAS FAILED TO DEMONSTRATE IT SEGREGATED EXEMPT FACTUAL MATERIAL FROM THE DOCUMENTS IT WITHHELD.

FOIA requires that "any reasonably segregable portion of a record" must be released after application of the Act's nine exemptions. 5 U.S.C. § 552(b); *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1167, (D.C. Cir. 2011). The Improvement Act further added that an agency shall "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible." 5 U.S.C. § 552(a)(8)(A)(ii). 5 U.S.C. § 552(a)(6)(A)(i) "requires that the agency provide enough information, presented with sufficient detail, clarity, and verification, so that the requester can fairly determine what has not been produced and why and the court can decide whether the exemptions claimed justify the nondisclosure." *Fiducia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1043 (9th Cir. 1999). The government may not respond to a FOIA request with boilerplate or conclusory statements; rather, it must provide "tailored reasons" for withholding

documents. *Wiener*, 943 F. 2d at 978-79. "Unless the segregability provision of the FOIA is to be

nothing more than a precatory precept, agencies must be required to provide the reasons behind their

conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts. In

addition to a statement of its reasons, an agency should also describe what proportion of the information

in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data*

*Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Here, FEMA has

provided no individualized assessment of whether any withheld document contains segregable factual

material. Rather, FEMA makes the blanket statement that "FEMA considered and made a determination

regarding whether there was any non-exempt segregable information with respect to each redaction and

withheld document. The releases to plaintiff reflect FEMA's judgment that there is no additional non-

exempt segregable information that has not been released." Neuschaefer Decl. ¶ 6. The Neuschaefer

Decl. does not describe any effort to look for segregable information by trained personnel, nor any

meaningful information for assessing the adequacy of FEMA's effort in this respect. A broad,

conclusory statement that FEMA has not withheld any segregable information cannot be enough to

satisfy FEMA's burden of showing it has segregated and produced purely factual material. *See Roth*,

642 F.3d at 1186-87; *see also NRDC v. U.S. Dep't of Def.*, 442 F. Supp. 2d 857, 872 (C.D. Cal. 2006).

FEMA argues that material is exempt where "either the disclosure of the manner of selecting or

presenting facts would expose the deliberative process, or where facts are inextricably intertwined with

the policy-making process." FEMA Opp. at 21. FEMA further argues that "Unveiling factual material

contained in the drafts would be tantamount to the publication of the evaluation and analysis of the

multitudinous facts conducted by the agency." *Id.* However, FEMA has not made any attempt to show

that the withheld documents are devoid of any segregable, non-exempt factual information. Nor has

FEMA explained why "disclosure of the manner of selecting or presenting facts" would "expose the

deliberative process" or how the facts contained in the withheld documents are "inextricably

intertwined" with the policymaking process. Implicit in FEMA's argument is that if a document is

predecisional and refers to facts, all those facts are inherently not segregable. Such an interpretation

would render the doctrine of a duty to segregate purely factual material from privileged documents

meaningless, as *per se* no such factual material whatever exist. Allowing FEMA to simply state that

facts contained within documents are "inextricably intertwined" with the policymaking process, without providing further justification, would deny the Court any meaningful opportunity to evaluate the agency's reasoning and make judicial review and empty process.

The Court should deny FEMA's motion for summary judgment. Instead, the Court should either grant discovery to further illuminate the process by which FEMA determined that these documents did not contain segregable factual information, order FEMA to provide a supplemental declaration explaining why they were unable to separate factual information from deliberative content, or direct FEMA to provide all documents reviewed for segregable factual content under for *in camera* review.

**V.   FEMA HAS EMPLOYED AN IMPROPER SEARCH CUTOFF APPROACH.**

FEMA has improperly set search cutoff dates for Plaintiff's requests. An agency's use of an improper cutoff date can unduly restrict the temporal scope of a request, thereby making the agency's subsequent search for responsive records unreasonable. *See, e.g., McGehee, III v. Central Intelligence Agency*, 697 F.2d 1095, 1101 (D.C. Cir. 1983) (observing that "a temporal limit pertaining to FOIA searches . . . is only valid when the limitation is consistent with the agency's duty to take reasonable steps to ferret out requested documents"), *vacated on other grounds on panel reh'g & reh'g en banc denied*, 711 F.2d 1076 (D.C. Cir. 1983); *see also, e.g., Pub. Citizen v. Dep't of State*, 276 F.3d 634, 643-44 (D.C. Cir. 2002) (finding an agency's search to be inadequate because the agency unjustifiably failed to use a later "cut-off" date that "might have resulted in the retrieval of more [responsive] documents"). Setting an improper search cut-off date constitutes unlawful withholding because it precludes EcoRights from obtaining documents to which it is legally entitled. "[A] system adopted by an agency for dealing with documents of a particular kind constitutes 'withholding' of those documents if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *McGehee, III*, 697 F.2d at 1110; *accord Pub. Citizen*, 276 F.3d at 641-44; *Oregon Natural Desert Association v. Gutierrez* ("*ONDA*"), 409 F. Supp. 2d 1248, 1249; 419 F. Supp. 2d 1284, 1288 (later proceeding) (D. Or. 2006). It is improper for an agency to use as a cut-off date the date of a plaintiff's request for documents, *see, e.g., McGehee III*, 697 F.2d at 1103-04.

FEMA contends *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv*., 2008 U.S. Dist. LEXIS 107177 (E.D. Cal. June 20, 2008) supports using the start of a search as the cutoff date.

1    However, an agency's conclusory statement that a "search" has "started" on a certain date does not end

2    the inquiry. While *South Yuba* does suggest that a start-of search cutoff date may be appropriate, one of

3    the cases cited therein explained that the type of search commenced is also important. As *ONDA* holds,

4    whether a start-of search cutoff date is acceptable depends upon what type of search was conducted and

5    how long such a search takes. "If the full three and one-half months are spent by a clerk rummaging

6    through file cabinets…the [start of search] cut-off date… is reasonable." However, if "the actual

7    searches…are each a one-hour session at a computer…and the computer search takes place the day prior

8    to sending the documents…defendants have not…fulfilled their obligation to conduct a reasonably

9    thorough investigation." 419 F. Supp. 2d at 1288.

10        Here, FEMA has given no indication of what kind of searches it conducted between the

11    purported commencement of its searches and when it provided responsive documents to EcoRights.

12    However, it is unlikely that FEMA spent all the time between the cutoff dates and the handover of

13    documents "rummaging through file cabinets." While FEMA claims that it commenced its April 8, 2016

14    search on the very day that the request was received, and the October 17, 2016 request on the day after

15    the request was received, these claims strain credulity. It is implausible that searches began at the very

16    moment the FOIA requests were received, and it is even less likely that the searches both began when

17    they were received and continued in a meaningful fashion throughout the entire time period. For

18    example, FEMA did not complete its response to the April 2016 Request until September 16, 2016. To

19    show that the cutoff date was reasonable, FEMA must explain what actions it took on April 8, 2016

20    which constituted a "start of search" and why the search took over four months from beginning to end.

21        FEMA additionally argues that the long lag time between the cutoff date and the production of

22    documents is harmless because EcoRights can and did send another FOIA request asking for the

23    documents generated since the last FOIA request. However, this argument is disingenuous. By the time

24    EcoRights receives responses to its subsequent requests, those documents will also be out of date.

25    Forcing EcoRights to wait several months or even a year to receive requested documents and requiring

26    them to submit multiple requests in an ultimately fruitless attempt to obtain current information

27    significantly impairs the EcoRights' ability to obtain documents.

28

1    Therefore, EcoRights request that the Court grant EcoRights limited discovery to determine

2 when the search for documents actually commenced, and what actions were taken by FEMA that

3 constituted commencement and completion of the searches.

4 **VI.    FEMA HAS FAILED TO PROVIDE SUFFICIENT REASONS FOR ITS**

5 **WITHHOLDINGS AT THE ADMINISTRATIVE STAGE.**

6    FEMA's argument that it need not provide any more than the number of pages it is processing

7 and the specific exemptions being claimed for the withholdings at the administrative level lacks merit

8 and is against sound policy. FEMA Opp. at 9-10. FOIA requires agencies withholding documents under

9 an exemption claim to "notify the person making such request of such determination and *the reasons*

10 *therefor*." 5 U.S.C. § 552(a)(6)(A)(i) (emphasis added). Sensibly, this should be interpreted to require

11 explaining to requesters some level of agency reasoning beyond bald assertion of privilege.

12    As far as EcoRights is aware, there are no controlling Ninth Circuit opinions on the issue of what

13 "reasons therefore" exactly entails, and strong policy arguments favor a more reasonable interpretation

14 by this Court than what FEMA is advocating. FEMA's interpretation is inimical to judicial economy

15 because it forces FOIA requestors to hire lawyers and sue to receive any actual reasons for withholdings.

16 This procedure effectively shifts the burden from the federal agency to the courts. The better rule would

17 be for FEMA to provide some form of actual explanation in its FOIA response letters to requesters why

18 it is withholding documents. Requiring this at the administrative stage could well save FEMA both time

19 and money, and judicial resources, because FOIA requestors may well agree upon review of FEMA's

20 more detailed reasoning that FEMA made proper withholdings and thus decide not to pursue litigation.

21    FEMA argues *CREW* and *Judicial Watch, Inc. v. Clinton* support that at the administrative stage

22 it need not do more than recite which FOIA exemptions it is claiming. *CREW* and *Judicial Watch* noted

23 that at the administrative stage agencies need not produce a *Vaughn* index, 711 F.3d 180, 187 n.5 (D.C.

24 Cir. 2013); 880 F. Supp. 1, 11 (D.D.C. 1995). However, neither of these cases create binding Ninth

25 Circuit precedent ruling out a requirement for agency FOIA responses to include at least more than a

26 purely conclusory statement of the "reasons" why documents are being withheld. As stated above, the

27 matter has not been decided by the Ninth Circuit, and the better rule is to require agencies like FEMA to

28 provide actual reasons for its withholdings.

1    **VII.    FEMA SHOULD BE ENJOINED TO COMPLY WITH FOIA'S MANDATES**.

2         The Court should exercise its express statutory authority to issue an injunction requiring FEMA

3    to comply with its FOIA obligations to provide timely final determinations on EcoRights' FOIA

4    requests, promptly provide documents responsive to these requests, to release the documents that FEMA

5    has failed to demonstrate are properly exempt from release, and to desist from setting improper search

6    cutoff dates in the future. 5 U.S.C. § 552(a)(4)(B); *see Long v. I.R.S.*, 693 F.2d 907, 909 (9th Cir. 1982).

7    The information sought by EcoRights' FOIA requests concerns significant public policy issues: whether

8    FEMA should consult under ESA § 7 with NMFS, as the latter agency has demanded, over FEMA's

9    implementation of the NFIP--a program that is damaging endangered species habitat nationwide.

10   Injunctive relief is appropriate here where the public would clearly benefit from the disclosures

11   EcoRights seeks. *See SYRCL*, 2008 WL 2523819, at *17 (*citing Long*, 693 F.2d at 909). The OGIS

12   Report referred to above, the record in this case, and EcoRights' past litigation in *ERF I*, all support

13   finding that FEMA has a pattern of prolonged delays which "repeatedly have hindered the timely

14   disclosure of nonexempt documents." *Id.* That EcoRights currently has pending new FOIA requests and

15   intends to continue to send FOIA requests to FEMA concerning the important issue of the agency's

16   NFIP implementation (Hudak Opp. Decl. ¶ 19) well supports the likelihood of continuing FEMA

17   violation with respect to requests sent by EcoRights. The Neuschaefer Decl. offers no evidence that

18   FEMA is contrite about its violations in this case or sees a need to reform its FOIA compliance going

19   forward; this declaration and the FEMA Opp. (at 20-21) instead only seek to justify FEMA's conduct in

20   this case, signaling that FEMA intends to repeat it if left to its own devices. For these reasons, the

21   injunctive relief EcoRights' seeks should be issued.

22   **VIII.    CONCLUSION**

23         For the reasons stated above the Court should deny Defendant's motion and grant EcoRights'

24   motion for summary judgment and requested declaratory and injunctive relief.

25   Date:  April 18, 2017                          Respectfully submitted,

26                                                  */s/ Christopher Sproul*
                                                    Christopher Sproul
27                                                  Attorney for Plaintiff
                                                    Ecological Rights Foundation
28