| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY,<br><br>　　　　　Defendant. | Case No. 16-cv-05254-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT & MOTION FOR DISCOVERY**<br><br>Re: Dkt. Nos. 42, 46, 67 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

## INTRODUCTION

Pending before the Court are the parties' Cross-Motions for Summary Judgment regarding three Freedom of Information Act (FOIA) requests. EcoRights Mot., Dkt. No. 42; FEMA Mot., Dkt. No. 46. Plaintiff Ecological Rights Foundation (EcoRights) is an environmental advocate seeking summary judgment on its claims that Defendant Federal Emergency Management Agency (FEMA) failed to respond to EcoRights' FOIA requests for documents. FEMA argues it has complied with the law. *See* FEMA Mot. EcoRights also requests the Court grant discovery (Pl.'s Suppl. Stmt., Dkt. No. 67), which FEMA opposes (FEMA Opp'n, Dkt. No. 71). The Court finds these matters appropriate for disposition without oral argument. *See* Fed. R. Civ. P. 78; Civ. L.R. 7-1(b). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** both Cross-Motions for Summary Judgment and **DENIES** EcoRights' request for discovery.

## BACKGROUND

EcoRights propounded three FOIA requests to FEMA to obtain information regarding FEMA's compliance with the Endangered Species Act (ESA) during the course of FEMA's implementation of the National Flood Insurance Program (NFIP) in California. *See* Second Am. Compl. (SAC), Dkt. No. 43. FEMA received EcoRights' first FOIA request on April 8, 2016; EcoRights' second FOIA request on October 17, 2016; and EcoRights' third FOIA request on October 19, 2016. EcoRights Mot. at 1.

In response to these requests, FEMA produced over 6,000 pages of documents to EcoRights. *See* First Hunt Decl. ¶ 5, Dkt. No. 68. FEMA's production included over 2,000 documents redacted in whole or in part pursuant to the deliberative process standard, 5 U.S.C. § 552(b)(5) (Exemption 5), and to protect personal private information exempt from disclosure, 5 U.S.C. § 552(b)(6) (Exemption 6). *Id.* To justify redacting these documents, FEMA served a *Vaughn* Index consisting of 59 entries.[1] First *Vaughn* Index, Dkt. No. 47-14.

On January 19, 2017, the parties negotiated a partial settlement, whereby FEMA agreed to provide unique identifier codes for each of FEMA's Exemption 6 redactions that appeared in FEMA's document production in response to the October 19 FOIA request. Pl.'s Suppl. Stmt. at 5; *see* Dkt. No. 33 (Minute Entry re: Settlement).

The Court thereafter reviewed the First *Vaughn* Index and ordered FEMA to file a revised index that referred to the new Bates-labeled production with particularized descriptions sufficient to show the exceptions FEMA invoked applied to each document withheld or redacted. May 11, 2017 Order ¶ 4, Dkt. No. 50. The Court ordered the parties to meet and confer to discuss any outstanding issues, including any disputes stemming from FEMA's Second *Vaughn* Index. June 13, 2017 Order, Dkt. No. 54; *see* Second *Vaughn* Index, Dkt. No. 56-1. The parties met on June 19, 2017 but were unable to meaningfully address continued issues with the Second *Vaughn* Index because EcoRights had only received the revised document after business hours on June 15, 2017. First Hunt Decl. ¶ 7.

The Court again ordered the parties meet and confer in person to discuss deficiencies in the Second *Vaughn* Index and issues related to "segregability," pages EcoRights believes likely contain segregable information that FEMA nonetheless redacted. June 28, 2017 Order, Dkt. No. 60. The parties met and conferred on July 13, 2017. First Hunt Decl. ¶ 9.

At the July 13, 2017 meet and confer session, EcoRights noted that FEMA had failed to

---

[1] The term "*Vaughn* Index" originates from *Vaughn v. Rosen*, wherein the court rejected an agency's conclusory affidavit stating that requested FOIA documents were subject to exemption. 484 F.2d 820, 828 (D.C. Cir. 1973).

produce by July 7, 2017 a complete, corrected set of documents responsive to EcoRights FOIA requests, despite its promise to do so. *Id.* ¶ 10. As a result, the parties again could not fully address many of the issues related to the sufficiency of the Second *Vaughn* Index, as well as the segregability issue. *Id.*

EcoRights maintained the Second *Vaughn* Index did not address the problems the Court had previously identified. *See* Pl.'s Suppl. Stmt. at 1. On the contrary, the Second *Vaughn* Index indicated FEMA had withheld documents that were not subject to a FOIA exemption; for example, documents that its sister agency, the National Marine Fisheries Service (NMFS), already publicly published on the government website "FOIA On-line." *Id.* at 2. FEMA produced a new set of corrected documents on July 20, 2017. First Hunt Decl. ¶ 11.

On July 26, 2017, the Court ordered the parties to file a status report identifying "any remaining issues . . . and their proposed means for resolving these issues" and encouraging the parties to continue to meet and confer to resolve outstanding disputes. July 26, 2017 Order, Dkt. No. 62. The parties met and conferred again on August 3, 2017 in an attempt to resolve disputes related to the inadequacies of the Second *Vaughn* Index. First Hunt Decl. ¶¶ 11-12. EcoRights contended the Second *Vaughn* Index was insufficient because it did not address the basis for redacting or withholding a significant number of documents under Exemption 5 and because it otherwise provided inadequate justifications. Final Joint Status Report at 10, Dkt. No. 63. FEMA agreed to "correct certain errors" and provide a "final corrected *Vaughn* Index conforming to the final corrected Bates-stamped version of the releases promptly." *Id.*

On August 14, 2017, FEMA produced a Third *Vaughn* Index. First Hunt Decl. ¶ 13; *see* Third *Vaughn* Index, Dkt. Nos. 68-1 & 69-1.[2] EcoRights contends the Third *Vaughn* Index does not remedy the significant problems contained within the Second *Vaughn* Index; the only difference is that the Third *Vaughn* Index adds seven entries and expands numerous entries to

---

[2] EcoRights twice filed the Third *Vaughn* Index; however, the two versions are not substantively different. *Compare* Dkt. No. 68-1 *with* Dkt. No. 69-1. For purposes of this Order, citations to the Third *Vaughn* Index refer to both Docket Nos. 68-1 and 69-1. Both documents also contain EcoRights' objections to FEMA's justifications.

3

1    address redactions on pages that it had not included in the First or Second *Vaughn* Indices. First
2    Hunt Decl. ¶ 13.

3    On August 18, 2017, EcoRights moved for discovery, including deposing appropriate
4    witnesses to determine how FEMA segregrated the release of any purely factual material from its
5    FOIA responses. Pl.'s Suppl. Stmt. at 4. FEMA opposes this request. *See* FEMA Opp'n.

**LEGAL STANDARD**

FOIA's "core purpose" is to inform citizens about "what their government is up to." *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012), *overruled on other grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016) (internal quotation marks omitted). This purpose is accomplished by "permit[ting] access to official information long shielded unnecessarily from public view and attempt[ing] to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80 (1973), *superseded on other grounds by statute as recognized in Islamic Shura Council of S. Cal. v. F.B.I.*, 635 F.3d 1160, 1166 (9th Cir. 2011). Such access "ensure[s] an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (internal quotation marks omitted). Congress enacted FOIA to "clos[e] the loopholes which allow agencies to deny legitimate information to the public." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989) (internal quotation marks omitted).

At the same time, FOIA contemplates that some information can legitimately be kept from the public through the invocation of nine Exemptions to disclosure. *See* 5 U.S.C. § 552(b)(1)-(9). "These limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act[.]" *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001) (internal quotation marks and edits omitted). "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *see Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir.

1987) (agency seeking to withhold information has burden of proving the information falls under the claimed Exemption).

"Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal*, 836 F.3d at 989 (citation omitted). To carry their burden on summary judgment, "agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify[ ] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'" *Yonemoto*, 686 F.3d at 688 (edits in original) (quoting *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004), *overruled on other grounds by Animal Legal*, 836 F.3d). "These submissions—commonly referred to as a *Vaughn* index—must be from 'affiants who are knowledgeable about the information sought' and 'detailed enough to allow a court to make an independent assessment of the government's claim of exemption.'" *Id.* (footnote and edits omitted) (quoting *Lion Raisins*, 354 F.3d at 1079; citing 5 U.S.C. § 552(a)(4)(B)). While a *Vaughn* index need not "disclose facts that would undermine the very purpose of its withholding" but "it should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection." *Id.* (internal quotation marks and citation omitted). Courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. C.I.A.*, 981 F.2d 1116, 1119-20 (9th Cir. 1992)). However, while

> the [agency's] reasons are entitled to deference, the [agency's] declarations must still describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [the agency's] bad faith. The [agency] must do more than show simply that it has acted in good faith.

*Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (internal quotation marks and citations omitted); *see also Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) ("[T]he government 'may not rely upon conclusory and generalized allegations of exemptions.'" (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980))). Moreover, "[a] basic policy of FOIA is to ensure that Congress and not administrative agencies determines what information is

5

confidential." *Lessner v. U.S. Dep't of Commerce*, 827 F.2d 1333, 1335 (9th Cir. 1987). "As such, courts do not defer to a federal agency's determination that the requested information falls under a particular FOIA exemption." *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007).

**DISCUSSION**

EcoRights' first FOIA request seeks documents addressing ESA Section 7 consultations, as well as ESA Section 10, 16 U.S.C. § 1539, habitat conservation plans or permits that have been initiated by or proposed to FEMA's implementation of the NFIP in California. EcoRights' second FOIA request seeks documents responsive to the first request coming into FEMA's possession after the date of that request, that is, April 8, 2016. EcoRights' third FOIA request targets documents relating to ESA Section 7 consultations about certain Letters of Map Amendments (LOMAs) issued for properties in Monterey Country, California through the NFIP.

EcoRights raises five arguments: (1) FEMA improperly withheld from disclosure information pursuant to FOIA Exemption 5; (2) FEMA has improperly withheld from disclosure information pursuant to FOIA Exemption 6; (3) FEMA's use of a date-of-search cut-off is inappropriate; (4) FEMA violated FOIA in releasing documents after the statutory deadline for doing so had passed; and (5) FEMA improperly withheld segregable material. EcoRights Mot. at 8-20. EcoRights also requests the Court allow discovery so EcoRights can determine what FEMA did to segregate and release factual material from its FOIA response. Pl.'s Suppl. Stmt. at 4.

**A.  FOIA Exemption 5**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. 552(b)(5). "The exemption is cast in terms of discovery law, . . . and entitles an agency to withhold from the public documents which a private party could not discover in litigation with the agency. . . . Exemption 5 thus covers the attorney-client privilege, the attorney work product privilege, and the executive deliberative process privilege. . . ." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (internal quotation marks and citations omitted). FEMA withheld documents pursuant to these three privileges.

6

1. Deliberative Process

The deliberative process privilege's ultimate aim is to prevent injury to the quality of agency decisions. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The purpose of the privilege is "to allow agencies [to] freely [] explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). The fact that a document may be used by the agency in the future is insufficient justification. *Id.* at 921.

To withhold a document under the deliberative process privilege, the agency must show the document is both predecisional and deliberative. *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). A document is "predecisional" if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." *The Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). Predecisional documents may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of Cal.*, 968 F.2d at 920 (citation omitted). A predecisional document is deliberative if "the disclosure of the materials would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* (brackets and citation omitted); *see also Maricopa Audubon Soc'y*, 108 F.3d at 1093 (same).

FEMA has not sufficiently justified its invocation of the deliberative process exemption. First, FEMA's Third *Vaughn* Index includes numerous entries that refer to documents that postdate a letter dated September 23, 2014. First Hunt Decl. ¶ 9. The September 23 letter is a decision document, reciting FEMA's version of what FEMA and FWS/NMFS had agreed upon concerning ESA § 7 consultations. *See* Hudak Decl., Ex. 10 ("[W]e believe that by reaching agreement on these key items, FEMA and the Services have paved the way for further positive coordination between our offices as we head toward a formal Section 7 consultation on the implementation of the NFIP."), Dkt. No. 47. The September 23 letter was provided to EcoRights unredacted in a separate FOIA request between EcoRights and NMFS. *Id.* ¶ 11. In its April 13,

7

2017 release, FEMA released to EcoRight its own copy of the September 23 letter, which was heavily redacted pursuant to the deliberative process privilege. *See id.*, Ex. 12 (redacted September 23 letter). FEMA submitted an unredacted copy of the September 23 letter in support of its Cross-Motion for Summary Judgment. *Id.*, Ex. 10.

EcoRights contends documents discussing means for implementing this policy cannot be "pre-decisional" and constitute the giving of advice in the decision making process. First Hunt Decl. ¶ 9. Indeed, documents that postdate the September 23, 2014 letter could well explain how that decision was to be implemented. In other words, the decision that FEMA references in its Third *Vaughn* Index appears to have already occurred, and the referenced documents reflect disputes with NFMS/FWS over whether those decisions were appropriate. These documents cannot be considered to be part of the deliberative process in advance of a particular decision. "[T]he purpose of the deliberative process privilege is to protect the quality of an agency's decision; revealing 'communications made after the decision and designed to explain it' do not affect a decision's quality." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 981 (9th Cir. 2009) (quoting *Sears*, 421 U.S. at 152).

Second, FEMA's Third *Vaughn* Index contains numerous inconsistencies where FEMA produced identical documents in forms that are completely unredacted, partially redacted, and/or completely redacted. To analyze the issues raised by FEMA's Third *Vaughn* Index, the Court considered FEMA's most recent production of documents to date, lodged by EcoRights. *See* Pl.'s Notice of Lodging, Dkt. No. 70. Using the lodged documents, the Court compared FEMA's Third *Vaughn* Index justifications to multiple redacted and unredacted documents. To illustrate, documents at Bates range 824-830 also appear at Bates range 1935-1946. FEMA redacted in full Bates range 824-830 but only partially redacted Bates range 1935-1946. *Compare* Third *Vaughn* Index, Bates Nos. 824-830 *with id.*, Bates Nos. 1935-1946. An examination of the unredacted copies shows FEMA asserts the deliberative process privilege over documents that do not contain advice to aid agency deliberations. Rather, these documents include a general overview of the NFIP program, and an email regarding the open-ended process of revision of NFIP regulations and interrelated discussions about whether FEMA should consult with the FWS/NMFS under the ESA.

8

Third, FEMA incorrectly applies the deliberative process privilege to documents concerning ongoing considerations about what agencies should do with broad regulatory authority. The documents at Bates range 1926-1931, identified as "General Responses to NMFS Comments," appear to be revisions of NFIP regulations and interrelated discussions about whether FEMA should consult with the FWS/NMFS under the ESA. The deliberative process must be limited to clearly identified decisions, rather than ongoing considerations of what to do with broad regulatory authority. *See Assembly of Cal.*, 968 F.2d at 921. Otherwise, the privilege would be boundless, as "[a]ny memorandum always will be 'predecisional' if referenced to a decision that possibly may be made at some undisclosed time in the future." *Id.* As such, these generalities about ongoing discussions among and between agencies regarding FEMA's broad regulatory authority and what FEMA may do with it are not pre-decisional.

Fourth, FEMA also seeks to redact email correspondence dating July 30, 2015 through October 6, 2015 between Michael Grimm and NMFS relating to a "possible consultation under the Endangered Species Act concerning such changes." Third *Vaughn* Index, Bates Nos. 1-6, 8-9. Based on the dates and content contained in these emails, the documents appear to be identical to those Judge Ryu already found did not satisfy the deliberative process privilege.[3] "'Exemption 5 does not protect . . . communications that promulgate or implement an established policy of an agency.'" *Ecological Rights Found.*, 2017 WL 24859, at *14 (quoting *Brinton v. Dep't of State*,

---

[3] FEMA withheld documents similar in nature to these in *Ecological Rights Foundation v. FEMA*, 2017 WL 24859 (N.D. Cal. Jan. 3, 2017). Presiding over that case, Judge Ryu found those documents were not subject to the deliberative process privilege. *Id.* at *3-5; *see* First Hunt Decl. ¶ 9. In that case, FEMA requested the return of numerous emails exempt from disclosure pursuant to the deliberative process privilege. *Ecological Rights Found.*, 2017 WL 24859, at *14. FEMA claimed it inadvertently produced the documents to EcoRights pursuant to a large FOIA request for "all documents addressing Endangered Species Act section 7 consultations that have been initiated or proposed pertaining to the implementation of the National Flood Insurance Program in California." *Id.* at *1. The emails, dated July 6, 2015 through August 25, 2015, were from FEMA's Director of Office of Protected Resources Donna S. Wieting to Michael Grimm, NMFS's Acting Assistant Administrator for Mitigation; they concerned whether FEMA is legally obligated to engage in a section 7(a)(2) consultation with NMFS pursuant to the Endangered Species Act as part of FEMA's rulemaking process regarding the NFIP. *Id.* at *2. That court refused to return the documents to FEMA finding the emails "did not appear to be predecisional, because the letters convey each agency's official policy to the other agency." *Id.* at *4.

636 F.2d 600, 605 (D.C. Cir. 1980)).

FEMA's assertion of deliberative process privilege over Bates ranges 1-6 and 8-9 is further undermined by the fact that NMFS and FWS did not consider these documents to be subject to that privilege. *See* First Hunt Decl., Ex. A at 2. In a separate FOIA request by EcoRights to NMFS, NMFS provided EcoRights with copies of documents concerning a conflict between FEMA and NMFS over FEMA's ESA § 7 consultation duties in conjunction with FEMA's NFIP. *See* Third *Vaughn* Index, Bates No. 1-6, 8-9. NMFS found these documents not to be protected under the deliberative process, and provided unredacted copies of Bates page 2 while FWS provided unredacted copies of Bates ranges 3-4. *Id.* This shows NMFS and FWS found that the documents should not be withheld as deliberative process. FEMA offers no reason why that production was improper and no reason to find these same documents are now subject to the deliberative process privilege.

Lastly, FEMA fails to explain how disclosure would expose FEMA's decision-making process so as to discourage candid discussion. FEMA also does not provide any justification for how the agency would be harmed by disclosure as required by the FOIA Improvement Act of 2016. 5 U.S.C. § 552(a)(8)(A)(i). Absent a showing of foreseeable harm to an interest protected by the deliberative process exemption, the documents must be disclosed. In failing to provide basic information about the deliberative process at issue and the role played by each specific document, FEMA does not meet its burden of supporting its withholdings with detailed information pursuant to the deliberative process privilege.

2. Attorney-Client Privilege

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). To invoke the attorney-client privilege, the party seeking protection must establish the following elements: (1) legal advice of any kind is sought, (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser, (8) unless the

10

protection be waived. *United States v. Martin*, 278 F.3d 988, 989 (9th Cir. 2002). The fact that a person is a lawyer does not make all communications with that person privileged. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

FEMA fails to meet its burden of showing the attorney-client privilege was properly invoked. While some of the exemption justifications in the Third *Vaughn* Index mention attorneys' names, the entries contain insufficient information to reasonably support a conclusion that these documents contain legal advice or could reveal communications of a confidential nature. *See e.g.*, Third *Vaughn* Index, Bates Nos. 1-6, 8-9. For example, FEMA asserts the attorney-client privilege for emails that appear at Bates ranges 1-6 and 8-9; however, FEMA provides no basis for the Court to determine that the withheld information was in fact related to the giving or receiving of legal advice. *See id.* FEMA merely recites boilerplate attorney-client privilege elements to justify the withholdings. *See, e.g.*, *id.* ("[T]he attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client privilege is not limited to the context of the litigation."). FEMA cannot meet its burden through its use of boilerplate language where "[n]o effort is made to tailor the explanation to the specific document withheld." *Wiener v. F.B.I.*, 943 F.2d 972, 978-979 (9th Cir. 1991).

FEMA also asserts attorney-client privilege for Bates ranges 147-153. Once again, FEMA provides a boilerplate recitation of the elements of attorney-client privilege and does not provide necessary information to ascertain that the withheld information reflected the giving or receiving of legal advice. *See, e.g.*, *id.*, Bates Nos. 147-153 ("[T]he attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions by an attorney to this client based upon and thus

11

reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client privilege is not limited to the context of litigation."). In its Objections to FEMA's Third *Vaughn* Index, EcoRights states FEMA's assertion of attorney-client privilege is further undermined by the fact that EcoRights requested and received from NMFS unredacted copies of the exact same pages FEMA now attempts to withhold subject to the attorney-client privilege. *Id.*, Bates Nos. 147-153. This shows that NMFS believed the documents are not exempt under attorney-client privilege. FEMA offers no basis to find the NMFS's production was improper so as to the preclude production here.

In short, FEMA's justifications for invoking the attorney-client privilege are insufficient, as they fail to identify how a lawyer is involved or to what extent the documents contain legal advice. "'These documents might well contain legal advice and confidential information, but [FEMA] does not say so.'" *National Res. Def. Council v. U.S. Dep't of Defense Council*, 388 F. Supp. 2d 1086, 1104 (C.D. Cal. 2005) (quoting *Judicial Watch*, *Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004)). Despite having three opportunities to do so, FEMA has not met its burden of establishing the attorney-client privilege was prepared by an attorney or provided to an attorney for the purposes of legal advice and remains confidential.

3. Attorney Work Product

The attorney work product privilege of Exemption 5 "clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears*, 421 U.S. at 154 (1975) (citations omitted). The doctrine aims to balance the "promotion of an attorney's preparation in representing a client" and "society's general interest in revealing all true and material facts to the resolution of a dispute." *In Re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) (internal quotation marks and citation omitted). If a document is covered by the attorney work-product privilege, the government need not segregate and disclose its factual contents. *Maricopa Audubon Soc'y*, 108 F.3d at 1092.

FEMA asserts attorney work product protection with a boilerplate recitation of the

12

exemption. *See* Third *Vaughn* Index, Bates Nos. 1-6, 8-9 ("[T]he attorney work-product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation."). FEMA cannot satisfy its burden of proof by relying on a mere recitation of the elements of the attorney work product doctrine. *See Coastal States Gas Corp.*, 617 F.2d at 865 ("[i]f an agency were entitled to withhold any document prepared any person in the Government with a law degree simply because litigation might someday occur, the policies of FOIA would be largely defeated."). FEMA therefore improperly asserts the attorney work product privilege.

4. <u>Summary</u>

For the foregoing reasons, the Court **GRANTS** EcoRights' Motion for Summary Judgment and **DENIES** FEMA's Cross-Motion regarding Exemption 5. FEMA shall produce all documents redacted and withheld pursuant to these exemptions within two weeks of the date of this Order.

**B.     FOIA Exemption 6**

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In evaluating the application of Exemption 6, courts "balance the public interest in disclosure against the interest Congress intended the exemption to protect." *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017) (internal quotation marks and citation omitted). A threat to privacy that is conceivable on some generalized conjectural level is not sufficient to justify invoking Exemption 6. *Yonemoto*, 686 F.3d at 694.

When analyzing documents exempt under U.S.C. § 552(b)(6), the Court determines whether the record is a "similar file" within the meaning of the exemption. *Forest Serv. Emp. for Envt'l Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1026 (9th Cir. 2008). The phrase "similar files" is to be construed broadly and covers "detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (internal quotation marks and citation omitted). If records qualify as "similar files," then two steps remain. The Court determines if "disclosure implicates a personal privacy interest that is 'nontrivial.'" *Yonemoto*, 686 F.3d at 693. If the agency fails to establish that disclosure "would lead to the invasion of a non-trivial personal privacy interest protected by Exemption 6,

the FOIA demands disclosure, without regard to any showing of public interest." *Id.* at 694. "An agency may carry its burden of establishing a nontrivial privacy interest by showing that the requested disclosure has 'the potential' to result in . . . harassment[,]" such as possible embarrassment and retaliatory action from "media, curious neighbors, and the public interest group itself, which might try to make unwanted contacts with the employees." *Cameranesi*, 856 F.3d at 639 (internal quotation marks, citations, and modifications omitted). If the agency meets its burden, the Court engages in a balancing test, asking whether the identified privacy interests outweigh the public's interest in the disclosure of information that "would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lahr*, 569 F.3d at 974 (internal quotation marks and citation omitted).

FEMA contends there is no pending motion seeking "disclosure of third-party, non-governmental personally identifying information." *See* FEMA Opp'n at 3. This is incorrect. EcoRights moves for summary judgment arguing FEMA's Exemption 6 redactions were improper (EcoRights Mot. at 6), which FEMA defends (FEMA Mot. at 14). Furthermore, the parties' Partial Settlement Agreement required FEMA to provide unique identifier codes for each of FEMA's Exemption 6 redactions that appeared in FEMA's document production in response to the October 19 FOIA request. *See* EcoRights Mot. at 6; *see also* Minute Entry re: Settlement. EcoRights contends FEMA has, to date, left dozens of un-coded Exemption 6 redactions in the documents it produced. EcoRights Mot. at 6. As such, FEMA cannot plausibly argue it is surprised that EcoRights requests release of all documents withheld under Exemption 6.

FEMA invoked Exemption 6 to redact portions of records that contain the names of personal contact information of private citizens in the LOMA records system. FEMA Opp'n at 3. FEMA contends it limits disclosure of LOMA application records and the personally identifying information contained therein to ensure compliance with the Privacy Act of 1974. *Id.* However, the unredacted records do not contain personnel or medical records. They instead appear to be applications from property owners or developers for Flood Insurance Rate Map Amendments, or requests to exclude properties from Special Flood Hazard Areas when appropriate. FEMA's Flood Insurance Rate Maps are publicly available, and any alterations to the maps are likewise

14

public documents.[4] Pl.'s Suppl. Stmt. at 5.

While the applications and request might qualify as "similar files" within the meaning of Exemption 6, FEMA has not provided any particularized explanation of what non-trivial privacy interest would be implicated if these third party, non-governmental names and contact information are disclosed. Nothing in the record leads the Court to find these individuals will be subjected to "embarrassment, shame, stigma, and harassment" or other negative consequences if their associations with these records were revealed. *Forest Serv. Emp.*, 524 F.3d at 1026. While there may well be some non-trivial privacy interest implicated here, the Court declines to speculate as to what that may be, and it cannot conclude these documents are categorically protected on the basis they contain "names" and "business contact information." *See Wiener*, 943 F.2d at 988 ("The reviewing court should not be required to speculate on the precise relationship between each exemption claim and the contents of the specific documents.") (internal quotation marks, citations, and brackets omitted).

Assuming, arguendo, FEMA had carried its burden of establishing a nontrivial interest, the public's interest in the disclosure of the information greatly outweighs FEMA's privacy interest in the LOMA record system. The Court agrees with EcoRights that "local communities are entitled to this information so they may adopt map changes and revisions in their own flood mapping for their land-use regulation in floodplains so areas within their jurisdiction can be approved for participation in FEMA's National Flood Insurance Program." *See* Pl.'s Suppl. Stmt. at 5. As such, the maps have a significant public interest as the primary tools used in flood protection, habitat preservation, and evaluation.

Throughout this litigation the Court provided FEMA with numerous opportunities to address deficiencies in its three *Vaughn* Indices. While FEMA has requested more bites, the Court agrees with EcoRights' assessment that the apple is down to its core. For the foregoing reasons,

---

[4] Flood Insurance Rate Map, https://www.fema.gov/flood-insurance-rate-map-firm (last visited Nov. 30, 2017); How to Find your Firm and Make a FIRMette, FEMA, www.fema.gov/media-library-data/1475101463102-67d0ca994fa3d8b9246f570034ea79b0/How_to_Find_Your_FIRM_and_Make_a_FIRMette.pdf (last visited Nov. 30, 2017).

15

the Court **GRANTS** EcoRights' Motion for Summary Judgment and **DENIES** FEMA's Cross-Motion regarding Exemption 6. FEMA shall produce all documents redacted and withheld pursuant to these exemptions within two weeks of the date of this Order.

**C.   Search Cut-off Dates**

EcoRights contends the Court should issue declaratory judgment that FEMA's search cut-off date violates FOIA. EcoRights Mot. at 15; SAC ¶¶ 66-68. In each of FEMA's document releases, FEMA used the date it began its document search as the search cut-off date. FEMA Mot. at 16-17. FEMA's record search for the April 8 request began on April 8; FEMA's record search for the October 17 request began on October 18; and FEMA's record search for the October 19 request began on October 27. Neuschaefer Decl. ¶ 12, Dkt. No. 46-1. FEMA thus only searched for documents in existence on the date the search began, but not for documents created between the time the search began and the time it produced responsive documents. FEMA contends "the scope of requests is limited to the date the search begins, as both a practical matter and as FEMA's policy to make documents available to the maximum extent possible." Hudak Decl. Ex. 4 at 1.

A date-of-search cut-off ensures that any records will be captured by the agency's search, resulting in the processing of records that would be included through a search conducted with a more restrictive date-of-request cut-off. *See Public Citizen v. Dep't of State*, 276 F.3d 643, 644 (D.C. Cir. 2010) (recognizing that for an agency with a large backlog of FOIA requests, a search conducted using a date-of-search cut-off would capture "a potentially large number of relevant documents" created after the date of the request); *see also McGehee v. C.I.A.*, 697 F.2d 1095, 1104 (D.C. Cir. 1983) (favoring a date-of-search cut-off because it "results in a much fuller search and disclosure" than does a date-of-request cut-off). A search cut-off based on the date that a FOIA search begins therefore is appropriate. *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2015 WL 4452136, at *10 (N.D. Cal. July 20, 2015) (rejecting any argument the appropriate cut-off date is not the day the searching began and citing cases); *South Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 2008 WL 2523819, *14-15 (E.D. Cal. June 20, 2008) (holding date-of-search cut-off proper); *Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 111

(D.D.C. 2005) ("The D.C. Circuit has all but endorsed the use of date-of-search as the cut-off date for FOIA requests.")).

"Under the date-of-search approach, [a plaintiff] can, with relative ease, file a second FOIA request for documents created since [the cut-off date]." *Edmonds Inst.*, 383 F. Supp. 2d at 111. EcoRights could receive all documents responsive to its first FOIA request that post-date April 8 simply by filing a follow up FOIA request; indeed, that is what EcoRights did by sending FEMA another FOIA request on October 17. For the foregoing reasons, the Court **GRANTS** FEMA's Cross-Motion and **DENIES** EcoRights' request as to the declaratory judgment claim on this issue.

### D. Timeliness of FEMA's Response

When an agency receives a request for information, FOIA requires the agency to determine within twenty days "whether to comply with such a request," at which time it must immediately notify the requester of its determination. 5 U.S.C. § 552(a)(6)(A). If the agency concludes that it may need more time to respond to the request, it must first notify the requester so that the latter has an opportunity to narrow the request. *Id.* Then, the agency may extend the twenty-day deadline by an additional ten days if there are "unusual circumstances." *Id.* Unusual circumstances include the need to collect records that are held off-site, to review voluminous materials, or to consult with another agency. *Id.*

EcoRights seeks a declaratory judgment that FEMA's delays in responding to Plaintiff's FOIA request are unlawful. EcoRights Mot. at 15. Declaratory relief is proper when there are purely legal questions at issue and if the judgment will clarify the legal issues and provide clarity to the parties and the public. *Natural Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992). Declaratory relief may be warranted when an agency has ignored statutory mandates, including deadlines imposed by statute. *See id.* (granting declaratory relief because the "court must uphold adherence to the law, and cannot condone the failure of an executive agency to conform to express statutory requirements.").

FEMA violated FOIA by failing to respond to EcoRights' April 2016 and October 2016 requests within the statutory time limit. On April 8, 2016, FEMA sent EcoRights an email

acknowledgment of the April 2016 request which invoked the 10 working-day extension. Hudak Decl. ¶¶ 2-3 & Exs. 1-2. With the invocation of the 10 working-day extension, the FOIA deadline for FEMA's final response to the April 8 request was May 20, 2016. *Id.* ¶ 3. But FEMA provided its response to the April 8 request on September 16, 2016 – 119 days after the statutory deadline. *Id.* ¶ 11 & Ex. 10.

FEMA repeated this violation with regard to EcoRights' October 19, 2016 request. On October 20, 2016, FEMA received EcoRights' FOIA request and again sought a 10-day extension to respond. *Id.* ¶ 14 & Ex. 13. As such, FEMA's response was due on December 2, 2016. On December 2, 2016, FEMA sent EcoRights an interim response letter that FEMA processed 19 out of 1,182 responsive pages. *Id.* ¶ 14 & Ex. 16. On December 15, 2016, FEMA released a second interim response letter, which stated that out of the 600 pages reviewed "300 pages are releasable in their entirety, and portions of 200 pages are exempt from release." *Id.* ¶ 14 & Ex. 17. FEMA released its final response on December 29, 2016 – 27 days after the statutory deadline for the October request. *Id.* ¶ 14 & Ex. 18.

FEMA has repeatedly failed to comply with its statutory responsibility to respond fully to EcoRights' FOIA requests within the statutory timeframe. FEMA also has repeatedly failed to produce a sufficiently-detailed *Vaughn* Index, despite having multiple opportunities to do so; repeatedly failed to produce complete, labeled sets of documents; and repeatedly failed to meet production deadlines in these proceedings. The recurring nature of these violations and the possibility that they might reoccur with any of EcoRights' future FOIA requests show that declaratory relief is appropriate under these circumstances. For the foregoing reasons, the Court **GRANTS** EcoRights' Motion and **DENIES** FEMA's Cross-Motion. EcoRights is entitled to declaratory relief because FEMA has repeatedly failed to comply with its express statutory requirements.

### E. Request for Discovery

FOIA provides that any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. 5 U.S.C. § 552(b)(E). The district court may rely on an agency's declaration in

making its segregability determination. *Pacific Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). Sufficiently detailed agency affidavits are presumed to be made in good faith and may be taken at face value. *Hunt*, 981 F.2d at 1119. "In short, a district court is not required to conduct an independent *in camera* review of each withholding unless an agency declaration lacks sufficient detail or bears some indicia of bad faith by the agency." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015).

FEMA's Disclosure Branch Chief Eric Neuschaefer initially represented that FEMA "considered and made a determination regarding whether there was any non-exempt segregable information with respect to each redaction and withheld document. The releases to plaintiff reflect FEMA's judgment that there is no additional non-exempt segregable information that has no be released." First Neuschaefer Decl. ¶ 6, Dkt. No. 46-1. The Court ordered FEMA to file a declaration from a person having personal knowledge of FEMA's efforts to ensure it has not withheld segregable information to "provide a more complete description of FEMA's efforts." May 11, 2017 Order, Dkt. No. 50. Mr. Neuschaefer filed a second declaration explaining FEMA's process in greater detail. *See* Second Neuschaefer Decl., Dkt. No. 52.

EcoRights nonetheless requests the Court allow it to "conduct discovery, including deposing appropriate FEMA witness[es] regarding the issue of segragability in order to develop an adequate record to determine whether FEMA has complied with its obligation." Pl.'s Suppl. Stmt. at 4. While the discovery process ordinarily grants each party access to evidence, discovery in FOIA cases is limited because the underlying case revolves around the propriety of revealing certain documents. *Wiener*, 943 F.2d at 977. Courts have uniformly acknowledged that discovery is unusual and disfavored in FOIA cases. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008). The decision whether to allow discovery rests within the district court judge and is "sparingly granted." *Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 242 (6th Cir. 1994).

Because the Court has ordered FEMA to produce all information withheld pursuant to Exemptions 5 and 6, and because Mr. Neuschaefer's Second Declaration sufficiently describes the steps FEMA took to ensure segregable information was produced, EcoRights' request for discovery is **DENIED AS MOOT**.

**CONCLUSION**

For the reasons explained above, the Court **GRANTS IN PART** EcoRights' Motion for Summary Judgment and **DENIES IN PART** FEMA's Cross-Motion for Summary Judgment. The Court **ORDERS** FEMA to release all documents redacted and withheld from disclosure pursuant to Exemptions 5 and 6. The Court **DENIES** EcoRights' request for declaratory judgment pertaining to FEMA's use of the date-of-search cut-off, and **GRANTS** EcoRights' request for declaratory judgment as to the issue of untimeliness. The Court also **DENIES** EcoRights' request for discovery.

No later than January 4, 2018, EcoRights shall file a notice to confirm FEMA has complied with this Order.

**IT IS SO ORDERED.**

Dated: November 30, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge