Christopher Sproul (State Bar No. 126398)
Christopher Hudak (State Bar No. 282283)
Danielle Rathje (State Bar No. 300167)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone:  (415) 533-3376
Facsimile:  (415) 358-5695
Emails:  csproul@enviroadvocates.com, christopherwhudak@gmail.com,
dnrathje@gmail.com

Fredric Evenson (State Bar No. 198059)
Law Offices of Fredric Evenson
109 Quarry Lane
Santa Cruz, CA 95060
Telephone: (831) 454-8216
Facsimile:  (415) 358-5695
Email: ecorights@earthlink.net

Drevet Hunt (Bar No. 240487)
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155
Email:  drev@lawyersforcleanwater.com

Attorneys for Plaintiff, ECOLOGICAL RIGHTS FOUNDATION

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, a non-profit corporation,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY, an agency of the Department of Homeland Security,<br><br>        Defendant. | Case No. 16-cv-05254-MEJ<br><br>NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ECORIGHTS' MOTION FOR ATTORNEYS' FEES AND COSTS<br><br>Hearing date: April 19, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom B, 15th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................................ ii

I.     INTRODUCTION ................................................................................................................ 1

II.    STATUTORY BACKGROUND ........................................................................................ 2

III.   STATEMENT OF FACTS ................................................................................................. 3

IV.    ARGUMENT ..................................................................................................................... 12

    A.   FOIA Fee Awards to Prevailing Plaintiffs is an Important Part of Congressional Intent. ...... 12

    B.   EcoRights Meets the Legal Standard for the Recovery of Attorneys' Fees Under the FOIA. 13

        1.   EcoRights is Eligible for Fees Recovery ......................................................... 13

        2.   EcoRights is Entitled to Fees Recovery ......................................................... 16

    C.   EcoRights' Attorneys' Fee Request is Reasonable. ............................................... 18

        1.   The Hours Claimed in EcoRights' Fee Request Are Reasonable. .................. 19

            a.  EcoRights' Prefiling, Case Litigation and Settlement Discussion Time Is Compensable ... 20

            b.  Time Spent Seeking Attorneys' Fees Recovery Is Compensable ........................... 22

        2.   EcoRights' Rates Are Consonant with Prevailing San Francisco Market Rates. ............ 23

    D.   EcoRights is Entitled to Recover Reasonable Costs of Litigation. ........................... 25

V.     CONCLUSION .................................................................................................................. 25

1

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

2

PLEASE TAKE NOTICE that on April 19, 2018 at 10:00 a.m. Plaintiff Ecological Rights Foundation

3

("EcoRights") will move in Courtroom B of the 15th Floor of United States District Court, Northern

4

District of California, 450 Golden Gate Ave., San Francisco for an award of attorneys' fees and costs

5

against the Defendant Federal Emergency Management Agency ("FEMA"). This motion is based on the

6

Memorandum of Points & Authorities, supporting declarations and exhibits, and proposed order filed

7

herewith.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*American Immigration Council v. DHS,*
    82 F. Supp. 3d 396 (D.D.C. 2015) ........................................................................... 21, 22

*Assembly of Cal. v. U.S. Dep't of Commerce,*
    968 F.2d 916 (9th Cir. 1992) ................................................................................... 3

*Assembly of State of Cal. v. U.S. Dept. of Commerce,*
    1993 WL 188328 (E.D. Cal. 1993) ........................................................................ 22

*Blackwell v. Foley,*
    724 F. Supp. 2d 1068 (N.D. Cal. 2010) .................................................................. 24

*Brayton v. Office of the U.S. Trade Rep.,*
    641 F.3d 521 (D.C. Cir. 2011) ............................................................................... 15

*Camacho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008) ................................................................................. 23

*Cazalas v. U.S. Dep't of Justice,*
    709 F.2d 1051 (5th Cir. 1983) ........................................................................... 12, 13

*Citizens for Responsibility and Ethics in Washington v. Federal Election Comm'n ("CREW"),*
    711 F.3d 180 (D.C. Cir. 2013) ................................................................................. 2

*Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Justice,*
    820 F. Supp. 2d 39 (D.D.C. 2011) ......................................................................... 14

*City of Riverside v. Rivera,*
    477 U.S. 561 (1986) ............................................................................................... 22

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001) ..................................................................................................... 3

*Dep't of Air Force v. Rose,*
    425 U.S. 352 (1976) ................................................................................................. 1

*Dep't of Justice v. Reporters Comm. for Freedom of Press,*
    489 U.S. 749 (1989) ................................................................................................. 2

*Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*,

No. 15-cv-04068-DMR, 2017 U.S. Dist. LEXIS 1054 (N.D. Cal. Jan. 3, 2017) ......................... 16

*Ecological Rights Foundation v. Fed. Emergency Mgmt. Agency*,

No. 16-05254, 2017 U.S. Dist. LEXIS 197451, 2017 WL 5972702

(N.D. Cal. Nov. 30, 2017)..................................................................... 2, 3, 4, 14, 18, 19

*Ecological Rights Foundation v. Federal Emergency Management Agency*,

No. 17-17539 (9th Cir. Jan. 9, 2018) ................................................................ 10

*Elec. Privacy Info. Ctr. v. FBI*,

80 F. Supp. 3d 149 (D.D.C. 2015) ..................................................................... 21

*Fiducia v. U.S. Dep't of Justice*,

185 F.3d 1035 (9th Cir. 1999) ............................................................................ 3

*Fischer v. SJB-P.D. Inc.*,

214 F.3d 1115 (9th Cir. 2000) .......................................................................... 18

*Gates v. Deukmejian*,

987 F.2d 1392 (9th Cir. 1992) .......................................................................... 23

*Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers*,

732 F. Supp. 1014 (N.D. Cal. 1989) ................................................................ 21

*Hajro v. U.S. Citizenship and Immigration Services*,

900 F. Supp. 2d 1034 (N.D. Cal. 2012) .......................................................... 12, 19, 22

*Hensley v. Eckerhart*,

461 U.S. 424 (1983)........................................................................................... 19

*Hernandez v. U.S. Customs & Border Prot.*,

No. 10-4602, 2012 U.S. Dist. LEXIS 14290 (E.D. La. Feb. 7, 2012).................................... 16, 22

*Hiken v. DOD*,

836 F.3d 1037 (9th Cir. 2016) .......................................................................... 24

*John Doe Agency v. John Doe Corp.*,

493 U.S. 146 (1989)............................................................................................. 2

*Judicial Watch, Inc. v. BLM*,

562 F. Supp. 2d 159 (D.D.C. 2008) ................................................................. 13

*Judicial Watch v. DOC,*

470 F.3d 363 (D.C. Cir. 2006) ......................................................................... 22

*Judicial Watch, Inc. v. FBI,*

522 F.3d 364 (D.C. Cir. 2008) ......................................................................... 15

*Judicial Watch, Inc. v. U.S. Dep't of Justice,*

878 F. Supp. 2d 225 (D.D.C. 2012) ................................................................. 15

*Kerr v. Screen Guild Extras, Inc.,*

526 F.2d 67 (9th Cir. 1975) ............................................................................. 19

*Long v. IRS,*

932 F.2d 1309 (9th Cir. 1991) ................................................................... 16, 18

*Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS,*

559 F. Supp. 2d 1055 (C.D. Cal. 2008) ..................................................... 22, 23

*Morales v. City of San Rafael,*

96 F.3d 359 (9th Cir. 1996) ............................................................................. 19

*Moreno v. City of Sacramento,*

534 F.3d 1106 (9th Cir. 2008) ................................................................... 19, 20

*National Archives & Records Admin. v. Favish,*

541 U.S. 157 (2004) .......................................................................................... 2

*Nationwide Bldg. Maint., Inc. v. Sampson,*

559 F.2d 704 (D.C. Cir. 1977) ......................................................................... 13

*Natural Res. Def. Council, Inc. v. EPA,*

966 F.2d 1292 (9th Cir. 1992) ......................................................................... 14

*Oglesby v. U. S. Dep't of Army,*

920 F.2d 57 (D.C. Cir. 1990) ............................................................................. 3

*Oregon Natural Desert Ass'n v. Gutierrez,*

442 F. Supp. 2d 1096 (D. Or. 2006) ................................................................ 14

*Oregon Natural Desert Ass'n v. Locke,*

1    572 F.3d 610 (9th Cir. 2009) ............................................................................... 14

2   *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,

3    No. 14-4365, 2015 U.S. Dist. LEXIS 94997 (N.D. Cal. July 20, 2015)........................ 14

4   *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,

5    No. 14-01130, 2017 U.S. Dist. LEXIS 29130 (N.D. Cal. Mar. 1, 2017)........................ 24

6   *Pacificans For A Scenic Coast v. Cal. DOT*,

7    No. 15-02090, 2017 U.S. Dist. LEXIS 199145 (N.D. Cal. Nov. 22, 2017) .................. 24

8   *Pande v. ChevronTexaco Corp.*,

9    No.  04-05107, 2008 U.S. Dist. LEXIS 87584 (N.D. Cal. Apr. 1, 2008)........................ 24

10  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,

11   478 U.S. 546 (1986)............................................................................................. 17

12  *Prison Legal News v. Schwarzenegger*,

13   608 F.3d 446 (9th Cir. 2010) ............................................................................... 24

14  *Public.Resource.org v. IRS*,

15   2015 U.S. Dist. LEXIS 175943 (N.D. Cal. Nov. 20, 2015).................................. 13, 17, 18, 21, 25

16  *Sierra Club v. EPA*,

17   625 F. Supp. 2d 863 (N.D. Cal. 2007) ................................................................. 21

18  *Sierra Club v. United States EPA*,

19   75 F. Supp. 3d 1125 (N.D. Cal. 2014) ................................ 13, 14, 16, 17, 18, 21, 22, 25

20  *Sorenson v. Mink*,

21   239 F.3d 1140 (9th Cir. 2001) ............................................................................. 19

22  *Steffel v. Thompson*,

23   415 U.S. 452 (1974).............................................................................................. 14

24  *Stonebrae, L.P. v. Toll Bros.*,

25   No. 08-0221, 2011 U.S. Dist. LEXIS 39832 (N.D. Cal. Apr. 7, 2011)........................ 24

26  *Webb v. County Bd. of Educ.*,

27   471 U.S. 234 (1985).............................................................................................. 21

28  *Zemansky v. EPA*,

767 F.2d 569 (9th Cir. 1985) ....................................................................... 2

**RULES**

N.D. Cal. Local Rule 293(c) ........................................................................ 19

**STATUTES**

5 U.S.C. § 552 ....................................................................................... 1, 3, 14

5 U.S.C. § 552(a)(3)(A) ............................................................................... 2

5 U.S.C. § 552(a)(3)(C) ............................................................................... 3

5 U.S.C. § 552(a)(4)(E) ....................................................................... 3, 13, 14

5 U.S.C. § 552(a)(4)(E)(I), (II) .................................................................. 14

5 U.S.C. § 552(a)(6)(A)(i) ......................................................................... 2, 3

5 U.S.C. § 552(a)(6)(B)(i) ............................................................................. 2

16 U.S.C. § 1536 .......................................................................................... 1

**LEGISLATIVE HISTORY**

House Comm. On Gov't Operations & Senate Comm. On the Judiciary, 94th Cong., Freedom of Information Act and Amendments of 1974 (P.L. 93-502) Source Book: Legislative History, Texts, and Other Documents (Joint Comm. Print 1975), available at http://perma.cc/X2XW-9B4K .................... 12

## I.   INTRODUCTION

EcoRights seeks to recover its attorneys' fees and costs incurred in this Freedom of Information Act ("FOIA") action. EcoRights obtained far-reaching relief vindicating its rights under FOIA and advancing FOIA's larger purposes, thus well entitling EcoRights to recover its attorneys' fees and costs.

EcoRights sent a series of three FOIA requests to FEMA starting April 8, 2016 seeking up-to-date information about FEMA's efforts to comply with the Endangered Species Act ("ESA") in its implementation of the National Flood Insurance Program ("NFIP") in California. EcoRights was concerned that FEMA had not complied with ESA § 7 (16 U.S.C. § 1536)'s requirement to properly consult with the National Marine Fisheries Service ("NMFS") or the U.S. Fish and Wildlife Service ("USFWS") over the NFIP's adverse impacts on endangered and threatened species in California, thus jeopardizing those species. EcoRights sought records from FEMA pursuant to FOIA to investigate these concerns and to respond with appropriate public advocacy efforts to persuade FEMA to change its NFIP implementation in a fashion better for the environment. These tools include publicizing the adverse impacts of FEMA's conduct to its members, other environmental organizations, and the media via postings on its website, social media postings, and other communications to the press.

FEMA repeatedly missed FOIA's deadlines for responding to all three of EcoRights' information requests, provided incomplete responses, and improperly redacted and withheld documents. The Court remedied these wrongs by issuing declaratory judgment that FEMA had violated FOIA's deadlines for responding to EcoRights' requests and ordering FEMA to release all documents redacted and withheld pursuant to FOIA Exemption 5 and 6 in a detailed opinion published on LEXIS and Westlaw.

EcoRights' excellent results achieved in this case for itself and for the broader public interest in open government entitle EcoRights to a fully compensatory fee award for its time spent on this action: its attorneys' fees "lodestar" of $613,847.66, derived by multiplying EcoRights' reasonable case hours by its reasonable San Francisco legal market-based rates plus $1464.94 in ordinary litigation costs necessarily incurred in this successful case.

## II.   STATUTORY BACKGROUND

Congress enacted FOIA, 5 U.S.C. § 552, to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976), and

to create an enforceable citizen right to know "what their government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989); This phrase "should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). "This purpose is accomplished by 'permit[ting] access to official information long shielded unnecessarily from public view and attempt[ing] to create a judicially enforceable public right to secure such information from possibly unwilling official hands.'" *see also Ecological Rights Foundation v. Fed. Emergency Mgmt. Agency*, No. 16-05254, 2017 U.S. Dist. LEXIS 197451, at *6, 2017 WL 5972702 (N.D. Cal. Nov. 30, 2017) at (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).

To ensure that the public is kept current concerning its government's activities and can acquire timely information from government agencies, Congress imposed strict deadlines for responses to FOIA requests. Within 20 working days, federal agencies must provide a determination that (1) informs the requester as to the disposition of its FOIA request, *i.e.*, whether documents will be provided or withheld and if the latter, why, and (2) that informs the requester of a right to appeal any decision not to provide requested documents. 5 U.S.C. § 552(a)(6)(A)(i). This provision requires an agency to have completed its search, collected and reviewed all responsive documents, and notified a requester as to its determination of which documents will be produced, which will be withheld, and which exemptions will apply, within 20 working days. *Citizens for Responsibility and Ethics in Washington v. Federal Election Comm'n* ("*CREW*"), 711 F.3d 180, 186-89 (D.C. Cir. 2013); *Ecological Rights Foundation*, 2017 U.S. Dist. LEXIS 197451, at *29. Federal agencies at most can extend FOIA's 20 working day deadline by 10 working days by informing the requester of "unusual circumstances" and when the agency will respond. 5 U.S.C. § 552(a)(6)(B)(i). FOIA further requires agencies to provide requested documents "promptly." 5 U.S.C. § 552(a)(3)(A); *CREW*, 711 F.3d at 188 (prompt document production "typically would mean within days or a few weeks of a 'determination,' not months or years.").

Agencies must conduct reasonable searches for documents responsive to FOIA requests with methods reasonably expected to produce all existing documents. 5 U.S.C. § 552(a)(3)(C); *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). FOIA requires that an agency release documents responsive to FOIA requests unless the documents fall under a specifically enumerated exemption, which are

construed narrowly. *E.g.*, *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001); *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). When an agency withholds documents under a claim of exemption, it must "notify the person making such request of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i); *Oglesby v. U. S. Dep't of Army*, 920 F.2d 57, 65 (D.C. Cir. 1990). 5 U.S.C. § 552(a)(6)(A)(i) "requires that the agency provide enough information, presented with sufficient detail, clarity, and verification, so that the requester can fairly determine what has not been produced and why and the court can decide whether the exemptions claimed justify the nondisclosure." *Fiducia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1043 (9th Cir. 1999).

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section [5 U.S.C. § 552] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). A complainant "has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.*

## III.   STATEMENT OF FACTS

EcoRights' claims have concerned FEMA's failure to comply with three EcoRights' FOIA requests sent respectively on April 8, 2016 ("April 2016 Request"); October 17, 2016 ("October 17, 2016 Request"), and October 19, 2016 ("October 19, 2016 Request"). At the time EcoRights filed this suit on September 14, 2016, FEMA had produced a series of partial responses to the April 2016 Request, but had yet to issue a final determination concerning this request--which was long overdue under FOIA's 20 or 30 working day (depending on whether FEMA had sought extension) deadlines. FEMA did not provide what it styled as a final response to the April 2016 Request until September 16, 2016, 119 days after the statutory deadline. After the suit was filed and while it was pending, FEMA also failed to provide timely responses/final determinations for the October 19, 2016 Request, which it did not provide until December 29, 2016, 27 days after the statutory deadline. *See Ecological Rights Foundation*, 2017 U.S. Dist. LEXIS 197451, at **30-31 (recounting FEMA missing FOIA statutory deadlines for responses to these requests). FEMA withheld portions of over 2000 pages of the 6000+ pages it found to be responsive to these FOIA requests, contending they constituted deliberative process, attorney work

product, and/or attorney-client communications exempt from disclosure under FOIA Exemption 5 or personal private information exempt from disclosure under FOIA Exemption 6. *See id*. at **2-3. FEMA also referred some of the documents it found responsive to these FOIA requests to the National Marine Fisheries Service ("NMFS") and the US Fish and Wildlife Service ("USFWS") for those agencies to review for potential release.

On December 9, 2016, the Court issued an order referring the case to Magistrate Judge Laporte for a mandatory settlement conference. Dkt. 24; *see also* Dkt. 27 (Dec. 13, 2016). EcoRights was able to negotiate a partial settlement agreement ("Settlement Agreement") with FEMA at the January 19, 2017 settlement conference conducted by Judge Laporte that required FEMA to produce some documents/and/or explanations for apparent discrepancies in its document productions. Dkt. 36 (Feb. 6, 2017); Dkt. 42-21 (March 7, 2017). Briefly summarized, the terms were as follows: (1) FEMA would provide 477 missing pages from its response to EcoRights' April 2016 FOIA Request ("Term 1"), (2) FEMA would provide EcoRights with an explanation for why EcoRights received fewer documents then FEMA stated would be produced in its interim response letters (in addition to the 477 pages addressed by Term 1) ("Term 2"), (3) FEMA would follow up with NMFS and the USFWS regarding release of the pages that FEMA stated were referred to these agencies in FEMA's interim response letters and provide EcoRights with an explanation within two weeks whether these agencies would produce these documents or withhold them pursuant to a FOIA exemption ("Term 3"), (4) FEMA would supplement its production in response to EcoRights' April 2016 FOIA Request to address EcoRights' objections that FEMA's prior productions were missing attachments and included emails with cut off text or would explain why the productions were nonetheless complete ("Term 4"), (5) FEMA would refer withheld names and contact information for non-FEMA personnel to the agencies the employees work for and ask these other agencies to determine whether to release the documents, and if after 30 days the issue was not resolved to EcoRights' satisfaction, EcoRights could reassert the issue in its Motion for Summary Judgment ("Term 5"), and (6) FEMA agreed to provide a unique identifier code for the third-party names and personal information withheld from its response to EcoRights' October 19, 2016 FOIA request ("Term 6").

FEMA failed to comply with the Settlement Agreement in many respects, however, forcing Plaintiff's counsel to spend considerable hours attempting to secure this compliance. With respect to

Term 4, FEMA sent a series of document productions that continually failed either to include the missing attachments and e-mail text or were produced in such jumbled, confused fashion that it was impossible for EcoRights to determine whether the missing attachments or e-mail text had been provided. FEMA did not finally correct this problem until October 2017, after receiving several written objections from EcoRights, a series of court orders repeatedly directing FEMA to address this problem, and various court-ordered meet and confer discussions. Sproul Decl. ¶¶ 22-24.

FEMA's compliance with the Settlement Agreement's Term 3's requirement that FEMA check with NMFS and USFWS about releasing FEMA-referred documents was also problematic. Whereas FEMA's series of interim response letters collectively indicated that FEMA had referred 45 pages of documents to NMFS for review and release, EcoRights received only *38 pages* from NMFS (after significant delay on December 14, 2016) along with an indication that this was the total sum of documents provided by FEMA. Whereas FEMA's interim FOIA response letters had indicated that FEMA had referred five pages of documents responsive to EcoRights' FOIA requests to USFWS for review, EcoRights received *21 pages* of documents from USFWS (after significant delay on March 8, 2017) that USFWS indicated constituted this sum total of documents referred to it from FEMA. *Id.* ¶ 25. Several written exchanges with FEMA's counsel failed to resolve these discrepancies, which was not finally resolved until the court-directed meet and confer between the parties on August 3, 2017. *Id.*

Time-consuming problems further arose with FEMA's compliance with Term 5 of the Settlement Agreement's obligation concerning unredacting the names of other agencies' federal employees. On February 24, 2017, FEMA sent documents unredacting the names of other agencies' employees. *Id.* ¶ 26. However, these documents were only a small subset of the relevant universe, just those documents constituting the first interim production of documents responsive to EcoRights' April 2016 Request. The names of federal employees in all of the remaining documents that FEMA had provided to EcoRights remained redacted. *Id.* Plaintiff's counsel continued to pursue this problem in multiple communications and meet and confer discussions with FEMA's counsel and in court filings. FEMA did not correct this problem until a supplemental document production on July 17, 2017. *Id.*

Time-consuming problems further arose with FEMA's compliance with Term 6 of the Settlement Agreement's obligation for FEMA to provide unique identifier codes for the third-party names in

1    redacted documents. *Id.* ¶ 27. Plaintiff's counsel continued to pursue this problem in multiple

2    communications and meet and confer discussion with FEMA's counsel and in court filings, including

3    during a June 19, 2017 court-ordered meet and confer, a court-ordered meet and confer in the Court's

4    chambers on July 13, 2017, and an additional telephonic meet and confer with FEMA's counsel on

5    August 3, 2017. EcoRights was ultimately unable to reach agreement with FEMA concerning this issue,

6    which has necessarily been resolved by the Court on summary judgment as discussed below. *Id.*

7          EcoRights moved for summary judgment on March 7, 2017. Dkt. 42. FEMA cross-moved for

8    summary judgment on April 7, 2017. Dkt. 46. Plaintiff replied in support of its summary judgment

9    motion and opposed FEMA's cross-motion on April 18, 2017. Dkt. 48. The Court heard oral argument

10   on the summary judgment motions on May 11, 2018. The Court then issued an order requiring FEMA to

11   (1) provide Plaintiff a complete Bates-numbered set of documents by May 25, 2017, (2) file a

12   declaration "explaining the basis for the apparent discrepancy between its position that all responsive

13   documents that are not being withheld pursuant to Exemptions 5 and 6 have been produced, and the

14   responses of the third party agencies to which FEMA referred documents for review," (3) file a

15   declaration by June 8, 2017 to supplement Mr. Neuschaefer's previously filed declaration with more

16   information on FEMA's efforts to segregate factual information, FEMA's process for evaluating

17   whether responsive information should be withheld, and quality control efforts, (4) file a revised *Vaughn*

18   index by June 15, 2017 that fixed the problems in the first index, and produce any additional documents

19   it found in that process, "and/or file a declaration confirming it is not withholding any responsive

20   documents other than those listed in its revised *Vaughn* Index." Dkt. 50 (May 11, 2017).

21         FEMA failed to comply in various respects with the Court's May 11, 2017 Order. This

22   noncompliance required Plaintiff's counsel to spend considerable additional time reviewing and

23   digesting FEMA's subsequent document releases and other communications to be able to point out to

24   the Court in supplemental briefing how FEMA's actions fell short of the Order's requirements. FEMA

25   failed to provide a "complete, corrected production of responsive documents that is consecutively Bates-

26   labeled" by May 25, 2017, as the Court had ordered. (FEMA also failed to meet the May 25, 2017

27   deadline for filing the requisite notice of compliance with the Court's May 11 Order). Instead, FEMA

28   released a set of documents on May 23, 2017 that was not consecutively Bates-labeled. FEMA's errors

1    required careful review to assess compliance with the Court's May 11, 2017 Order. Sproul Decl. ¶ 32.

2         FEMA sent EcoRights a supplemental FOIA response with additional documents on June 12,

3    2017. This production had several problems that further consumed Plaintiff's counsel's time: (1) it

4    appeared to omit at least one page, (2) it included 145 new pages that EcoRights had never seen before

5    (without FEMA providing any explanation for the mysterious appearance of these new documents), (3)

6    it appeared to still perpetuate FEMA's failure to provide EcoRights with the missing pages from e-mail

7    messages and missing attachments referred to in Term 4 of the Settlement Agreement (and at a

8    minimum certainly perpetuated EcoRights' inability to find the missing pages and attachments--a

9    problem that EcoRights had repeatedly complained to FEMA about to no avail), and (4) it still contained

10   redactions of names that the Settlement Agreement required FEMA to unredact or code. *Id.* ¶ 33.

11        In a June 12, 2017 filing, EcoRights pointed out to the Court problems with FEMA's compliance

12   with the Settlement Agreement and the Court's May 11, 2017 Order and expressed an intent to file a

13   motion to compel such compliance. In response, the Court ordered the parties to meet and confer and

14   attempt to resolve this noncompliance and to report to the Court concerning their discussion. Order to

15   Meet and Confer (Dkt. 54, June 13, 2017). Counsel met as directed on June 19, 2017 and reached

16   agreement on what FEMA should further do to comply with FOIA and when, but this meeting also

17   failed to resolve all issues given subsequent continued problems with FEMA's conduct, as described

18   below. The parties filed the Court-ordered joint status report on June 23, 2017. Dkt. 58. As detailed in

19   the status report, by this point FEMA had only partially complied with the Settlement Agreement, and

20   made yet more promises to fix the issues. Due to an impasse with FEMA's counsel over whether the

21   parties should stipulate to the agreements that FEMA made in the June 19, 2017 meet and confer,

22   Plaintiff filed a supplemental statement regarding meet and confer agreements on June 23, 2017. Dkt.

23   59; *see also* Sproul Decl. ¶ 34.

24        On June 28, 2017, the Court ordered FEMA to respond to the issues raised in Plaintiff's

25   supplemental statement by July 10, 2017. Dkt. 60. The Court also required that FEMA "confirm it

26   complied with the stipulations it reached in paragraphs 1, 3, 4, and 7 of the Joint Report re Meet and

27   Confer (Dkt. No. 58), which required FEMA's compliance by July 7, 2017." *Id.* The Court also ordered

28   the parties to meet and confer by July 14, 2017. *Id.*; *see also* Sproul Decl. ¶ 35. The parties met and

conferred again as required, on July 13, 2017. Before this meeting, FEMA had filed its second revised *Vaughn* index. Dkt. 56. FEMA's new *Vaughn* index still sought to justify withholding documents that were not entitled to FOIA exemption (such as documents already made publicly available and published on the Internet by NMFS) and/or by using vague generalities that suffered from the same problems as FEMA's previous *Vaughn* index that EcoRights challenged in its summary judgment motion. Prior to the July 13, 2017 meet and confer, EcoRights provided FEMA with its preliminary response pointing out its objections to this second *Vaughn* index. At the July 13 meet and confer, EcoRights noted that, though FEMA had promised to produce a complete, corrected set of documents responsive to EcoRights' FOIA requests by July 7, 2017, it had yet to produce these documents. As a result, Plaintiff was unable to address, much less resolve with FEMA many of the issues related to the *Vaughn* index's sufficiency. Sproul Decl. ¶ 36.

FEMA produced a third new set of "corrected" documents on July 17, 2017. As with the others, this required that Plaintiff's counsel again carefully review over 6,000 pages of documents to evaluate whether FEMA had at last corrected problems with its prior FOIA productions and to be able to report to the Court concerning the same. *Id*. ¶ 37.

On July 26, 2017, the Court ordered a status report identifying any remaining issues and encouraged the parties to meet and confer. Dkt. 62. The parties met and conferred on August 3, 2017. During this meeting, FEMA offered to provide a third *Vaughn* index to address the shortcomings of its previous indices. EcoRights insisted that FEMA had had more than ample opportunity to justify its asserted exemptions and contended that FEMA should instead produce all the documents, unredacted. FEMA declined to agree to this. This impasse was only then resolved by the Court's summary judgment ruling. Sproul Decl. ¶ 38.

As ordered, the parties filed their Final Joint Report (Dkt. 63) on August 4, 2017. As noted in this Joint Report, FEMA had by then produced additional information and documents to EcoRights. FEMA had unredacted all federal employee name and contact information, which numbered in the hundreds. Second, FEMA had added some missing unique identifier codes to indicate the common identity of certain third parties whose names FEMA had redacted. Third, FEMA had provided an explanation for some of the missing or incomplete documents from its response to EcoRights' April 2016 FOIA

Request. Fourth, FEMA had confirmed that it had made all referrals to other agencies for review and potential release of documents. Fifth, FEMA had corrected a missing page in its July 17 production from one of its computer files. However, extensive issues remained. FEMA still had failed to comply with its Settlement Agreement obligation to provide unique identifier codes for all the third parties whose identities FEMA had redacted, FEMA had still not produced a complete set of documents responsive to the April 2016 Request, and FEMA had not produced a sufficient *Vaughn* index. Sproul Decl. ¶ 39.

FEMA filed a status report on August 11, 2017, stating it was unable to timely provide the missing documents responsive to EcoRights' April 2016 FOIA Request. Dkt. 65. FEMA provided a status update on August 18, 2017 stating that it would produce these missing documents the following week. Dkt. 66. However, FEMA missed this deadline as well. Sproul Decl. ¶ 40.

Though the Court did not authorize this, FEMA produced a third, revised *Vaughn* index on August 14, 2017, only four days before EcoRights had promised a complete response to the Court concerning its views on FEMA's second *Vaughn* index. *See* Dkt. 69 at 5-6. This required Plaintiff's counsel to review yet another lengthy *Vaughn* index. The third *Vaughn* index repeated the second index's problems. FEMA also asserted attorney work product privilege for the first time, still failed to provide explanations for certain documents, added seven new entries and expanded numerous entries to address redactions on pages of documents that FEMA had previously not included in its first two *Vaughn* indices. *See id.* On August 18, 2017, Plaintiff filed its objection to FEMA's *Vaughn* index (Dkt. 68) and an additional Plaintiff's Supplemental Statement (Dkt. 67) which together detailed FEMA's still continuing failure to correct its previous document productions that were missing attachments or had cut off text and improper withholding of documents under erroneous assertions of FOIA Exemption 5 and 6. Yet FEMA continued to provide Plaintiff's counsel with a moving target; on the very same day, August 18, 2017, FEMA produced additional documents to EcoRights to further "correct" its previous FOIA responses. *See* Dkt. 70; Sproul Decl. ¶ 41.

On November 30, 2017, the Court issued its summary judgment order ("MSJ Order"), resolving EcoRights' remaining claims for injunctive and declaratory relief. Dkt. 74. The MSJ Order effectively granted EcoRights nearly all the relief it sought in this case. Specifically, the Court granted EcoRights summary judgment (and denied FEMA's competing cross motion) finding that: 1) FEMA had

improperly invoked FOIA Exemption 5 in withholding documents, 2) FEMA had improperly invoked FOIA Exemption 6 in withholding documents, 3) declaratory judgment was proper that FEMA had failed to comply with FOIA deadlines in providing its responses to EcoRights' FOIA requests. The Court further ordered FEMA to release, within 2 weeks, all documents withheld from disclosure pursuant to Exemptions 5 and 6.

FEMA's compliance with the Court's MSJ Order also did not go smoothly, however, further amplifying the hours Plaintiff's counsel necessarily had to devote to the case. FEMA requested and EcoRights agreed to extend by one week FEMA's deadline to release its previously withheld documents and to further extend this deadline until January 12, 2018 if Judge Donato extended the briefing deadlines in EcoRights' three related ESA cases against FEMA--to allow EcoRights time to review the documents that FEMA would produce in this case to determine whether to utilize them for briefings in these latter cases. Dkt. 77, Dkt. 78. Judge Donato subsequently denied the briefing deadline extension request and thus EcoRights would not agree to further extension of FEMA's deadline to provide the documents. In response, on December 20, 2017, FEMA sought a stay from this Court while it further contemplated an appeal, which EcoRights opposed. Dkts. 79, 80, 81. On December 20, 2017, the Court denied the full stay sought by FEMA and instead granted a short continuance until December 27, 2017 for FEMA to either produce all the redacted documents or represent that the Solicitor General will file an appeal. Dkt. 82. FEMA waited until it was bumping up against this December 27 deadline to file a Notice of Appeal in this Court and another emergency stay request before the Ninth Circuit Court of Appeals, which EcoRights opposed. Dkt. 83; *Ecological Rights Foundation v. Federal Emergency Management Agency*, No. 17-17539 (9th Cir.) (Dkt. 5). On December 27, 2017, the Ninth Circuit denied FEMA's emergency stay motion. *EcoRights*, No. 17-17539 (9th Cir.) (Dkt. 10). FEMA subsequently dismissed its Ninth Circuit appeal. *EcoRights*, No. 17-17539 (9th Cir. Jan. 9, 2018) (Dkt. 13) & *id*. (9th Cir., Jan. 12, 2018); *see also* Sproul Decl. ¶ 43.

Even after these stay motion losses, FEMA did not promptly and without problem comply with its court-ordered production of the documents by December 27, 2017. FEMA did produce a new set of released documents to EcoRights on December 29, 2017. However, these documents did not correspond to the Bates-stamped version of FEMA's July 17, 2017 document production (during the parties' meet

and confer efforts to resolve their disputes). As such, EcoRights could not confirm whether the newly

produced documents were complete. Plaintiff's counsel informed FEMA of the problem with the

documents, and requested that by January 2, 2018 FEMA produce a complete set of unredacted Bates-

stamped documents corresponding to FEMA's July 2017 document production, so that they could be

compared for completeness. FEMA provided EcoRights a disk with additional Bates-stamped

documents on January 4, 2018, but this still omitted files that FEMA had produced in July 2017.

Plaintiff's counsel communicated with FEMA counsel to try to resolve this problem and also filed a

Notice of Defendant's Failure To Comply with this Court's Summary Judgment Order (Dkt. 86). In

response to this Notice, the Court issued an additional order on January 8, 2018, directing EcoRights to

file a status report to inform the Court whether FEMA completed its production. Dkt. 87. EcoRights

filed a status report on January 9, 2018, reporting the problems that still had not been solved with

FEMA's document production. Dkt. 88; *see also* Sproul Decl. ¶ 44.

In response to Plaintiff's counsel's complaints, FEMA's counsel replied that FEMA was preparing

a corrected set to address a Bates numbering issue in the set previously sent to EcoRights. On January 8,

2018, FEMA provided Plaintiff with access to an FTP site that contained these documents, but upon

Plaintiff's counsel's review it appeared some of the previously produced files were corrupted, while

others were not on the FTP site. Plaintiff pointed out these problems to FEMA's counsel in an e-mail. In

response, on January 9, 2018, FEMA corrected the January 8 production and contacted Plaintiff,

indicating that the files now on the FTP site were intended to complete its production. Plaintiff reported

to the Court that it needed additional time to review this January 9, 2018 production to see whether it at

last corrected all of the problems with FEMA's previous productions (in part because of a problem with

how FEMA had renamed the newly produced documents). Plaintiff's counsel indicated that it expected

to complete its review and would further report to the Court by January 18, 2018. Sproul Decl. ¶ 45.

EcoRights filed a further report to the Court on January 18, 2018 as promised. Dkt. 89. As this

additional report indicated, FEMA's document production problems continued. FEMA still had

improperly redacted information from nine pages of documents despite being ordered to release all

documents in full. On January 23, 2018, the Court set a telephonic conference for January 25, 2018 at

10:30 AM to further discuss these matters. An hour before the Court's telephonic conference, FEMA

counsel emailed Plaintiff's counsel unredacted versions of most of the documents along with a message that one of the documents previously redacted was in FEMA's view "non-responsive to Plaintiff's FOIA requests," but that FEMA would nonetheless search for it. During the telephonic conference, FEMA's counsel explained this to the Court and added that FEMA had been unable to find the document in question. The Court ordered FEMA to file a declaration concerning this explanation (Civil Minutes, Dkt. 94, Jan. 25, 2018), which FEMA did on January 30, 2018 (Dkt. 95). Sproul Decl. ¶ 46.

## IV.   ARGUMENT

### A.   FOIA Fees Awards to Prevailing Plaintiffs Is an Important Part of Congressional Intent.

FOIA's legislative history underscores that "a crucial means of implementing [FOIA's open government aims] is a liberal attorneys fee provision." *Cazalas v. U.S. Dep't of Justice*, 709 F.2d 1051, 1057 (5th Cir. 1983); *Hajro v. U.S. Citizenship and Immigration Services*, 900 F. Supp. 2d 1034 (N.D. Cal. 2012), *rev'd on other grounds,* 807 F.3d 1054 (9th Cir. 2015) (quoting legislative history). FOIA's fee provision serves three policies: fundamental fairness in not requiring members of the public to bear the burden of legal costs to obtain documents from the government to which they are entitled, giving all members of the public the realistic incentives and means to challenge the government for failing to comply with FOIA, and deterring the government from violating FOIA. *E.g.*, *Cazalas*, 709 F.2d at 1057.

Concerning fairness, as the Senate Report that accompanied FOIA's 1974 amendments explained:

> Generally, if a complainant has been successful in proving that a government official has wrongfully withheld information, he has acted as a private attorney general in vindicating an important public policy. In such cases it would seem tantamount to a penalty to require the wronged citizen to pay his attorneys' fee to make the government comply with the law.

House Comm. On Gov't Operations & Senate Comm. On the Judiciary, 94th Cong., Freedom of Information Act and Amendments of 1974 (P.L. 93-502) Source Book: Legislative History, Texts, and Other Documents (Joint Comm. Print 1975), available at http://perma.cc/X2XW-9B4K ("1974 Source Book") at 171. Concerning realistic court access to challenge government FOIA misconduct, Congress expressly recognized fee shifting was essential so "that the average citizen can take advantage of the law to the same extent as the giant corporations with large legal staffs." 1974 Source Book at 170. Finally, with respect to deterring government misconduct, "Congress recognized the practical effect of the fee provision is that, if the government had to pay legal fees each time it lost a case, it would be much more careful to oppose only those areas it had a strong chance of winning….The fee provision is designed to

deter the government from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable." *Cazalas*, 709 F.2d at 1057.

In deciding this motion, the Court should be mindful that "the current FOIA statute's legislative history evinces a strong desire for courts to be aggressive in awarding attorney's fees to prevailing parties." *Judicial Watch, Inc. v. BLM*, 562 F. Supp. 2d 159, 175 (D.D.C. 2008), *rev'd on other grounds*, 610 F.3d 747 (D.C. Cir. 2010); *see also Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977) ("courts should always keep in mind the basic policy of the FOIA to encourage the maximum feasible public access to government information and the fundamental purpose of section 552(a)(4)(E) to facilitate citizen access to the courts to vindicate their statutory rights."). Consonant with Congressional intent, EcoRights' nonprofit public interest group status and limited financial means particularly warrant awarding EcoRights' requested fees. Lamport Decl. ¶¶ 2, 3, 6. Where  the plaintiff "is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information." *Public.Resource.org v. IRS*, 2015 U.S. Dist. LEXIS 175943 at *11 (N.D. Cal. Nov. 20, 2015).

**B.  EcoRights Meets the Legal Standard for Recovering Attorneys' Fees Under FOIA.**

A court may grant an award of attorney's fees under 5 U.S.C. § 552(a)(4)(E) where the plaintiff establishes that it is both eligible and entitled to a fee award. *Sierra Club v. United States EPA*, 75 F. Supp. 3d 1125, 1136 (N.D. Cal. 2014). As discussed below, EcoRights is eligible and entitled to fees.

**1.  EcoRights Is Eligible for Fees Recovery.**

To be eligible for fees, EcoRights must have "substantially prevailed." 5 U.S.C. § 552(a)(4)(E). This standard can be met if EcoRights "obtained relief through either -- (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* EcoRights must also show that "(1) the filing of the action could reasonably have been regarded as necessary to obtain the information, and that (2) the filing of the action had a substantial causative effect on the delivery of the information." *Sierra Club*, 75 F. Supp. 3d 1125, 1136 (N.D. Cal. 2014) (citations omitted). EcoRights is eligible for FOIA fees recovery because it has "substantially prevailed" in this litigation by obtaining judicial orders requiring FEMA to provide more documents to EcoRights and granting EcoRights declaratory relief that will vindicate FOIA's purposes and/or because this lawsuit prompted FEMA to voluntarily provide

more documents to EcoRights. *See* 5 U.S.C. § 552(a)(4)(E)(I), (II).

The Court's November 30, 2017 summary judgment order ("MSJ Order") (Dkt. 74) granted EcoRights full relief on the case's core issues, rejecting FEMA's invocation of FOIA Exemption 5 and 6 and requiring full release of *all* FEMA's redacted materials at issue (over 2000 pages), and granting declaratory relief that FEMA had violated FOIA deadlines. *Ecological Rights Foundation*, 2017 U.S. Dist. LEXIS 197451, at **9-33. Obtaining such relief secured important legal rights for EcoRights to remedy the core problem that prompted their litigation: FEMA's unwillingness to provide them with documents in accord with FOIA deadlines and without unlawful redactions, thus severely hampering their public interest advocacy efforts. Obtaining the release of all redacted materials is obviously substantial success that changed the legal relationship of the parties. *See Sierra Club v. United States EPA*, 75 F. Supp. 3d 1125, 1141 (N.D. Cal. 2014) (court order requiring production of documents by deadline renders parties substantially prevailing); *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Justice*, 820 F. Supp. 2d 39 (D.D.C. 2011) (same). Moreover, obtaining declaratory relief that FEMA violated FOIA deadlines for providing responses to EcoRights' three FOIA requests at issue is substantial success that changed the legal relationship of the parties. *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-4365, 2015 U.S. Dist. LEXIS 94997, at *24 (N.D. Cal. July 20, 2015) ("'an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA'"); *Oregon Natural Desert Ass'n v. Gutierrez*, 442 F. Supp. 2d 1096, 1098 (D. Or. 2006) (obtaining declaratory judgment that agency violated FOIA by missing response deadlines makes plaintiff a substantially prevailing party eligible for fees), *aff'd in pertinent part, rev'd in part on other grounds*, *Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2009); *see also Locke*, 572 F.3d at 618 (prevailing on any claim brought under 5 U.S.C. § 552 creates fees eligibility under 5 U.S.C. § 552(a)(4)(E)); *cf. Steffel v. Thompson*, 415 U.S. 452, 468-469 (1974) (courts properly presume that litigants will act in accord with declaratory judgments, even though such judgments are non-coercive); *Natural Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992) (declaratory judgments "delineate important rights and responsibilities" and thus are of "significant educational and lasting importance" that help to ensure compliance with law).

EcoRights' securing its partial Settlement Agreement with FEMA on January 19, 2017 further bolsters its prevailing party status as the agreement required in part that FEMA produce additional

documents by a date certain. (Dkt. 42-21). While FEMA's compliance with this Settlement Agreement was continually bollixed and delayed, eventually FEMA provided more documents pursuant to this Settlement Agreement. In addition (and interrelatedly), the series of court orders requiring FEMA to continue to attempt to fix and augment its document productions and/or explain the apparent discrepancies in its document productions lead FEMA to release additional documents to EcoRights, including 145 pages of new, previously unidentified documents found by FEMA's apparent additional search performed in response to the series of court orders. *See* Status Order (Dkt. 35, Feb. 3, 2017), Order to Meet and Confer (Dkt. 54, June 13, 2017), Order Re Parties' Reports (Dkt. 60, June 28, 2017), Status Report Order (Dkt. 62, July 26, 2017); Sproul Decl. ¶ 33. Specifically, as a direct result of FEMA's relatively prompt compliance with the Settlement Agreement, EcoRights secured the missing 477 pages from its original production of documents responsive to the April 2016 Request as required by Term 1 of the Settlement Agreement with FEMA. Sproul Decl. ¶ 21. Additionally, through a combination of the Settlement Agreement, additional court orders, and additional court ordered meet and confer sessions, EcoRights eventually secured FEMA's overdue (*i.e.*, past the Settlement Agreement deadlines) additional document releases : (1), NMFS and USFWS produced documents that FEMA referred to these agencies for their review as required by Term 3 of the Settlement Agreement. *Id.* ¶ 39. (2), FEMA produced in October 2017 the missing attachments and cut off e-mail text as required by Term 4 of the Settlement Agreement. *Id.* ¶ 41. (3), FEMA produced documents on February 24, 2017 that partially complied with Term 5 of the Settlement Agreement's obligation concerning unredacting the names of other agencies' federal employees. *Id.* ¶ 26. (5), FEMA produced documents on February 21, 2017 that partially complied with Term 6's obligation for FEMA to provide unique identifier codes for the third-party names in redacted documents. *Id.* ¶ 27. In securing the additional release of documents prompted by the litigation, even when not directly ordered by the Court, EcoRights further "substantially prevailed." *E.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 231-233 (D.D.C. 2012); *see generally Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 525 (D.C. Cir. 2011) (FOIA entitles plaintiffs to fee recovery on catalyst theory basis); *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008) (same).

EcoRights required timely receipt of the documents at issue to further its public interest mission. Lamport Decl. ¶¶ 3-5. Filing the action was plainly reasonably necessary to obtain the documents at

issue given that FEMA issued administrative determinations that it would withhold large portions of the documents and that FEMA then sought summary judgment upholding its withholding. Accordingly, EcoRights' only means to obtain the withheld documents was via litigation and court order. Moreover, EcoRights was well aware of FEMA's history of failing to comply with FOIA deadlines having (successfully) sued FEMA in part before over missed deadlines. *See Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, No. 15-cv-04068-DMR, 2017 U.S. Dist. LEXIS 1054 (N.D. Cal. Jan. 3, 2017). As the facts would later prove, these concerns were well justified, as it took 21 months for EcoRights to receive a complete set of documents from FEMA responsive to the April 2016 Request. Moreover, the very fact that FEMA consistently missed deadlines, produced incomplete releases, and consistently failed to justify its withholdings *even while this action was pending before this Court for over a year* demonstrates the necessity of this litigation. Without this litigation, FEMA's responses would undoubtedly have been even worse. The filing of the action had a substantial causative effect on the delivery of the information, both by resulting in orders requiring FEMA to release documents and by catalyzing document releases.

### 2. EcoRights Is Entitled to Fees Recovery.

In evaluating EcoRights' entitlement to attorney's fees, the Court is to consider four factors: (1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law. *E.g., Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991). EcoRights is entitled to attorney's fees under a due consideration of these factors.

The most important factor for determining entitlement to a fee award is the first, the public benefit factor. *E.g.*, *Hernandez v. U.S. Customs & Border Prot.*, No. 10-4602, 2012 U.S. Dist. LEXIS 14290, at *23 (E.D. La. Feb. 7, 2012). Just as in *Sierra Club*, EcoRights is a "nonprofit public interest group[] organized [to] alert the public of issues concerning environmental and health risks." *Sierra Club*, 75 F. Supp. 3d at 1143. Like the plaintiffs in *Sierra Club*, EcoRights utilized the documents to advance its efforts to promote compliance with environmental laws intended to broadly benefit the public interest environmental protection. Specifically, EcoRights utilized the documents to investigate whether FEMA was complying with the ESA as it implements the NFIP and use its findings to advocate for public interest changes to FEMA's conduct, both via public interest litigation and via outreach to its members,

other organizations, and the media. Lamport Decl. ¶¶ 4-5. Like the plaintiffs in *Sierra Club*, EcoRights thus conferred a public benefit entitling it to attorney fee recovery. *Sierra Club*, 75 F. Supp. 3d at 1143-44; *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986) (recognizing that groups bringing citizen suits to enforce federal environmental laws "would be performing a public service"). Additionally, EcoRights disseminated the information it learned in the documents to its members, other organizations, the public and the press, including by directly sharing the documents or summarizing their contents in various messages, website postings, press releases, and interviews. Lamport Decl. ¶¶ 4-5. While not a prerequisite to finding EcoRights to have conferred a public benefit, this information dissemination further bolsters that EcoRights had indeed done so in a fashion entitling it to attorney's fees. *Sierra Club*, 75 F. Supp. 3d at 1143-44; *Public.Resource.org*, 2015 U.S. Dist. LEXIS 175943 at **6-7. The threshold for dissemination of information for attorney's fees entitlement under FOIA is low. Posting acquired information on the group's website or utilizing it for press releases generally suffices. *Public.Resource.org*, 2015 U.S. Dist. LEXIS 175943 at *7. "Even where the degree of dissemination is limited, or where the level of public interest in the requested information itself is minimal, the public benefit factor may still favor an award 'as long as there is a public benefit from the fact of... disclosure.'" *Id.* Accordingly, the first factor strongly favors awarding EcoRights its fees.

Courts typically combine the second and third factors into a single factor of assessing "whether a plaintiff has sufficient private incentive to seek disclosure of the documents without expecting to be compensated for it." *Sierra Club*, 75 F. Supp. 3d at 1144. In evaluating these two factors, courts "should generally award fees if the complainant's interest in the information sought was…public-oriented." *Id.*; *see also Public.Resource.org*, 2015 U.S. Dist. LEXIS 175943 at *11-12. EcoRights' status as a public interest nonprofit organization combined with its lack of any private or commercial interest underlying litigation of this case, as another judge in this District found in similar circumstances, "strongly favor an award here." *Public.Resource.org*, 2015 U.S. Dist. LEXIS 175943, at *12. EcoRights sought documents from FEMA via FOIA to assist it in learning more about FEMA's efforts to comply with the ESA as it implements the NFIP, to inform its members and other organizations about steps that can and should be taken to address the harms perpetuated by the NFIP against endangered species, to develop informed

1    statements to the press and on its website to bring public awareness and attention to the issue of the

2    NFIP's impacts on listed species, and to evaluate and pursue citizen suit enforcement against FEMA to

3    secure ESA compliance. Lamport Decl. ¶¶ 4-5. Public interest organizations that seek documents via

4    FOIA to advance environmental law compliance efforts necessarily have sought these documents for a

5    public oriented rather than a private commercial reason. *Sierra Club*, 75 F. Supp. 3d at 1144-45.

6    Accordingly, the second and third factors strongly favor awarding attorney's fees to EcoRights.

7          The fourth factor, whether the government's actions concerning FOIA compliance had a reasonable

8    basis in law "'is not dispositive' and can be outweighed where the other relevant factors favor an

9    award." *E.g.*, *Public.Resource.org*, 2015 U.S. Dist. LEXIS 175943 at **13-14. The burden is on the

10   government to demonstrate that its position was reasonable. *Id.* The Court's strongly worded MSJ Order

11   left no doubt that FEMA lacked reasonable legal basis for extreme delay in responding to EcoRights'

12   FOIA requests and for its extensive redactions. *See Ecological Rights Foundation*, 2017 U.S. Dist.

13   LEXIS 197451, at **11-27, **29-32. FEMA can have no reasonable basis in law for failing to timely

14   respond to EcoRights' FOIA requests and for its extensive redactions, which it was unable to justify

15   despite three *Vaughn* indexes. Accordingly, this factor also weighs in favor of EcoRights' fees award

16   request.

17   **C.  EcoRights' Attorneys' Fees Request Is Reasonable.**

18         "[O]nce the court has determined that the plaintiff is both eligible for and entitled to recover fees,

19   the award must be given and the only room for discretion concerns the reasonableness of the amount

20   requested." *Public.Resource.org*, 2015 U.S. Dist. LEXIS 175943 at *17 (citing *Long*, 932 F.2d at 1314).

21   In making this determination, the court must scrutinize the reasonableness of (1) the hourly rates and (2)

22   the number of hours claimed. *Id.* "If these two figures are reasonable, then there is a strong presumption

23   that their product, the lodestar figure, represents a reasonable award." *Id.* Given this strong presumption,

24   the lodestar should only be adjusted in "rare and exceptional cases." *Fischer v. SJB-P.D. Inc.*, 214 F.3d

25   1115, 1119 n.4 (9th Cir. 2000) This is not a rare case presenting such exceptional circumstances, and the

26   Court should award EcoRights its full claimed lodestar, as its claimed hours and claimed hourly rates are

27   reasonable. Notably, EcoRights' lodestar should be awarded in full or nearly in full if FEMA fails to

28

present specific reasons for reducing this lodestar.[1] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) ("If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut."); *see also Hajro,* 900 F. Supp. 2d at 1050: ("In light of the fact that 'awarding attorneys' fees to prevailing parties ... is a tedious business,' the court 'should normally grant the award in full' if the party opposing the fee request 'cannot come up with specific reasons for reducing the fee request.'").

By litigating this factually complex case and overcoming FEMA's steadfast opposition to achieve "substantial relief" equivalent to "excellent results," EcoRights is reasonably entitled to a full attorney fee recovery. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 440 (1983) ("substantial relief" equivalent to "excellent results"); *see also Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) ("excellent result" occurred when the lawsuit represented "sustained legal effort to bring about a common good."). As discussed above, EcoRights achieved excellent results by: (1) winning a declaratory judgment that FEMA had violated FOIA's deadlines by unduly delaying responses to three of EcoRights' FOIA requests, (2) winning the release of all redacted and withheld materials, (3) securing FEMA's voluntary release of numerous additional documents. EcoRights further established important legal precedent useful not only to itself in its ongoing and future attempts to acquire documents from FEMA under FOIA, but to the broader public interested in obtaining judicial relief under FOIA. EcoRights secured a published court order with extensive analysis of FOIA's requirements. *Ecological Rights Foundation*, 2017 U.S. Dist. LEXIS 197451.

### 1. The Hours Claimed in EcoRights' Fee Request Are Reasonable.

In evaluating whether EcoRights' claim of hours spent on this case is reasonable:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical [contingency] case where Plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after

---

[1] In exceptional cases, a court may adjust the presumptively reasonable lodestar based on twelve factors articulated in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) that were not already subsumed in the initial lodestar calculation. Some of these factors arguably could justify a higher award for EcoRights than its full lodestar. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 &n.9 (9th Cir. 1996); *see also* N.D. Cal. Local Rule 293(c). However, EcoRights is limiting its claim for compensation to its lodestar.

all, he won, and might not have, had he been more of a slacker.

*Moreno*, 534 F.3d at 1112. As *Moreno* recognizes, the risks of losing and recovering nothing gave EcoRights' counsel, who are working on contingency, to put only those hours into this case prudently necessary for advancing success. Sproul Decl. ¶ 52. EcoRights' counsel have exercised such care here, expending only the hours reasonably calculated to advance this case's objectives. *Id.* The Court should find the hours claimed by EcoRights to be reasonable unless FEMA comes up with specific reasons why these hours should be reduced. *E.g.*, *Moreno*, 534 F.3d at 1116.

As described in detail in its counsel's declarations, EcoRights efficiently staffed the case to minimize duplication and when possible have tasks performed by junior attorneys billing at lower rates. EcoRights took care to designate a single lawyer at a time to serve as senior, lead counsel, with responsibility for fashioning the EcoRights' claims in the complaint, devising EcoRights' central legal and factual arguments in briefs and in presentations to FEMA, revising and finalizing the complaint, shaping and exerting final editorial control over summary judgment briefing (including extensive declaration and exhibit preparation), litigation strategy, supervising others working on the case, leading settlement negotiations with FEMA, following multiple post summary judgment briefing reports to the Court as ordered, conducting several court directed meet and confer sessions with opposing counsel, and fashioning EcoRights' settlement offers on both the merits and on the attorney fee recovery matters. Sproul Decl. ¶¶ 47-52. While the exigencies of a trial in another case required Mr. Sproul to step down from his role for several months, EcoRights efficiently assigned Mr. Evenson briefly and Mr. Hunt for a more extended period to serve in this role as these two individuals had extensive familiarity with the documents at issue in this case and other issues raised by the case. *Id.*; Evenson Decl. ¶ 30, Hunt Decl. ¶¶ 13-30. Counsel have carefully reviewed and reduced their hours to reflect billing judgment as appropriate. Sproul Decl. ¶ 53; Evenson Decl. ¶¶ 31; Hunt Decl. ¶¶ 31-32; Hudak Decl. ¶ 45; Rathje Decl. ¶ 18; Coyne Decl. ¶ 17.

### a. EcoRights' Prefiling, Case Litigation and Settlement Discussion Time Is Compensable.

Before filing this case, EcoRights necessarily took time to evaluate its potential claims, including some necessary legal research for this evaluation and to draft its complaint and service of process

documents. Sproul Decl. ¶ 16. This necessary pre-filing case development time is recoverable. *Webb v. County Bd. of Educ.*, 471 U.S. 234, 243 (1985); *Public.Resource.org v. IRS*, 2015 U.S. Dist. LEXIS 175943 at *20-23 (prefiling time to develop FOIA claims recoverable); *Sierra Club v. EPA*, 625 F. Supp. 2d 863, 871 (N.D. Cal. 2007); *Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers*, 732 F. Supp. 1014, 1018 (N.D. Cal. 1989). EcoRights sought to avoid litigation costs by attempts post filing to settle the merits claims. Sproul Decl. ¶ 19. Post judgment, EcoRights has spent additional time trying to reach a settlement with FEMA concerning attorneys' fees and cost recovery, but this has failed to resolve the parties' differences. *Id., ¶¶* 17-19. EcoRights' time spent pursuing settlement is recoverable, even though full settlement ultimately proved impossible. *Public.Resource.org*, 2015 U.S. Dist. LEXIS 175943, at *20; *Sierra Club,* 75 F. Supp. 3d at 1148-49 ("In light of the strong public policy favoring settlement" time spent even on failed settlement negotiations is compensable).

EcoRights sought summary judgment to secure the remedies sought in its complaints and opposed FEMA's cross motion for summary judgment. Sproul Decl. ¶¶ 28-31. EcoRights spent many hours completing the factual and legal research necessary to brief its summary judgment motion and oppose to FEMA's cross summary judgment motion. *Id*. Time spent on this motions practice is compensable and the Court should defer to EcoRights' explanations that the time they spent was reasonably necessary to counter and prevail over FEMA. *E.g*., *American Immigration Council v. DHS*, 82 F. Supp. 3d 396, 412-413 (D.D.C. 2015) (declining "to conduct a minute evaluation of each phase or category of councils work" and awarding time in full on summary judgment motion "[b]ecause the Government vigorously and substantively litigated this case [and] the Court is satisfied by plaintiff's representations that the time spent preparing each filing was reasonably necessary."). As part of its factual development work for these summary judgment motions and subsequent filings related to FEMA's compliance with post summary judgment hearing orders, EcoRights reviewed voluminous documents, including both those produced by FEMA in response to FOIA requests and acquired from other sources such as NMFS, to determine whether, and develop arguments concerning, the adequacy of FEMA's document searches and the propriety of FEMA's withholding of documents. Sproul Decl. ¶¶ 20-27, 32-46. This document review time is compensable given its purpose in advancing EcoRights' litigation. *Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 158-160 (D.D.C. 2015) ("it would seem critical to the prosecution of a

FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation."). Time spent on matters to evaluate agency compliance with court orders is recoverable. *Judicial Watch v. DOC*, 470 F.3d 363, 371 (D.C. Cir. 2006) ("measures necessary to enforce the remedy ordered by the District Court cannot be divorced from the matters upon which [the plaintiff] prevailed….").

FEMA's repeated non-compliance with deadlines, incomplete or incoherent document releases, and three insufficient *Vaughn* indexes demanded extensive time commitment from EcoRights' counsel to litigate this case. Sproul Decl. ¶¶ 20-27, 32-46. FEMA vigorously opposed EcoRights at every turn of this litigation (unsuccessfully with respect to EcoRights' main litigation goal of forcing FEMA to release documents withheld without adequate basis). EcoRights is entitled to recovery for its time necessarily spent countering the litigation hurdles imposed by FEMA. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."); *Hernandez v. United States Customs & Border Prot. Agency*, 2012 U.S. Dist. LEXIS 14290 at *43 (E.D. La. Feb. 6, 2012) ("an agency cannot put a requestor 'through the time and expense of enforcing compliance with FOIA and then complain that the resources expended were out of proportion to the good obtained.'"); *Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055, 1061 (C.D. Cal. 2008) (same); *Assembly of State of Cal. v. U.S. Dept. of Commerce*, 1993 WL 188328 at * 17 (E.D. Cal. 1993) (same).

### b.  Time Spent Seeking Attorney's Fees Recovery Is Compensable.

EcoRights is entitled to recover for its work seeking to recover its fees and costs via settlement and then by this motion ("fees on fees"). *American Immigration Council*, 82 F. Supp. 3d at 413-14; *Hajro*, 900 F. Supp. 2d at 1050. To bring this motion, EcoRights has spent the reasonable hours necessary to meet its burden of "documenting the appropriate hours expended" in the litigation, *i.e.*, to explain to the Court the tasks necessary for EcoRights to prevail. *E.g.*, *Sierra Club*, 75 F. Supp. 3d at 1148. EcoRights has also spent the reasonable hours necessary to meet its further burden "to produce satisfactory evidence 'that the requested rates are in line with those prevailing in the community.'" *Id*. at 1152. Finally, EcoRights has appropriately explained the significance of its accomplishments, a relevant factor for the Court's award. *E.g.*, *Judicial Watch v. DOC*, 470 F.3d at 369. The contentious nature of this

1    litigation, reflected in FEMA's vigorous opposition to EcoRights at every turn, has led to EcoRights'

2    extensive time on this case, and thus this in-depth motion to justify its hours as reasonable. Sproul Decl.

3    ¶¶ 15, 28-30 34, 38, 41 & n.11; *see also, e.g., Los Angeles Gay & Lesbian Cmty. Servs. Ctr.*, 559 F.

4    Supp. 2d at 1061 (having necessitated extensive FOIA litigation, government cannot complain about

5    extent of fees generated in countering government opposition).

6        **2.   EcoRights' Rates Are Consonant with Prevailing San Francisco Market Rates.**

7        Counsel are entitled to the hourly rates "prevailing in the community for similar work performed

8    by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523

9    F.3d 973, 979-80 (9th Cir. 2008). The relevant community in this case is the San Francisco Bay area,

10   *i.e.*, where this Court sits. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Plaintiff's counsel

11   claim the following as reasonable San Francisco market-based hourly rates:

12   <u>**Attorney Hourly Rates**</u>

13      Christopher Sproul (1986 bar admission): 2016--$775; 2017--$800; 2018--$825

14      Fredric Evenson (1998 bar admission): 2016--$675; 2017--$710; 2018--$735

15      Drevet Hunt (2005 bar admission): 2017--$610; 2018--$655

16      Christopher Hudak (2012 bar admission): 2016--$410; 2017--$440; 2018--$470

17      Danielle Rathje (2013 bar admission): 2016--$375; 2017--$390; 2018--$420

18      Molly Coyne (2016 bar admission): 2017-- $350; 2018--$390

19   <u>**Paralegal Hourly Rates**</u>

20      Dawn Edberg: 2016--$265, 2017--$275, 2018--$285

21      Christopher Hudak: 2016--$200, 2017--$205, 2018--$250

22      Danielle Rathje: 2016--$200, 2018--$210

23   Plaintiff's counsel possess extensive experience in environmental law, FOIA litigation, and federal court

24   civil procedure, including serving as lead or associated counsel in numerous federal court cases

25   generating published decisions/decisions of significant precedential value, and enjoy strong professional

26   reputations. Sproul Decl. ¶¶ 54-141; Evenson Decl. ¶¶ 2-8; Hunt Decl. ¶¶ 33-44; Hudak Decl. ¶¶ 2-8;

27   Rathje Decl. ¶¶ 2-6; Coyne Decl. ¶ 2; Gaffney Decl. ¶¶ 9-10; Cooper Decl. ¶¶ 11-12; Flanders Decl. ¶¶

28   13-14.They have supported in detail that their rates accord with prevailing San Francisco legal market

rates for attorneys with comparable skill and experience working on comparable legal tasks. Sproul Decl. ¶¶ 4-14; Evenson Decl. ¶¶ 9-26; Hunt Decl. ¶¶ 2-12; Hudak Decl. ¶¶ 9-43; Rathje Decl. ¶¶ 7-17; Coyne Decl. ¶¶ 3-14; Gaffney Decl. ¶¶ 11-14; Cooper Decl. ¶¶ 13-16; Flanders Decl. ¶¶ 15-18. In accord with case law supporting such a methodology, Plaintiff's counsel have generally set their rates equivalent to the average rates awarded by this Court in a broad array of complex civil litigation. *E.g.*, Sproul Decl. ¶¶ 54-141. Developing such averages necessarily involves considering cases not arising under environmental law or FOIA, as there have been few fee awards in environmental or FOIA cases in this jurisdiction recently *i.e.*, in 2015 onward. *Id.* ¶¶ 54, 55; *see, e.g., Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) ("Although the state officials urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter"); *Stonebrae, L.P. v. Toll Bros.*, No. 08-0221, 2011 U.S. Dist. LEXIS 39832, at **9-13 (N.D. Cal. Apr. 7, 2011).[2] Experienced Bay Area practitioners knowledgeable about prevailing market rates have opined that Plaintiffs' requested rates are within the

---

[2] Judge Orrick rejected this methodology in *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv*. ("*OCE*"), holding that some of the counsel could only justify their hourly rates with data concerning awards in environmental or FOIA cases. No. 14-01130, 2017 U.S. Dist. LEXIS 29130, at **27-31 (N.D. Cal. Mar. 1, 2017). This holding contradicts controlling Ninth Circuit precedent in *Prison*. This holding further turned on an erroneous interpretation of the Ninth Circuit case Judge Orrick relied upon, *Hiken v. DOD*, 836 F.3d 1037, (9th Cir. 2016). *Hiken* supports rather than contradicts the *Prison* holding that in establishing attorney rates, courts are not to narrow the range of market data and case holdings to those issued in particular subject matters. While, as Judge Orrick noted in *OCE*, *Hiken* indicates that the courts should evaluate the rates for "similar work," *Hiken* in no way indicated that "similar work" means only that involving the same substantive law. *Hiken* was a FOIA case, but both the data relied on by the plaintiff and the district court below was not limited to FOIA work in *Hiken*. *See* 836 F.3d at 1044-1046 (noting district court reliance on *Blackwell v. Foley*, 724 F. Supp. 2d 1068 (N.D. Cal. 2010) (Americans for Disability Act claims) and *Pande v. ChevronTexaco Corp*., No. 04-05107, 2008 U.S. Dist. LEXIS 87584, (N.D. Cal. Apr. 1, 2008) (employment law claims). While *Hiken* criticized the district court, *Hiken* did not fault this aspect of the lower court's analysis. However, even if this Court were to follow *OCE*, that decision on balance would support Plaintiffs' rates sought here. Judge Orrick indicated in *OCE* that he would award Plaintiffs' counsel the same rates awarded by other courts and further implicitly acknowledged that rates go up annually. Notably, Judge Chhabria awarded Mr. Sproul $800/hr. as a 2017 rate in *Pacificans For A Scenic Coast v. Cal. DOT*, No. 15-02090, 2017 U.S. Dist. LEXIS 199145, at **5-8 (N.D. Cal. Nov. 22, 2017). Several San Francisco Superior Court orders have further awarded Mr. Sproul $800/hr. as a 2017 rate and $775/hr as a 2016 rate. Sproul Decl. ¶¶ 94, 96. The $825/hr. 2018 rate sought by Mr. Sproul is only a modest 3.2% increase over his $800 per hour 2017 rate ordered by several court decisions.

---

range of prevailing market rates for attorneys with comparable expertise and skill. Gaffney Decl. ¶¶ 11-14; Cooper Decl. ¶¶ 13-16; Flanders Decl. ¶¶ 15-18. Plaintiff further supports its rates with a declaration prepared in 2015 for another case by well-known attorney fee expert Richard Pearl and legal periodical information, and other publicly available information on rates charged by comparable counsel in this market. Sproul Decl. ¶¶ 97-99, 123-25. Such fee setting methodology is well accepted by the courts. *E.g.*, *Public.Resource.org*, 2015 U.S. Dist. LEXIS 175943; *Sierra Club,* 75 F. Supp. 3d at 1153.

**D.  EcoRights Is Entitled to Recover Reasonable Costs of Litigation.**

Through January 17, 2018, EcoRights incurred $1,464.94 in litigation costs. These costs were reasonably incurred for reasonable, typical out-of-pocket expenses normally charged to a paying client. Sproul Decl. ¶ 101, Ex. 37, 38. These necessarily incurred litigation costs are recoverable. *Sierra Club*, 75 F. Supp. 3d at 1153.

**V.   CONCLUSION**

For the foregoing reasons, EcoRights respectfully request that the Court award EcoRights $613,847.66 in attorneys' fees and $1,464.94 in costs, for a total payment of $615,317.60.[3]

Respectfully submitted,

Dated: February 15, 2018

Christopher a. Sproul
_____
Christopher Sproul, Attorney for Plaintiff

---

[3] These attorneys' fees and costs figures represent only those incurred by EcoRights through February 7, 2018. EcoRights will compile the additional fees and costs incurred in completing this motion and provide that information to FEMA shortly after filing this motion. EcoRights will seek to recover fees and costs incurred after February 7, 2018 for its work on this opening motion and on for work on its reply briefing in the reply papers it will file in support of this motion.