Christopher Sproul (State Bar No. 126398)
Christopher Hudak (State Bar No. 282283)
Danielle Rathje (State Bar No. 300167)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Emails: csproul@enviroadvocates.com, christopherwhudak@gmail.com,
dnrathje@gmail.com

Fredric Evenson (State Bar No. 198059)
Law Offices of Fredric Evenson
109 Quarry Lane
Santa Cruz, CA 95060
Telephone: (831) 454-8216
Facsimile: (415) 358-5695
Email: ecorights@earthlink.net

Drevet Hunt (Bar No. 240487)
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: drev@lawyersforcleanwater.com

Attorneys for Plaintiff, ECOLOGICAL RIGHTS FOUNDATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, a non-profit corporation,<br><br>             Plaintiff,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY, an agency of the Department of Homeland Security,<br><br>             Defendant. | Case No. 16-cv-05254-MEJ<br><br>ECORIGHTS' REPLY IN SUPPORT OF ECORIGHTS' MOTION FOR ATTORNEYS' FEES AND COSTS<br><br>Hearing date: May 31, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom B, 15th Floor |

**TABLE OF CONTENTS**

I.   FEMA Is Wrong that the Fees Award Sought Here Should Be Reduced As Facially Excessive ..... 2

II.  EcoRights Prevailed on its Core Claims and Merits A Fully Compensatory Fee Award ................. 3

III. FEMA's Requests for Large Cuts in EcoRights' Hours Lack Merit .................................................. 4

   A.   EcoRights Should Not Be Denied Recovery for Time on its 1st Summary
        Judgment Motion.............................................................................................................. 4

   B.   EcoRights Should Not Be Denied Recovery for Work on the Third Amended Complaint ...... 5

   C.   Plaintiffs' Time on Its Summary Judgment Motions Should Not Be Reduced ........................ 6

   D.   EcoRights' Time on Post-Summary Judgment Motion Work Should Not Be Reduced........... 6

   E.   EcoRights Should Recover for Its Successful Opposition to FEMA's Stay Motions............... 7

   F.   EcoRights' Hours Listed in Wall Decl. Ex. I Should Not Be Cut ........................................... 8

   G.   FEMA's "Administrative Phase" Contentions Are Partly Wrong ........................................... 9

   H.   EcoRights Should Not Be Denied Recovery for Hours Pursuing Attorney's Fees
        Recovery......................................................................................................................... 9

   I.   EcoRights' Staffing Does Not Warrant FEMA's Suggested Dramatic Cuts in its Hours ....... 11

IV.  EcoRights' Counsel's Rates Do Not Exceed Prevailing Market Rates ...................................... 14

V.   CONCLUSION........................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*A.D. v. State Highway Patrol,*
    2013 U.S. Dist. LEXIS 169275 (N.D. Cal. Nov. 27, 2013)..........................................9

*Aguirre v. L.A. Unified Sch. Dist.,*
    461 F.3d 1114 (9th Cir. 2006) ..............................................................................4

*Barnard v. Theobold,*
    721 F.3d 1069 (9th Cir. 2013) ..............................................................................1

*Cabrales v. County of Los Angeles,*
    935 F.2d 1050 (9th Cir. 1991) ..............................................................................4

*Carter v. Caleb Brett LLC,*
    741 F.3d 1071 (9th Cir. 2014) ..............................................................................1

*Chaudhry v. City of Los Angeles,*
    751 F.3d 1096 (9th Cir. 2014) .....................................................................1, 2, 15

*Costa v. Commissioner of Social Sec. Admin.,*
    690 F.3d 1132 (9th Cir. 2012) .........................................................................1, 2

*Ecological Rights Found. v. Fed. Emergency Mgmt. Agency,*
    No. 16-05254, 2017 U.S. Dist. LEXIS 197451 (N.D. Cal. Nov. 30, 2017) .........................3, 4, 8

*Gates v. Deukmejian,*
    987 F.2d 1392 (9th Cir. 1992) .........................................................................1, 2

*Gluck v. American Protection Industries,*
    619 F.2d 30 (9th Cir. 1980) ..................................................................................4

*Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers,*
    732 F. Supp. 1014 (N.D. Cal. 1989) .......................................................................10

*Gonzalez v. City of Maywood,*
    729 F.3d 1196 (9th Cir. 2013) .........................................................................1, 9

*Hajro v. U.S. Citizenship & Immigration Servs.,*
    900 F. Supp. 2d 1034 (N.D. Cal. 2012) ...................................................................15

*Hall v. CIA*,

    115 F. Supp. 3d 24 (D.C.D.C 2015) ..............................................................................4

*Hensley v. Eckhart*,

    461 U.S. 424 (1983) .......................................................................................................4

*A.D. v. State Highway Patrol*,

    No. 07-5483, 2013 U.S. Dist. LEXIS 169275, (N.D. Cal. Nov. 27, 2013) ...........10, 11

*Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS*,

    559 F. Supp. 2d 1055 (C.D. Cal. 2008) .......................................................................10

*Moreno v. City of Sacramento*,

    534 F.3d 1106 (9th Cir. 2008) .................................................1, 2, 5, 7, 14, 15

*Munger, Tolles & Olson LLP v. United States Dep't of Army*,

    No. 13-06890, 2014 WL 5781394 (C.D. Cal. Nov. 6, 2014) ........................................7

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,

    No. 14-01130 (N.D. Cal. Apr. 3, 2017) ........................................................................3

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,

    No. 14-01130, 2017 U.S. Dist. LEXIS 29130, (N.D. Cal. Mar. 1, 2017).....................8, 9, 10, 15

*Pacificans For A Scenic Coast v. Cal. DOT*,

    No. 15-02090, 2017 U.S. Dist. LEXIS 199145 (N.D. Cal. Nov. 22, 2017) ...............15

*Padgett v. Loventhal*,

    706 F.3d 1205 (9th Cir. 2013) ......................................................................................1

*Rosenfeld v. U.S. Dep't of Justice*,

    904 F. Supp. 2d 988 (N.D. Cal. 2012) .................................................................2, 8, 15

*San Francisco Baykeeper v. West Bay Sanitary Dist.*,

    No. 09-5676, 2011 WL 6012936 (N.D. Cal. Dec. 1, 2011).......................................15

*Sierra Club v. United States EPA*,

    75 F. Supp. 3d 1125 (N.D. Cal. 2014) ...............................................................7, 8, 15

*U.S. v. City and County of S.F.*,

    748 F. Supp. 1416 (N.D. Cal. 1990) ...........................................................................10

1    **<u>OTHER</u>**

2    *Guide to the Freedom of Information Act,*

3        (https://www.justice.gov/oip/doj-guide-freedom-information-act-0)................................................ 3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    FEMA's Opposition to Plaintiff's Motion for Fees and Costs (Dkt. 124) ("Opp.") urges reducing

2    Ecological Rights Foundation ("EcoRights")'s sought attorney's fees by 72% (from $720,612.84 to

3    $200,878.71)[1] with a "meat axe" 50% across-the-board cut to EcoRights' time plus additional arbitrary

4    large percent reductions in EcoRights' time on certain tasks. FEMA's 50% across-the-board cut is

5    predicated on alleged duplicative overbilling by EcoRights' counsel. FEMA's predicating such a cut on

6    vague assertions that EcoRights duplicated time by assigning six lawyers to the case without pointing to

7    specific timeslip evidence of duplication/overbilling conflicts with Ninth Circuit precedent on precedent:

> But where the district court had cut the number of hours by twenty to twenty-five percent it
> was required to provide more specific explanation than its view that 'the amount of time plaintiff's
> counsel spent was 'excessive.'…."[T]he vicissitudes of the litigation process" will require lawyers to
> duplicate tasks. "Findings of duplicative work should not become a shortcut for reducing an award
> without identifying just why the requested fee was excessive and by how much."

11   *Costa v. Commissioner of Social Sec. Admin*., 690 F.3d 1132 (9th Cir. 2012) (citing *Moreno v. City of*

12   *Sacramento*, 534 F.3d 1106 (9th Cir. 2008)) (citations omitted). FEMA's further addition of arbitrary

13   percentage cuts for entire categories of work without a showing that these cuts are proportional to a

14   tangible amount of overbilling is similarly erroneous. When District Courts cut attorneys' time more

15   than *Moreno*'s 10% "haircut," they "must show their work" and "thoroughly explain" the basis for the

16   cuts, which must be reasonably proportional to the overbilling found. *Barnard v. Theobold*, 721 F.3d

17   1069, 1077 (9th Cir. 2013) (reversing and remanding fees decision for more explanation, noting that

18   "while the district judge explained why he thought the award was excessive, he failed to explain why he

19   thought that a 40 percent reduction would be an appropriate remedy."); *Chaudhry v. City of Los Angeles*,

20   751 F.3d 1096, 1100-12 (9th Cir. 2014) (reversing 88% fees cut without required clear explanation of

21   basis for reduction)*; Carter v. Caleb Brett LLC*, 741 F.3d 1071, 1074-75 (9th Cir. 2014) (reversing

22   nearly 50 percent fee cut for lack of explanation); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1201-

23   09 (9th Cir. 2013) (reversing 54% fee cut without clear explanation of basis); *Padgett v. Loventhal*, 706

24   F.3d 1205 (9th Cir. 2013) (reversing nearly 85% fee cut without clearly showing work); *Gates v.*

---

[1] Plaintiff's opening motion sought $613,847.66 in attorneys' fees and $1,464.94 in costs incurred by EcoRights through February 7, 2018. EcoRights has incurred additional fees and costs since. EcoRights provided FEMA with time records itemizing most of these additional fees on February 20, 2018, which added up then to $692,391.61 (as is reflected in FEMA's Opp. opposing an award of that sum). Since then, EcoRights has incurred additional fees and costs which now add up to a grand total of $720,612.84 in fees and $1,728.79 in costs, after billing judgment cuts. Sproul Reply Decl. ¶ 22.

*Deukmejian*, 987 F.2d 1392, 1397-1400 (9th Cir. 1992) (heightened scrutiny given to "meat-axe approach" fee reductions, especially when fees sought are large, reversing 10% across-the-board fees cut; noting "the judge must do more than eyeball the request and if it seems excessive cut it down by an arbitrary percentage"). Time and again in reversing District Courts for large reductions in fee awards, the Ninth Circuit has reminded that *Moreno* provides the governing standard:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical [contingency] case where Plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno*, 534 F.3d at 1112; *see, e.g., Chaudry,* 751 F.3d at 1111 (citing *Moreno* admonition).

Equally wrong is FEMA's apparent urging that the awards in other Freedom of Information Act ("FOIA") cases create some sort of cap on the fees awardable in a FOIA case or that fee awards in other cases should cap EcoRights' fees on fees recovery. The Ninth Circuit has made plain that District Courts may not set *de facto* caps on recoverable fees based on the type of case involved:

> Courts cannot drastically reduce awards simply because the attorney has requested compensation for more than forty hours [in a Social Security case] or make reductions with a target number in mind. Instead, district courts must explain why the amount of time requested for a particular task is too high. Any other approach fails to give deference to the winning lawyer's professional judgment, as required by *Moreno*. 534 F.3d at 1112.

*Costa*, 690 F.3d at 1136.

FEMA further ignores that Congress considered liberal awarding of attorney's fees under FOIA crucial for securing FOIA's open government aims. *See* Plts. Mot'n for Fees at 12-13 (Dkt. 98). Awarding EcoRights its full fees, or with only a modest "haircut" is necessary to respect FOIA's fee provision's policy aims: not unfairly burdening members of the public with the legal costs to obtain government documents to which they are entitled, giving the public the means to challenge government failures to comply with FOIA, and deterring government FOIA violations. *Id.*

**I. FEMA Is Wrong that the Fees Award Sought Here Should Be Reduced As Facially Excessive.**

Arguing that the award EcoRights seeks is facially excessive, FEMA astonishingly asserts that EcoRights seeks a fee award "twice the size of the largest awards in the Northern District." Opp. at 1. FEMA contends that *Rosenfeld v. U.S. Dep't of Justice,* 904 F. Supp. 2d 988 (N.D. Cal. 2012) is the largest such award at $363,217.60. In arguing that a case decided six years ago (when prevailing

attorney rates were much lower than currently) should today be the standard for fee awards in FOIA cases, FEMA ignores the 2017 judgment in *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-01130 (N.D. Cal. Apr. 3, 2017) awarding EcoRights and its co-plaintiff $556,434.98 in attorney's fees and $3,190.39 in costs for the National Marine Fisheries Service ("NMFS")'s FOIA violations. Sproul Reply Decl., Ex. 1. This omission is not from lack of awareness. FEMA's counsel here was NMFS's attorney in *Our Children's Earth Found.*

FEMA further disingenuously argues that the award sought is excessive because this case "was essentially a discovery dispute," involving law "well-covered in the Ninth Circuit." Opp. at 15, 21. FOIA law is quite distinct from the Federal Rules of Civil Procedure and involves novel, complex questions as is reflected by (1) the Department of Justice's multi-chapter, self-billed "comprehensive legal treatise on the FOIA," *Guide to the Freedom of Information Act* (https://www.justice.gov/oip/doj-guide-freedom-information-act-0), (2) FEMA filing several lengthy briefs in this case with extensive arguments and case citations, (3) the FOIA Improvement Act of 2016's recent enactment—providing new law to interpret and (4) this Court's 20 page published Summary Judgment Order. *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, No. 16-05254, 2017 U.S. Dist. LEXIS 197451, 2017 WL 5972702 (N.D. Cal. Nov. 30, 2017). If the issues were as simple and well settled as FEMA now conveniently contends, there would have been no justification for its lengthy opposition briefs.

In any case, the argument that the fees in this case should be set in accord with what appears facially reasonable as an overall sum or in accord with the amounts awarded in other FOIA cases is plainly erroneous as discussed above. As each case presents unique facts and tasks and has its own team of lawyers with varying experience commanding varying rates, determining the reasonable lodestar in one case according to the lodestar in another would be an irrational and impermissible departure from this rule. Instead, under *Moreno*, cuts in fee awards can only be justified by clearly explained analysis of the hours and rates claimed *in this case*.

**II. EcoRights Prevailed on its Core Claims and Merits A Fully Compensatory Fee Award.**

FEMA is wrong (Opp. at 16-17) that EcoRights' fees should be cut by 25% to reflect failure to prevail on all issues. The Court granted EcoRights full relief on the case's core issues, rejecting FEMA's FOIA Exemption 5 and 6 assertions and requiring full release of *all* FEMA's redacted materials at issue

1    (over 2000 pages), and awarding declaratory relief that FEMA had violated FOIA deadlines. *Ecological*

2    *Rights Found.*, 2017 U.S. Dist. LEXIS 197451, at **9-33. EcoRights thus won relief for the core

3    problem prompting this litigation: FEMA's failure to provide documents within FOIA's deadlines and

4    without unlawful redactions, thus severely hampering EcoRights' public interest advocacy efforts.

5    Given this overall success, EcoRights having lost certain arguments is no basis for reducing its fees

6    recovery. "When a plaintiff has obtained excellent results, his attorney should recover a fully

7    compensatory fee," even though the plaintiff may have "failed to prevail on every contention raised in

8    the lawsuit." *Hensley*, 461 U.S. at 435. This is because "[l]itigants in good faith may raise alternative

9    legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not

10   a sufficient reason for reducing a fee. The result is what matters." *Id.*; *Aguirre v. L.A. Unified Sch. Dist.*,

11   461 F.3d 1114, 1123 (9th Cir. 2006); *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir.

12   1991) ("Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war.

13   Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles

14   he is certain of winning is probably not serving his client vigorously enough; losing is part of

15   winning."); *Gluck v. American Protection Industries*, 619 F.2d 30, 33 (9th Cir. 1980) (plaintiff may

16   obtain fees for time spent litigating even an unsuccessful motion so long as the "work was reasonably

17   calculated to advance plaintiff's interest"); *Hall v. CIA*, 115 F. Supp. 3d 24, 29 (D.C.D.C 2015) (no

18   reduction in FOIA fee recovery for unsuccessful arguments when overall objectives realized). Moreover,

19   FEMA's contention that EcoRights "lost" its discovery request is disingenuous. Ecorights sought

20   discovery to probe whether FEMA segregated and released any purely factual material in its withheld

21   documents. The Court ordering FEMA to release *all* withheld documents obviously mooted the need for

22   discovery as to whether there was factual material embedded in withheld documents.

23   **III. FEMA's Requests for Large Cuts in EcoRights' Hours Lack Merit.**

24       **A.  EcoRights Should Not Be Denied Recovery for Time on its 1st Summary Judgment Motion.**

25       FEMA's contention (Opp. at 16-17) that EcoRights' hours listed in Wall Decl. Exhibit C should be

26   cut as time inappropriately spent on EcoRights' first summary judgment motion (Dkt. 26) lacks merit.

27   Exhibit C is inaccurate and should be disregarded; it includes time entries unrelated to this summary

28   judgment motion—including other case management matters and the Second Amended Complaint.

1   Sproul Reply Decl. ¶ 3.[2] Moreover, FEMA ignores that this first summary judgment motion did advance

2   EcoRights' case and was part of a reasonable and successful litigation strategy. Filed before Magistrate

3   Laporte's January 2017 settlement conference (*see* Dkt. 27), the motion set forth EcoRights' arguments

4   concerning FEMA's FOIA violations and the relief that should follow. The motion thus provided the

5   convincing backdrop for EcoRights' settlement conference arguments concerning FEMA's litigation

6   risks and helped secure EcoRights' partial settlement. Sproul Reply Decl. ¶ 4.

7       Furthermore, the work for this first motion expedited EcoRights' ultimately successful second

8   summary judgment motion as EcoRights re-used some of the arguments and legal research in the first

9   motion in the second motion. *Id.* ¶ 5 Finally, as this was in part a deadline suit involving redress for

10  injury from FEMA's FOIA response delays, it was appropriate zealous advocacy to press a summary

11  judgment motion at an early stage to seek expeditious release of the documents in issue. *Id.* Even if the

12  first summary judgment motion did not directly result in a court ordered document release, drafting the

13  first motion was part of a reasonable, successful litigation strategy of presenting FEMA with a

14  dispositive motion that FEMA could not ignore, pursuing partially successful negotiation/mediation, and

15  ultimately pursuing litigated judgment, thus recoverable under the *Moreno* standard.

16  **B.  EcoRights Should Not Be Denied Recovery for Work on the Third Amended Complaint.**

17      FEMA is wrong that EcoRights' hours listed in Wall Decl. Exhibit D should be cut as time

18  inappropriately spent on EcoRights' Third Amended Complaint. *See* Opp. at 16-17. Exhibit D, too, is

19  inaccurate--it includes entries for time spent on evaluating FEMA's compliance with the January 2017

20  Settlement Agreement reached with Magistrate Laporte's assistance ("Magistrate Laporte Settlement

21  Agreement"). Sproul Reply Decl. ¶ 6. Moreover, FEMA is wrong that time spent on the Third Amended

22  Complaint should not be compensated. The evidence supports a reasonable inference that pursuing the

23  Third Amended Complaint catalyzed a faster FEMA response to the FOIA requests at issue in the Third

24  Amended Complaint, which was, as FEMA effectively acknowledges, faster than FEMA's response to

25  EcoRights' prior FOIA requests. FEMA is wrong that because it completed its response to FOIA 2017-

26  FEFO-01595 before EcoRights filed its proposed Third Amended Complaint, that the proposed

27  ───────────────

28  [2] Moreover, FEMA's argument includes math errors. FEMA's Opp. (at 16) contends that EcoRights spent 81.6 hours on its first summary judgment motion. But the Wall Decl. and accompanying Exhibit C only itemize 74.2 hours spent on this motion.

1    amended complaint could not have been the catalyst for this response. FEMA ignores that EcoRights

2    had informed FEMA that it was developing its Third Amended Complaint substantially before it filed its

3    request for leave to file the amended complaint and well before FEMA's response. Sproul Reply Decl. ¶

4    7. Furthermore, FEMA acknowledges that it did not provide its response to FOIA 2017-FEFO-01593

5    until 10 days after EcoRights sought leave to file its Third Amended Complaint. FEMA is wrong that its

6    communication to EcoRights that it was working on responding to this FOIA request clearly signaled

7    that the Third Amended Complaint was unnecessary and had no effect on FEMA. FEMA had sent

8    similar communications before, only to lag substantially in its responses. That FEMA performed much

9    better in responding to this request given the timing of the litigation strongly supports the reasonable

10    inference that the Third Amended Complaint added to FEMA's incentive to change its behavior--and

11    thus was part of a successful catalyst approach.

12    **C. Plaintiffs' Time on Its Summary Judgment Motions Should Not Be Reduced.**

13    FEMA is wrong that EcoRights' hours listed in Wall Decl. Exhibit E should be reduced 25%

14    because Exhibit E illustrates excessive time spent on EcoRights' summary judgment motions. *See* Opp.

15    at 16. Again, Exhibit E wrongly includes entries for time spent not spent on these motions--on various

16    other case management matters, the Second Amended Complaint, monitoring FEMA compliance with

17    the Magistrate Laporte Settlement Agreement, and preparing for and attending court ordered meet and

18    confers with opposing counsel. Sproul Reply Decl. ¶ 8.

19    Moreover, FEMA's apparent contention is wrong (Opp. at 16) that 25% of EcoRights' work on its

20    summary judgment motions should be constructively apportioned to its litigating FEMA's search cut-off

21    dates, declaratory relief concerning FEMA's administrative stage disclosures, its discovery request, and

22    its request for prospective injunctive relief. A very small portion of EcoRights' hours on its summary

23    judgment motions were spent on these issues, no more than about 5% maximum. Sproul Reply Decl. ¶

24    8. EcoRights spent the overwhelming majority of its summary judgment time fighting FEMA's

25    improper withholding documents--and ultimately prevailed entirely in this effort. *Id.*

26    **D. EcoRights' Time on Post-Summary Judgment Motion Work Should Not Be Reduced.**

27    FEMA is wrong that 25% of EcoRights' hours itemized in Wall Decl. Exhibit F should be cut as

28    wasted on claims related to FEMA's use of search cut-off dates and EcoRights' request for declaratory

relief in connection with FEMA's disclosures at the administrative stage, EcoRights' request for discovery, and its request for prospective injunctive relief. Exhibit F itemizes tasks required to review FEMA's document productions required by the Magistrate LaPorte Settlement Agreement and thus to develop EcoRights' showing that FEMA had failed to comply with the agreement, and to review FEMA's repeatedly bollixed *Vaughn* indices and document productions to develop successful arguments that these indices and document productions were flawed. FEMA has not contrarily identified even a single time entry in Exhibit F even remotely related to the use of search cut-off dates or the request for declaratory relief in connection with disclosures at the administrative stage, or that constitutes direct work on arguments concerning the need for discovery or prospective injunctive relief. Again, it is FEMA's *Moreno* burden to point out specific reasons why EcoRights' hours should be cut; generalized, unsupported statements that time records contain inappropriately billed hours do not suffice.

**E.  EcoRights Should Recover for Its Successful Opposition to FEMA's Stay Motions.**

FEMA is wrong that EcoRights should not recover for its opposition to FEMA's attempts to stay the Court's summary judgment order mandating that FEMA release all withheld documents. *See* Opp. at 12. This work led directly to this Court's Order (Dkt. 82) that prompted FEMA to *finally* provide the withheld documents. Thus, this necessary and successful work is compensable. FEMA's contention is meritless that EcoRights' only need for acquiring the documents when they did was to use them in another case pending before Judge Donato, which precludes fees for such work. One, agency failure to provide documents within FOIA's deadlines is *per se* an injury and any briefing that ends agency delay in producing documents of public interest thus *per se* succeeds at the sort of legitimate end that entitles citizens to attorney's fees under FOIA. *E.g.*, *Munger, Tolles & Olson LLP v. United States Dep't of Army*, No. 13-06890, 2014 WL 5781394, at *8 (C.D. Cal. Nov. 6, 2014) (delay in processing FOIA requests is *per se* injury); *Sierra Club v. United States EPA*, 75 F. Supp. 3d 1125, 1136-44 (N.D. Cal. 2014) (obtaining documents pertinent to public interest makes citizen eligible and entitled to fees). EcoRights has amply demonstrated the documents' public interest value both for its Endangered Species Act (ESA) citizen suit against FEMA and to advance EcoRights' efforts to notify other citizen organizations and the public of the documents' discussion of FEMA's harms to ESA-listed species. Lamport Decl. ¶¶ 4-5 (Dkt. 103). FEMA's argument that fees are not recoverable when a citizen group,

*inter alia*, intends to use the documents to advance public interest litigation is wrong. *See, e.g.*, *Sierra Club*, 75 F. Supp. 3d at 1144 (awarding attorney's fees to citizens intending to use information, *inter alia*, to advance public interest litigation); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-01130, 2017 U.S. Dist. LEXIS 29130, at **21-24 (N.D. Cal. Mar. 1, 2017) (same).

**F.  EcoRights' Hours Listed in Wall Decl. Ex. I Should Not Be Cut.**

FEMA is wrong that EcoRights should not recover for the time itemized in Wall Decl. Exhibit I because it was on documents never filed. *See* Opp. at 17. Contrary to FEMA's representation, some of this work did lead to court filings, including a motion for leave to amend the complaint and additional court filings pointing out FEMA's failure to follow through on meet and confer and Magistrate Laporte Settlement Agreement obligations. Sproul Reply Decl. ¶ 9. This work is compensable as it was important for convincing the Court to grant summary judgment to EcoRights, with a pointed rejection of FEMA's pleas for additional opportunity to correct its deficient *Vaughn* index: "Throughout this litigation the Court provided FEMA with numerous opportunities to address deficiencies in its three *Vaughn* Indices. While FEMA has requested more bites, the Court agrees with EcoRights' assessment that the apple is down to its core." *Ecological Rights Found.*, 2017 U.S. Dist. LEXIS 197451, at *26.

Additionally, FEMA's contention that EcoRights should not be compensated for some of this time because it relates to enforcement of the Magistrate Laporte Settlement Agreement is erroneous. This work was part of ongoing litigation, including the potential seeking of a court order requiring FEMA to comply with the Settlement Agreement. EcoRights expressly so threatened in its June 12, 2017 motion for leave to file its Third Amended Complaint (Dkt. 53). A series of court-ordered meet and confers and further reports to the Court ensued which ultimately led to FEMA producing more documents. *See* Plts. Motion for Fees at 4-9 (Dkt. 98). Thus, this is not a situation where EcoRights is seeking compensation for monitoring a settlement agreement in a case otherwise closed. To the extent that *Rosenfeld*, 904 F. Supp. 2d at 873-74, could be read as supporting that attorney's fees are not recoverable for monitoring compliance with a settlement agreement that closes out a case, the holding is inapplicable here. Moreover, *Rosenfeld* does not actually so hold, noting instead that there could be a reasonable argument (with Ninth Circuit resolution of that still undetermined) for attorney fee recovery for work spent monitoring settlement agreement compliance where that work led to obtaining additional documents

1    under FOIA. *Rosenfeld* denied attorney fee recovery because the plaintiff could make no such showing.

2    But EcoRights has shown that the work FEMA labels "monitoring" FEMA's Settlement Agreement

3    compliance led to more FEMA document release. Sproul Decl. ¶¶ 20-26 (Dkt. 102).

4    **G.  FEMA's "Administrative Phase" Contentions Are Partly Wrong.**

5    FEMA's contention that EcoRights should be denied all recovery for the entries listed in Wall Decl.

6    Exhibit K because this time was for the pursuit of its FOIA requests at the administrative level pre-

7    litigation is not accurate. *See* Opp. at 17-18. EcoRights agrees that some of the time listed in Exhibit K

8    should be cut, but not all. Some of the time in issue was for tasks appropriate for advancing this

9    litigation and thus is recoverable. EcoRights has exercised further billing judgment reductions

10   accordingly. Sproul Reply Decl. ¶ 10. EcoRights has further cut the 1.1 hours and accompanying

11   $570.90 in lodestar itemized in Wall Decl. Exhibit J as time accidentally billed. *Id*. ¶ 11.

12   **H.  EcoRights Should Not Be Denied Recovery for Hours Pursuing Attorney's Fees Recovery.**

13   FEMA's brief misleadingly implies that, as shown in Wall Decl. Exhibit L, Plaintiff has spent 343.4

14   hours on its motion for attorney's fees and costs. Exhibit L includes EcoRights' numerous hours

15   attempting to negotiate an attorney's fees and costs settlement and working out a briefing schedule for a

16   fees motion, not just the hours spent drafting its fees motion. FEMA also includes in Exhibit L time

17   spent on matters other than fee recovery. Sproul Reply Decl. ¶ 12.

18   FEMA's contentions that EcoRights' recovery should be entirely denied or cut by 75% for work on

19   fees recovery lack merit. It is well-settled that time spent recovering fees is itself recoverable. *See, e.g.,*

20   *Gonzalez,* 729 F.3d at 1210 (reversing denial of fees on fees recovery, rejecting that "problems" with

21   fees motion provides reason for denying all recovery for time on motion). Moreover, as in this case, fees

22   motions can be complex and heavily litigated, resulting in substantial "fees on fees." In such motions,

23   "plaintiffs have the burden of supporting the rates sought and time spent, and [are] required to review

24   pertinent legal authority, obtain declarations, gather and present time records, research current hourly

25   rates for Bay Area attorneys, and prepare the motion papers." *A.D. v. State Highway Patrol*, 2013 U.S.

26   Dist. LEXIS 169275, at **23-24 (N.D. Cal. Nov. 27, 2013) (awarding $120,970 in opening and

27   supplemental fees on fees); *see also Our Children's Earth Found.*, 2017 U.S. Dist. LEXIS 29130, at

28   **43-44 ("reviewing the time records, exercising billing judgment, and creating supporting declarations

will take significant time in each case no matter how experienced counsel is."); *U.S. v. City and County of S.F.,* 748 F. Supp. 1416, 1438 (N.D. Cal. 1990) (almost 600 hours on fee petition reasonable), *aff'd in part, remanded in part,* 976 F.2d 1536; *Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers*, 732 F. Supp. 1014, 1022 (N.D. Cal. 1989) (300 hours of fees on fees work reasonable given difficult issues concerning entitlement and fees amount). Like in *Golden Gate*, the EcoRights' fees motion has obviously raised numerous contested issues as underscored by FEMA's 23 page opposition brief and 484 pages of accompanying declaration and exhibits. If FEMA were correct in its claim of an "absence of any particularly complex or novel issues at play," it obviously would not have found warrant in filing such an extensive opposition. FEMA's attempt to drastically cut Plaintiff's fees and costs (foreshadowed by FEMA's obstreperous litigation approach on prior aspects of this case and by the fact that FEMA counsel's Mr. Wall took such an approach in *Our Children's Earth Found.*, where he also served as lead counsel. *See* Sproul Reply Decl. ¶ 13) has justifiably prompted EcoRights, like the *Golden Gate* plaintiff, to equally vigorous advocacy, and reasonably to incur more hours. Sproul Reply Decl. ¶ 14 (explaining in detail why it has taken EcoRights the hours incurred to prepare its fees motion). *Golden Gate's* conclusion is apt here: "Defendants are certainly entitled to litigate a fee petition with vigor, but they cannot be heard to complain if that vigorous advocacy requires plaintiffs to expend substantial amounts of time in response." 732 F. Supp. at 1022*; see also Highway Patrol*, 2013 U.S. Dist. LEXIS 169275, at *24; *see also, e.g., Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS,* 559 F. Supp. 2d 1055, 1061 (C.D. Cal. 2008) (having necessitated extensive FOIA litigation, government cannot complain about extent of fees generated in countering its opposition).[3]

   FEMA effectively urges the Court to arbitrarily cap EcoRights' fees on fees recovery to the sums awarded in other cases or arbitrarily cut EcoRights' fees on fees hours by the same percentages as other courts have cut such hours. While FEMA has found cases cutting fees on fees recoveries to much lower

---

[3] FEMA's further contention that EcoRights rushed to file its fee motion when it should have instead waited for FEMA to respond with a settlement counteroffer ignores that despite multiple requests, FEMA failed to provide a settlement counterproposal until February 16, 2018--the court deadline for filing the fees motion. Sproul Decl. ¶ 2 (Dkt. 102). As it was up against a court deadline with still no settlement offer response from FEMA, it was reasonable for EcoRights to file its fees motion. In any case, the point is merely academic as the parties were unable to reach a settlement and surely FEMA cannot sensibly now contend that it was inappropriate for EcoRights to file its fee motion.

levels than sought by EcoRights here, FEMA ignores numerous cases awarding much more significant fees on fees recoveries--such as those discussed above. Indeed, Mr. Sproul and his co-counsel were awarded about 349 hours of time on a fees motion in a case affirmed by the Ninth Circuit. Sproul Reply Decl ¶ 15. The variability in case outcomes in awarding fees on fees underscores the arbitrariness of relying on past case awards to evaluate the reasonableness of the fees sought here. Such an approach is inconsistent with the Court's *Moreno* duty to evaluate the reasonableness of the hours and the rates claimed for the fees on fees work based on the evidence *in this case*. While all the time that EcoRights' claimed for its fees on fees work in its opening motion was reasonably incurred given the vehemence of FEMA's anticipated opposition, EcoRights has on reply exercised further billing judgment to reduce its fees on fees recovery request. *Id.* ¶ 16. No further cuts should be imposed.[4]

## I.  EcoRights' Staffing Does Not Warrant FEMA's Suggested Dramatic Cuts in its Hours.

FEMA's Opp. (at 21) contends that Wall Decl. Exhibit M itemizes EcoRights' counsel spending 251.3 hours on "Coordination Activities," inherently excessive time for EcoRights' lawyers case task coordination. Once again, FEMA misleads as Exhibit M includes numerous entries unrelated to EcoRights' counsel's internal coordination communication, including: (1) *many hours of time spent communicating with FEMA's counsel* as required by court order and the Federal Rules of Civil Procedure (FEMA buries an acknowledgement of this in Opp. footnote 4); (2), time individual lawyers spent almost entirely working on their own on substantive tasks, such as reviewing FEMA's multiple flawed *Vaughn* indices or document productions to meet and confer over and brief these indices and productions' flaws; (3), time attending the mandatory ADR call with the Court's ADR office and FEMA counsel, time on miscellaneous communications with the Court, and paralegal time spent providing required court courtesy copies. In sum, EcoRights' counsel spent *far less* time conferring with each other than Wall Decl. Exhibit M and FEMA's Opp. implies. Sproul Reply Decl. ¶ 17.

---

[4] FEMA's related contention that EcoRights' fees on fees recovery should be reduced because it is too high compared to the fees generated on the merits is similarly wrong. Opp. at 18. *Golden Gate* cast aside a similar argument with reasoning apt here: "we reject the notion that [plaintiff's fees on fees being a large percentage of the overall recovery] mandates an automatic reduction of fees. As with the merits, the pertinent inquiry is what is a reasonable number of hours in light of the issues and tasks involved. Rigid comparisons with the amount of fees for the merits shed little light on the answer to this question." 732 F. Supp. at 1022; *see also Highway Patrol*, 2013 U.S. Dist. LEXIS 169275, at **23 (same).

FEMA is further wrong that EcoRights overbilled in this case by utilizing six attorneys. 1, two of EcoRights' attorneys, Ms. Rathje and Ms, Coyne, were junior attorneys assigned discrete tasks at lower billing rates. Their collective lodestar is only about 7% of the total billed—and rather than inflating EcoRights' fees, likely reduced them by having lawyers billing at lower rates perform tasks appropriate to their skills. 2, EcoRights' substitution of Mr. Evenson and then Mr. Hunt as lead counsel in this matter when Mr. Sproul could no longer continue in this role (due to a trial in another federal court case) did not inflate EcoRights' lodestar. In fact, because Mr. Evenson bills at a lower rate than Mr. Sproul, and Mr. Hunt bills at a substantially lower rate than both Mr. Sproul and Mr. Evenson, these substitutions likely led to a lower or at least comparable lodestar. 3, EcoRights' senior counsel delegated tasks to junior attorneys such as tasking Mr. Hudak with most of the work involved in reviewing FEMA's multiple document productions and *Vaughn* indices to develop arguments as to why they were inadequate. Rather than inflating EcoRights' lodestar, this practice likely led to a smaller lodestar than if senior counsel had done all this work themselves. For example, Mr. Hudak's 2017 rate (the year when he did the majority of his work) of $440 per hour is only 55% of Mr. Sproul's $800 per hour 2017 rate. Moreover, to ensure that Mr. Hudak's work was useful and efficient, senior counsel necessarily had to spend time giving him appropriate direction and of course to learn about his observations concerning the *Vaughn* indices and document production inadequacies--so as to be able to advocate on this issue. 3, FEMA cannot credibly argue that EcoRights could have litigated this case efficiently and thoroughly with a single lawyer. FEMA's counsel did not work alone on this litigation. *See, e.g*., Neuschaffer Decl. (Dkt. 46-1). An important part of the injury that EcoRights sought to remedy in this case was delay in providing documents responsive to EcoRights' FOIA requests. To remedy this injury, EcoRights' counsel legitimately sought to press this litigation expeditiously. To file briefing as promptly as possible required more than one attorney. Sproul Reply Decl. ¶ 18.

FEMA's related argument (Opp. at 22) that Mr. Hunt inflated EcoRights' lodestar by billing for reviewing docket materials presumably to get up to speed on the case is also wrong. FEMA relies on the Wall Decl. Exhibit O for this argument, but this exhibit merely lists all of Mr. Hunt's billing. In sum, FEMA has made no attempt to itemize any reasonable estimate of how much time Mr. Hunt billed for allegedly reviewing materials to get up to speed. It is FEMA's *Moreno* burden to develop such a

showing, not the Court's to search the voluminous time entries for possible examples of such

inappropriate billing. Moreover, at most a very small part of Mr. Hunt's time could be so characterized.[5]

FEMA ignores Mr. Hunt's declaration in support of EcoRights' attorney's fee motion that he was

already quite familiar with the documents and issues given his lead counsel role in EcoRights' related

ESA case against FEMA before Judge Donato and the relevance of the documents at issue in this case to

that ESA action. The total lodestar involved is trivial, and is offset by Mr. Hunt's lower billing rate.[6]

FEMA's argument (Opp. at 21-22) that *all* of EcoRights' time should be reduced by an additional

50% beyond the additional draconian cuts that FEMA discusses elsewhere further lacks any merit. In

combination with FEMA's other arguments, this would reduce EcoRights' compensable hours to little

more than a third of the time it actually took to perform the tasks in question. Cuts of this magnitude are

not supported by any cases that FEMA can point to or any reasoned argument that EcoRights should

have been able to complete these tasks in one third of the time that it actually took. Moreover, FEMA's

argument that all of EcoRights' otherwise awardable hours should be cut in half because EcoRights'

counsel spent allegedly excessive time communicating to each other about various case tasks is both

flawed and illogical. To begin, FEMA presents no credible showing of how many hours EcoRights'

counsel spent conferring. Wall Decl. Exhibit M catalogs 251.3 hours, but as pointed out above this

Exhibit M includes many hours that are unrelated to EcoRights' counsel's conferencing activities. But

even if Exhibit M were accurate, the 251.3 hours listed in the exhibit constitute a mere 18% of

EcoRights' 1366.9 hours in the case. Even assuming the meritless argument that EcoRights' counsel

should not have spent *any* time communicating with each other about division and performance of case

tasks, this would at most justify an 18%, not a 50% reduction in EcoRights' overall fees. In such

---

[5] In exercise of further billing judgment on reply, EcoRights has cut the two Hunt time entries that could
be characterized as for time "getting up to speed." Sproul Reply Declaration ¶ 19.

[6] Similarly trivial and/or unsupported is FEMA's argument that EcoRights' lodestar is inappropriately
inflated by hours billed by attorneys for reviewing documents that they did not revise themselves.
FEMA appears to argue that this is a systematic problem that significantly added to EcoRights' lodestar.
FEMA's Opp. (at 22) points to the Wall Decl., Exhibit P to support this argument, but this Exhibit P lists
only a handful of entries from one attorney, Ms. Rathje, amounting to 3.2 hours and a lodestar of $1200.
Senior counsel had Ms. Rathje look over these documents as an additional quality assurance/quality
control measure before they were filed, and thus this work was justified. However, to avoid taking up
additional court time with this trivia, EcoRights has on reply cut these 3.2 hours from its lodestar
recovery. Sproul Reply Decl. ¶ 20.

1    circumstance, a 50% across-the-board cut would be contrary to the Ninth Circuit's limits on such a

2    "meat-axe approach;" as noted, across-the-board cuts can only be made with "clear explanation" why

3    the cut is reasonably proportional to the overbilling found. *E.g.*, *Moreno*, 534 F.3d at 1111-13.

4        FEMA's additional contention that the hours documented in Wall Decl. Exhibit N constitute billing

5    for excessive staffing are both confused and erroneous. FEMA's Opp. (at 21) refers to these hours as

6    spent on "meet and confers." The Wall Decl. (at ¶ 17) differentially claims "Exhibit N is a compilation

7    of plaintiff's billing entries related to attendance *at the summary judgment hearing* and meet-and-

8    confers" (emphasis added). But in actuality, Exhibit N lists three types of counsel appearances: at the

9    court ordered settlement conference before Judge Laporte, the meet and confers, and a court ordered

10   conference in January 2018. Inclusion of the last of these three entries can only be an error: Drevet Hunt,

11   1/25/2018, for 0.25 hours, Re: Conference with Court re FEMA's compliance with MSJ order. Exhibit N

12   contains no documentation that EcoRights had an additional attorney appear at this conference and in

13   fact, Mr. Hunt was the sole attorney to appear for EcoRights. Furthermore, contrary to the Wall Decl.,

14   Exhibit N contains no entries related to the summary judgment hearing. In actuality, Mr. Sproul was the

15   only attorney to appear in person for EcoRights at the summary judgment hearing (Mr. Sproul consulted

16   Mr. Hudak by phone on discrete document production issues during the meet and confer ordered by the

17   Court during the summary judgment hearing). Sproul Reply Decl. ¶ 21. In any case, FEMA is wrong

18   that two attorneys appearing for EcoRights at the meet-and-confers represents excessive billing. It was

19   appropriate for EcoRights to have Mr. Hudak and senior counsel attend the meet-and-confers because

20   these meet-and-confers concerned problems in FEMA's document productions, *Vaughn* indices, and

21   FEMA claims that certain documents were FOIA exempt. Mr. Hudak's attendance was necessary

22   because he was the junior attorney assigned the laborious task of carefully reviewing the document

23   productions and comparing them to the *Vaughn* indices. Senior counsel's attendance was necessary as

24   the lawyers charged with advocating EcoRights' ultimate positions and deciding whether to agree to any

25   compromise accord with FEMA. *Id*.

26   **IV. EcoRights' Counsel's Rates Do Not Exceed Prevailing Market Rates.**

27       FEMA's contentions (Opp. at 20) that EcoRights' counsel's rates are unreasonably high lack merit.

28   FEMA ignores the numerous recent cases cited by EcoRights that well document current prevailing San

Francisco market rates. FEMA instead only cites hourly rates awarded in FOIA cases decided four to six years ago: *Sierra Club*, 75 F. Supp. 3d at 1152-53 (N.D. Cal. 2014); *Rosenfeld,* 904 F. Supp. 2d at 1001, 1004 (N.D. Cal. 2012); and *Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1054 (N.D. Cal. 2012). The Court should of course not look to the rates awarded by cases decided years ago to determine currently prevailing San Francisco market rates.

FEMA further argues that the Court should set EcoRights' counsel's rates in accord with rates awarded them by other courts. But again, FEMA repeats its error of pointing to outdated data in arguing what such rates would then be. FEMA cites the hourly rate awarded Mr. Sproul in the 2011 case *San Francisco Baykeeper v. West Bay Sanitary Dist.*, No. 09-5676, 2011 WL 6012936, at *9 (N.D. Cal. Dec. 1, 2011). FEMA ignores that several more recent cases have awarded Mr. Sproul significantly higher rates. Mr. Sproul was awarded $800/hour as a 2017 rate in *Pacificans For A Scenic Coast v. Cal. DOT*, No. 15-02090, 2017 U.S. Dist. LEXIS 199145, at **5-8 (N.D. Cal. Nov. 22, 2017) and by several San Francisco Superior Court orders. Sproul Decl. ¶¶ 94, 96. The $825/hour 2018 rate sought by Mr. Sproul is only a modest 3.2% increase over his $800/hour 2017 rate ordered by several court decisions. Such a small increase in Mr. Sproul's 2018 rate is easily justified; FEMA's Opp. acknowledges that Judge Orrick indicated that Mr. Sproul could claim a 10% increase in his 2016 rate compared to that awarded him in 2015. *Our Children's Earth Found.*, 2017 U.S. Dist. LEXIS 29130, at **30-31. It is meritless for FEMA to contend that the Court should set Mr. Sproul's current rates based on a single seven-year-old case while ignoring numerous recent cases awarding him significantly higher rates.

Moreover, FEMA does not argue what alternative hourly rates EcoRights' lawyers should be awarded. FEMA thus fails to meet its *Moreno* burden to challenge the rates claimed by EcoRights and to present the Court with reasoned basis for alternative rates. *See Chaudhry*, 751 F.3d at 1110-11 (opposing party has burden of presenting evidence to rebut plaintiff's rates showing; reversing District Court rate determination). Accordingly, EcoRights should be awarded the rates it claims.

## V. CONCLUSION

For the foregoing reasons, EcoRights respectfully request that the Court award EcoRights $720,612.84 in attorneys' fees and $1,728.79 in costs, for a total payment of $722,341.63.

Respectfully submitted,

1   Dated: April 26, 2018

2

3

*Christopher A. Sproul*

_____

Christopher Sproul, Attorney for Plaintiff