UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL EMERGENCY MANAGEMENT AGENCY, <br><br> Defendant. | Case No. 16-cv-05254-MEJ <br><br> **ORDER RE: MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Re: Dkt. No. 98 |

## INTRODUCTION

Plaintiff Ecological Rights Foundation (EcoRights) moves to recover $702,000 in attorneys' fees and $1,728.79 in costs it incurred litigating this Freedom of Information Act (FOIA) action. *See* Mot., Dkt. No. 98; Reply at 1 n.1 (providing updated figures), Dkt. No. 128; Reply C. Sproul Decl., Dkt. No. 128-2; May 31, 2018 FTR at 11:20 (fees at issue are $702,000). Defendant Federal Emergency Management Agency (FEMA) asks the Court to reduce the fee award to a "still significant $200,878.71." Opp'n at 22, Dkt. No. 124. FEMA does not oppose the request for costs. *Id.* at 22-23.

After EcoRights and FEMA attended an unsuccessful settlement conference regarding the fee dispute, the Motion was fully briefed and argued before this Court on May 31, 2018.

For the reasons set forth below, the Court **GRANTS IN PART** EcoRights' Motion, and awards EcoRights $316,000 in reasonable attorneys' fees and $1,728.79 in costs.

## LEGAL STANDARD

FOIA's fee-shifting provision grants courts discretion "to assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

1  "Substantially prevailed" means that a "complainant has obtained relief through either . . . a
2  judicial order, or an enforceable written agreement or consent decree; or . . . a voluntary or
3  unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.*
4  Fee and cost awards are not automatically awarded to a prevailing party under FOIA. *See Church*
5  *of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983). Plaintiffs "must
6  present convincing evidence" that they are both eligible for an award of attorney's fees and that
7  they are entitled to such an award. *Id.* at 489, 492; *see also Long v. U.S. I.R.S.*, 932 F.2d 1309,
8  1313 (9th Cir.1991) ("In order to receive an award of fees, a prevailing party in a FOIA action
9  must demonstrate both eligibility for and entitlement to such a recovery.").

To be eligible for an award, a party must show that "(1) the filing of the action could reasonably have been regarded as necessary to obtain the information," and that "(2) the filing of the action had a substantial causative effect on the delivery of the information." *Church of Scientology*, 700 F.2d at 489.

Once a court determines a party is eligible for an award, it exercises its "discretion to determine whether the plaintiff is entitled to fees." *Oregon Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009) (emphasis added); *see also Church of Scientology*, 700 F.2d at 489 (entitlement to an award of fees under FOIA is a separate analysis; a "determination of eligibility does not automatically entitle the plaintiff to attorney's fees."). In making this determination, courts consider "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Id.* at 492.

If a court determines that a party is both eligible and entitled to an award, that party "must submit [a] fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long*, 932 F.2d at 1313-14. If these two figures are reasonable in light of the difficulty of the case and the skill of the attorneys involved, there is a "strong presumption" that their product "represents a reasonable award." *Id.* at 1314. A court may revise upward or downward the resulting "lodestar figure" if "factors relating to the nature

1  and difficulty of the case overcome this strong presumption and indicate that such an adjustment is
2  necessary." *Id.* However, once a party is deemed both eligible and entitled to fees, "the award
3  must be given and the only room for discretion concerns the reasonableness of the amount
4  requested." *Id.* A district court awarding fees and costs "should provide a detailed account of
5  how it arrive[d] at appropriate figures for the number of hours reasonably expended and a
6  reasonable hourly rate." *Id.*

# DICUSSION[1]

FEMA concedes EcoRights is eligible to recover attorneys' fees, and that it is entitled to recover at least some of the fees it requests. However, FEMA argues EcoRights' fees are generally unreasonable because the matter was overstaffed, the requested hourly rates are excessive, and EcoRights billed excessively. FEMA further argues that EcoRights is not entitled to recover fees billed for specific tasks, including:

- Arguing issues upon which it did not prevail, including the search cut off dates, the adequacy of FEMA's Vaughn Index at the administrative stage, and forward-looking injunctive relief. *See* Opp'n at 7-8, 16.
- Preparing documents it eventually withdrew, such as its first motion for summary judgment and the claims asserted in the proposed third amended complaint.[2] *Id.* at 8-9, 16-17.
- Working on papers it did not file (a motion to enforce a court order or a motion to shorten time), on work related to other matters, or on work performed at the administrative stage of the FOIA process. *Id.* at 17.
- Opposing FEMA's motion to stay this Court's Order pending appeal. *Id.* at 12, 15.
- Working on the instant fees motion. *Id.* at 18-19.

---

[1] The Court previously summarized the long and somewhat tortuous course of this action in its Order granting EcoRights' Motion for Summary Judgment; it will not reproduce that background here. *See* Order re: Summ. J., Dkt. No. 74; *see also* Mot. at 3-12 (summarizing litigation).

[2] EcoRights moved for leave to file a third amended complaint (Dkt. No. 53), and subsequently withdrew that motion (Dkt. No. 64).

3

EcoRights in its Reply agreed to eliminate approximately $40,000 in fees for time spent on the administrative stage of the FOIA proceedings, "getting up to speed" on the case, quality control work, and for a portion of the fees requested in connection with the present Motion; EcoRights otherwise opposes FEMA's arguments to cut its fees request. *See* Reply at 9, 11, 13 ns. 5-6; *see also* Reply C. Sproul Decl.[3]

The Court agrees that EcoRights is eligible to recover attorneys' fees, and turns to FEMA's arguments regarding entitlement and reasonableness.

**A.     Entitlement to Fees**

Applying the *Church of Scientology* factors, the Court finds EcoRights is entitled to recover the reasonable attorneys' fees it incurred in securing the release of FEMA governments under FOIA.

In considering the public benefit factor, courts consider "the degree of dissemination and the likely public impact that might result from disclosure." *Church of Scientology*, 700 F.2d at 493. When the information is broadly disseminated to the public, this factor favors an award. *See, e.g.*, *Electronic Frontier Found. v. Office of Dir. of Nat'l Intelligence*, 2008 WL 2331959, at \*3 (N.D. Cal. June 4, 2008) (public benefit factor satisfied where plaintiff "immediately posted the requested information on its website" and "created press releases for public access"). Even where the degree of dissemination is limited, or where the level of public interest in the information is minimal, this factor may still favor an award "as long as there is a public benefit from the fact of . . . disclosure." *O'Neill, Lysaght & Sun v. D.E.A.*, 951 F. Supp. 1413, 1423 (C.D. Cal. 1996). This factor may still favor an award under these circumstances where the plaintiffs were environmental nonprofit groups whose purpose was "to oversee and enforce compliance with the [Clean Air Act]" and the requested information was "being used to inform [the plaintiffs'] ongoing oversight and enforcement efforts." *The Sierra Club v. United States Envtl. Prot. Agency*, 75 F. Supp. 3d 1125, 1143-44 (N.D. Cal. 2014).

---

[3] During the hearing on the Motion, EcoRights also conceded a February 14, 2018 time entry for M. Coyne included an error in the amount of $18,759, and abandoned its request for those fees. *See* May 31, 2018 FTR at 11:13, 11:16 ("The fees we are seeking should be reduced by $19,000").

4

EcoRights is a "'nonprofit public interest group[] organized [to] alert the public of issues concerning environmental and health risks.'" Mot. at 16 (quoting *Sierra Club*, 75 F. Supp. 3d at 1143); *see also* Lamport Decl. ¶¶ 2-3, Dkt. No. 103. It sought documents from FEMA through FOIA, and used the information obtained, "to advance its efforts to promote compliance with environmental laws intended to broadly benefit the public interest [in] environmental protection." Mot. at 16. It disseminated the information to its members, other organizations, the public, and the press by sharing documents or their summarized contents in messages, website postings, press releases, and interviews. Lamport Decl. ¶¶ 4-5. EcoRights' efforts to obtain records regarding FEMA's compliance with the Endangered Species Act benefited the public by bringing this information to light and by supporting EcoRights' efforts to enforce federal environmental laws. *Id.* ¶ 4. This factor favors awarding EcoRights its fees.

"The second and third factors are the commercial benefit to the complainant and the nature of the complainant's interest in the records sought. Courts regularly consider these factors together." *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2017 WL 783490, at *8 (N.D. Cal. Mar. 1, 2017) ("*Our Children's Earth II*") (internal quotation marks and citations omitted). Where the plaintiff "is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information." *Church of Scientology*, 700 F.2d at 494. Pursuant to the second and third factors, a court "should generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-oriented," but should not do so "if [the plaintiff's] interest was of a frivolous or purely commercial nature." *Long*, 932 F.2d at 1316. As discussed immediately above, EcoRights is a nonprofit organization that sought the requested documents in connection with its public-interest mission of educating the public about the government's compliance with environmental laws and enforcing those laws. That EcoRights also may have used the documents in litigation in a different case (Opp'n at 11-12), does not change the analysis. *See Our Children's Earth II*, 2017 WL 783490, at *8-9 (citing cases for the proposition that private litigants using FOIA to secure evidence in support of their private lawsuits should not recover fees "do not address the situation here, where non-profit environmental advocacy organizations bring suit

under FOIA as part of their ongoing efforts to shed light on how an agency is (or is not) protecting the environment, albeit with respect to a specific project. Moreover, while plaintiffs were undoubtedly motivated in some part to secure documents from NMFS in order to assist their litigation against Stanford, there was a significant and separate public benefit sought and secured by plaintiffs—shedding light on the actions of NMFS (as opposed to the actions of Stanford) in carrying out its agency duties and on its handling of plaintiffs' and others' FOIA requests."); *see also Sierra Club*, 75 F. Supp. 3d at 1144 (plaintiffs, an environmental organization dedicated to educating the public on health issues and a nonprofit that oversees compliance with environmental laws, had no commercial interest in documents requested under FOIA, even though they initiated private lawsuit after initiating their FOIA request). Even though EcoRights may have pursued the FOIA requests *in part* to help its litigation against FEMA (*see* May 11, 2017 FTR at 10:23 (articulating urgent need for documents because of pending litigation)), the fact remains that EcoRights, an environmental non-profit, used the documents to carry out its mission and educate its constituents and the public. This compels the conclusion that these two factors weigh in favor of EcoRights' entitlement to fees.

The fourth factor is "whether the government's withholding had a reasonable basis in law"; in other words, whether the government's actions appeared to have "a colorable basis in law" or instead appeared to be carried out "merely to avoid embarrassment or to frustrate the requester." *Church of Scientology*, 700 F.2d at 492, 492 n.6. The burden is on the government to demonstrate that its withholding was reasonable. *Sierra Club*, 75 F. Supp. 3d at 1145. FEMA argues that any delay in producing responsive documents and information in this matter should be attributed to confusion or bureaucratic difficulty in handling the FOIA requests, rather than obdurate behavior or bad faith. Opp'n at 12-14. The record in this case documents FEMA's repeated inability or unwillingness to timely comply with its obligations under FOIA, its agreements with EcoRights, and this Court's orders. For example, FEMA repeatedly failed to timely respond to EcoRights' FOIA requests within the statutory timeframe or produce documents by Court-ordered deadlines. Order re: Summ. J. at 17-18; Status Order, Dkt. No. 87. As another example, despite being granted leave to amend them, FEMA's corrected Vaughn Indices were deficient and did not allow

6

either EcoRights or the Court to evaluate the validity of the exemptions claimed by FEMA. *See* May 11, 2017 FTR at 10:22-23 (FEMA's acknowledgement its first Vaughn Index was not as helpful or detailed as it could have been, and asking for opportunity to provide amended index); May 11, 2017 Order at ¶ 4, Dkt. No. 50; Order re: Summ. J. at 2-4 (summarizing deficiencies in FEMA's three Vaughn indices); *id.* at 12-13, 15. The Court does not impute bad faith to the government, but cannot find that the repeated missed deadlines, incomplete productions, and failures to obey Court orders had a colorable basis in law. FEMA cannot now complain that EcoRights' attorneys request to be compensated for the time they spent attempting, frequently in vain, to have FEMA comply with its statutory and Court-ordered obligations. This factor also weighs in favor of fees.

To summarize, all the *Church of Scientology* factors weigh in favor of awarding fees to EcoRights in this action.

**B.  Reasonableness of Fees**

Having found EcoRights is entitled to fees, the Court considers the reasonableness of its request.

1. Applicable Standard

"[A] 'reasonable' number of hours equals the number of hours which could reasonably have been billed to a private client." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal quotation marks and edits omitted). "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). Courts may exclude such hours in one of two ways. *Gonzalez*, 729 F.3d at 1203. First, courts may exclude unreasonable hours after "conduct[ing] an hour-by-hour analysis of the fee request[.]'" *Id.* (internal quotation marks omitted). Second, courts "faced with a massive fee application" may "make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application." *Id.* (internal quotation marks and brackets omitted); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not,

and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). Nevertheless, a district court must explain how it came up with the amount of an attorneys' fees award. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The explanation need not be elaborate, but it must be comprehensible. . . Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected." (citations omitted)).

2. FEMA's Claims- or Task-Based Arguments

FEMA argues EcoRights should not recover for work performed in connection with claims it "lost" such as the search cut-off date or the argument FEMA should have provided more complete Vaughn indices at the administrative stage. *See* Opp'n at 7-8 (citing *Hajro v. U.S. CIS*, 811 F.3d 1086, 1107 (9th Cir. 2015), and *Oregon Nat. Desert Ass'n*, 572 F.3d at 612).[4] Fees may

---

[4] In *Hajro*, the claimant asserted nine factually and legally distinct causes of action: two actions by CIS violated a prior settlement agreement; the timing of CIS' FOIA responses violated FOIA; CIS failed to notify the claimant that it could not timely process his request; CIS had a pattern and practice of failing to comply with FOIA timing requirements; CIS unlawfully withheld information; withholding of nonexempt material violated claimant's due process rights because it interfered with his ability to appeal his naturalization denial and violated his right to a fair hearing; CIS' policy violated Fifth Amendment guarantee of Equal Protection; and adoption of policy without notice and comment rulemaking procedure violated the APA. 811 F.3d at 1094-95. The claims at issue in *Hajro* thus were based on distinct factual and legal issues. The district court found for the claimant on all but one of the claims; on appeal, the Ninth Circuit reversed the judgment on three of the claims, and remanded with instructions, including re-computation of the attorneys' fees.

In *Oregon Natural Desert Ass'n*, the district court granted summary judgment to the FOIA claimant on three out of four claims. 572 F.3d at 616. Although the government had produced documents pursuant to claimant's first two claims before the district court granted summary judgment to the claimant, the district court reasoned the claimant was still entitled to fees under a catalyst theory. *Id.* (citing *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)). The Ninth Circuit reversed, finding the catalyst theory was unavailable as a basis for recovering attorneys' fees against the government after the 2007 amendments to FOIA. *Id.* It held that the attorneys' fees the district court awarded pursuant to the *Buckhannon* rule on the claimant's first two claims also must be reversed. The district court had

8

be reduced where counsel spent time on unsuccessful claims, but generally only if the unsuccessful claims were also unrelated to the successful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983) (where counsel works on cases involving a common core of facts or related legal theories, in which much of counsel's time will be devoted to litigation as a whole, hours may not be amenable to division on a claim by claim basis). "[C]laims are unrelated when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised. But, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Community Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (internal citations and quotation marks omitted) (affirming district court's conclusion that all initial claims had similar factual bases, were based on similar legal theories, and targeted single course of conduct by defendant).

The Court cannot find the claims EcoRights lost or abandoned "intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted [by this Court] is premised." *See* Second Am. Compl., Dkt. No. 43. Each of the claims EcoRights asserted in the SAC sought to remedy the same course of conduct: FEMA's failure to timely and fully comply with its obligations under FOIA. While FEMA contends EcoRights should not recover fees for its request for forward-looking injunctive relief, that claim was not "distinctly different" from the claims upon which EcoRights succeeded; it merely sought different type of relief for FEMA's FOIA violations. EcoRights did lose its claim based on the use of search cut off, and the Court did not accept EcoRights' argument that FEMA should have made more fulsome disclosures regarding exemptions at the administrative stage.

---

also granted attorneys' fees to the claimant on his fourth claim for injunctive relief under FOIA; the Ninth Circuit affirmed that ruling because the claimant obtained that relief when the district court ruled in its favor on the merits and thus had "substantially prevailed" on the claim. The Ninth Circuit remanded for recomputation of fees because the claimant was eligible for attorneys' fees as to only one of the claims. *Id.*

9

*See* Order re: Summ. J. But those claims also were based on the same factual underpinnings: FEMA's failure to timely and adequately produce documents regarding the ESA pursuant to FOIA.[5] EcoRights squarely prevailed on its core claims and achieved compelling results in this action: rejection of FEMA's exemption claims and production of an additional 2,000 pages. EcoRights thus is entitled to a fully compensatory award to the extent the fees billed on tasks that supported that result. *See generally Our Children's Earth Foundation v. EPA*, 2016 WL 1165214, at *5-6 (N.D. Cal. Mar. 25, 2016) ("*Our Children's Earth I*"); *Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995) (concluding claims were not "unrelated" because they arose from the same basic facts and the same basic course of conduct).

EcoRights seeks to recover fees incurred in drafting documents it ultimately did not file, but the Court cannot find that EcoRights work to draft these documents was not necessary to the case, or that preparing these documents was not necessary to force FEMA to abide by its discovery obligations. For example, while EcoRights withdrew its first summary judgment motion, EcoRights used that motion to guide settlement conference negotiations and obtain a partial settlement of its claims. *See* Reply C. Sproul Decl. ¶ 4. Similarly, while EcoRights never filed its Third Amended Complaint, the Court cannot find that FEMA's knowledge of the document and EcoRights' intention to file it, did not lead FEMA to respond to the FOIA request. *Id.* ¶¶ 6-7.

FEMA also argues EcoRights should not be compensated for opposing FEMA's motion to stay because the opposition "relates to plaintiff's desire to use the unredacted documents obtained from FEMA in the ESA lawsuits before Judge Donato." Opp'n at 12. FEMA offers no legal support for this position, and the Court finds EcoRights' opposition to the stay was necessary and reasonable to finally obtain the information FEMA had been withholding for approximately two years.

---

[5] Assuming these claims are sufficiently factually and legally distinct to warrant reducing a fee award, EcoRights counsel declares "a very small portion of EcoRights hours on its summary judgment motions were spent on these issues, no more than about 5% maximum." Reply C. Sproul Decl. ¶ 8. To the extent the award must be reduced to reflect this small portion of the fees, that reduction would be captured by the adjustment reflected below.

10

United States District Court
Northern District of California

The Court thus rejects FEMA's request to cut fees connected to particular tasks, arguments, or documents. EcoRights prevailed on its core claims. This merits a fully compensatory award of reasonable fees. *See Hensley*, 461 U.S. at 435. The Court now addresses the reasonableness of the fees sought.

### 3. General Reasonableness

FEMA argues that EcoRights' request reflects overstaffing, unreasonably high hourly rates and excessive and cumulative billing. Opp'n at 15-16, 20-22. Based on its overall sense of the suit and the following three examples, FEMA's arguments about the reasonableness of EcoRights' fees are well taken.

#### i. CMC Statement

FEMA contends EcoRights seeks to recover $12,066 for 25.6 hours spent on the initial case management statement. *See* Opp'n at 21 (citing Wall Decl., Ex. L.1, Dkt. No. 124-1). EcoRights does not dispute the accuracy of this figure, nor explain why it was reasonable to spend this amount of time on a form document, in a case concerning an area of law with which EcoRights' attorneys are familiar. *See* Reply; Sproul Decl. ¶¶ 6-11, Dkt. No. 102. The Court cannot find that this was reasonable, and instead finds that a reasonable client would not have paid for even half of those hours at the rate counsel charged. *See Fleming v. Kemper Nat. Servs., Inc.*, 373 F. Supp. 2d 1000, 1008 (N.D. Cal. 2005) ("Although work on the case management conference statement may reflect 'behind the scenes' disputes that do not appear in the final product, neither party has adequately explained how counsel spent a combined total of more than 12 hours preparing the relatively straightforward case management statement. Given the absence of an explanation, the Court finds the 7.85 hours billed by plaintiff on this matter to be excessive, and finds that no more than 5 hours of time reasonably could have been spent preparing the case management statement."); *Bd. of Trustees in their capacities as Trustees of Laborers Health & Welfare Tr. Fund for N. California v. Geotech Const., Inc.*, 2008 WL 3496474, at *3 (N.D. Cal. July 18, 2008) ("Nor does 3.5 hours to draft a boilerplate case management statement seem reasonable.").

11

ii. Motions for Summary Judgment

EcoRights also spent more than $150,000 in preparing two motions for summary judgment in this matter. *See* Wall Decl., Ex. B ($32,500 on first (withdrawn) MSJ; $120,500 on second MSJ). EcoRights argues these figures are inaccurate but does not offer its own calculations (Reply at 5); it also argues that "the work for this first motion expedited EcoRights' ultimately successful second summary judgment motion as EcoRights re-used some of the arguments and legal research in the first motion in the second motion" (*id.* at 5 (citing Reply C. Sproul Decl. ¶ 5)). The summary judgment motions addressed issues that were relatively legally straightforward. Moreover, EcoRights' counsel already had researched the issues in the second motion for summary judgment and briefed them not only in connection with the first, withdrawn motion in this case, but in connection with a motion for summary judgment EcoRights filed in another case last year. *See Our Children's Earth*, N.D. Cal. Case No. 14-cv-1130, Dkt. No. 32 (Mot. for Summ. J.). For instance, of the 47 cases EcoRights cited in its second motion for summary judgment, it had relied on all but two of them in its first, withdrawn motion. *Compare* Second Mot. at 3-6, Dkt. No. 42, *with* First Motion at 3-4, Dkt. No. 26. Moreover, EcoRights had cited 28 of those cases in the motion for summary judgment its counsel filed in *Our Children's Earth Foundation*. *Compare* Second Mot. at 3-6, *with Our Children's Earth Mot.* at 3-6.

EcoRights' first and second summary judgment motions were largely substantively identical in content; the only difference in the table of contents for the two motions is a factual discussion of FEMA's response to EcoRights' third FOIA request and of the parties' partial settlement agreement. *Compare* Second Mot. at 2, *with* First Motion at 2.

The requested $120,500 for fees incurred in connection with the second motion of course includes fees for reviewing the Opposition and drafting the Reply, and arguing before this Court; however, under these circumstances, the Court cannot find that billing anywhere close to $120,500 for the Second Motion was reasonable.

This is all the more so given the significant hourly rate charged by EcoRights' counsel, a rate they justify by their expertise in environmental law and their previous experience litigating

12

FOIA cases. *See, e.g.*, Sproul Decl. ¶¶ 4-14[6]; Hudak Decl. ¶¶ 2-8, Dkt. No. 111; Hunt Decl. ¶¶ 2-12, Dkt. No. 101-6; Coyne Decl. ¶ 2, Dkt. No. 99; Rathje Decl. ¶¶ 2-6, Dkt. No. 110.

Again, the Court cannot find that this was reasonable. Given the $30,000 counsel already had incurred in drafting the substantively identical First Motion, the Court finds a reasonable client would not have paid for even half of the hours that counsel charged at the rates charged. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 950 (9th Cir. 2007) ("[T]he district court did not err in reducing the requested 13 hours for preparation of Welch's motion for attorney's fees by 9 hours because the motion's language was 'boilerplate.' A reduction in hours is appropriate if the court reasonably concludes that preparation of a motion 'demanded little of counsel's time.' The district court found that much of the language in Welch's motion for fees was recycled from submissions to other courts.") (quoting *Webb v. Sloan*, 330 F.3d 1158, 1170 (9th Cir. 2003)).

### iii. Fees Motion

EcoRights seeks to recover more than $200,000 for fees incurred in connection with the Fees Motion (including drafting the briefs, conferring with FEMA, preparing for and attending the settlement conference with Judge Kim). *See* Wall Decl., Ex. L (identifying 343.4 hours in FEMA's billing records related to Fees Motion, totaling $181,043.05 through filing of the Motion); Reply C. Sproul Suppl. Dec. ¶ 12 (Exhibit L includes time spent on negotiation, settlement, working out briefing schedule for fees motion, not just drafting of fees motion; also one entry for *0.25* hours included not only time spent on fees issue, but "time spent on the Court's ordered status report"); *id.* ¶ 16 (exercising further billing judgment to reduce fees on fees); *id.* ¶ 22 (EcoRights incurred more than an additional $100,000 in attorneys' fees after filing opening

---

[6] *Id.* ¶ 6 ("I have exclusively represented non-profit environmental organizations and individuals seeking to advance environmental protection through judicial litigation and administrative advocacy under the major environmental laws, . . . including the Freedom of Information Act ('FOIA')); *id.* ¶ 7 ("I have also represented such clients in various suits brought under FOIA against federal agencies. . . . My clients and I frequently utilize FOIA to acquire the documents necessary for our public interest advocacy work."); *id.* ¶ 9 ("[M]any of these cases [Mr. Sproul brought on behalf of clients] have established important precedent in environmental law or under FOIA."); *id.* ¶ 11 ("While at EPA, one of my areas of responsibility was to advise EPA officials concerning compliance with FOIA and to assist with EPA responses to FOIA requests.").

13

brief on Motion).[7] During the hearing on the Motion, counsel for EcoRights acknowledged it spent over 300 hours on the recovery of fees, including time spent trying to mediate a solution, prepare mediation statements, and attend a settlement conference. *See* May 31, 2018 FTR at 10:50-51. FEMA represented that, based on its review of the billing records, EcoRights billed approximately 60 hours on fee issues after FEMA filed its Opposition, and had spent approximately 330 hours on fee issues before that, for a total of 390 hours. May 31, 2018 FTR at 10:55.

On January 25, 2018, the parties appeared for a telephonic status conference before the undersigned. *See* Jan. 25, 2018 FTR at 10:31. EcoRights explained it had provided a fee demand to FEMA regarding the fees and costs issues, and asked the Court to direct the parties to meet and confer in person regarding those issues before EcoRights were to file a fees motion. *Id.* at 10:37-38. FEMA explained it required authority from the Agency to settle EcoRight's "significant" fee demand, and that this would take "some time" to obtain. *Id.* at 10:38-10:39; *see also id.* at 10:40-41 (explaining FEMA requires five levels of authority to approve demands as large as EcoRights', and based on experience, estimating it could take 3-4 months for FEMA to go through these levels). FEMA counsel suggested the parties continue to discuss the matter informally, and that it would be happy to attend a settlement conference with a magistrate judge. *Id.* at 10:39. FEMA counsel was "hopeful" he could make meaningful progress in next month and make a counter-offer; EcoRights could then decide whether to file a fees motion. *Id.* at 10:41-42, 10:44. The Court scheduled a status conference in 30 days "to determine whether we're going to have a fees motion or whether I'm going to send you to a settlement conference." *Id.* at 10:42. EcoRights expressed frustration at the timeline proposed by FEMA and the Court and asked the Court to clarify what was being ordered. *Id.* at 10:45. The Court stated, on the record: "Within 30 days, [counsel for FEMA] is directed to pursue a counter-offer to your demand from the Government and get authority for that. . . . I'll keep a leash on it. It's not going to be as short as you want. . . . But honestly, having done these cases before, it doesn't matter what I order, they're going to go

---

[7] EcoRight challenges FEMA's calculation, but does not offer one of its own.

14

through their channels. . . ." *Id.* The Court set a further telephonic status conference for February 22, 2018. *See* Minute Entry, Dkt. No. 94.

EcoRights filed its Fees Motion on February 16, 2018 – six days before the conference that would determine *whether* the parties would proceed by motion or by settlement conference. *See* Mot. EcoRights contends it was forced to file its Motion for Attorneys' Fees on February 16, 2018 because of the Court's deadline for doing so. *See* Reply at 10 n.3. This argument borders on the disingenuous. On January 23, 2018, the Court granted the parties' stipulation and ordered EcoRights to file its Fees Motion by February 16 (Dkt. No. 91); but it subsequently scheduled the February 22 status conference to determine *how* the parties would proceed – by motion or settlement conference. In light of the discussion during the January 25, 2018 status conference, EcoRights should have been well-aware that the Court would continue any deadline for filing a fees motion. Rather than seek an extension or clarification, EcoRights chose to spend hundreds of hours drafting the Motion. In deciding to forge ahead and incur these significant fees, EcoRights increased the amount of attorneys' fees at issue, which made settlement more difficult to reach. The Court cannot find a reasonable paying, private client would have authorized this approach, but instead would have requested counsel stand down and stop accruing fees until the Court and the parties determined whether the matter would proceed to mediation or by motion.

Nor can the Court conclude the hours EcoRights expended on the Motion were otherwise reasonable.[8] For example, EcoRights represents it spent "many" hours researching the prevailing attorney rates in this District by reviewing unpublished decisions on PACER and Courtlink, and

---

[8] EcoRights does not break out the fees it is claiming for "fees on fees" but in a demonstrative FEMA handed to the Court on May 31, 2018, to which EcoRights objected on the basis of unfair surprise, FEMA contends the "fees on fees" incurred by EcoRights through the Reply amount to $214,266, or almost 30% of the total $702,000 sought. The Court has not parsed through EcoRights' voluminous entries to confirm FEMA's calculations, and it sustains EcoRights' objection to the introduction of the demonstrative as evidence in the record. EcoRights admitted at the May 31 hearing that it has spent over 300 hours in connection with the Motion and associated proceedings. *See supra.* EcoRights claims a total of 1,367 hours. Reply C. Sproul Decl., Ex. 1; Coyne Suppl. Decl. Ex. 1 (48.75 hour error on Feb. 14, 2018). Based on these figures, the Court can estimate that the fees on fees hours account for at least 22 percent of the total hours (as revised on Reply and at the hearing) that EcoRights requests through this Motion. This is a significant portion of the total fees sought in this matter.

15

acknowledges that this time "may seem like an excessive amount." Reply C. Sproul Decl. ¶ 14; *see also* Hunt Decl. ¶¶ 33-44 (describing careful analysis performed and cases considered in selecting appropriate hourly rate); Hudak Decl. ¶¶ 9-43 (same). The Court appreciates that EcoRights wanted to provide additional comparative rates given Judge Orrick's position that reasonable hourly rates should be based on FOIA cases and not general civil litigation (Hudak Decl. ¶ 42), but EcoRights' submissions are – frankly – overkill. C. Hudak alone billed more than 11 hours conducting legal (not factual) research for the Fees Motion; M. Coyne billed almost 5 hours researching fee awards for attorneys with 1-3 years of experience; D. Edberg spent more than 5 hours researching prevailing attorney rates. *See* Hudak Suppl. Decl., Ex. 1 (billable records after EcoRights exercised additional billing judgment), Dkt. No. 128-4 (same); Reply Coyne Decl., Ex. 1, Dkt. No. 128-16 (same); Reply Edberg Decl., Ex. 1, Dkt. No. 128-18 (same). The Court cannot find that a reasonable client would have paid for more than 5 hours of time pursuing this avenue of research, as numerous cases in this District (including by this Court) have found reasonable rates for attorneys in the district matching the rates sought by EcoRights here. *See, e.g., Ruch v. AM Retail Grp., Inc.*, 2016 WL 5462451, at *10-11 (N.D. Cal. Sept. 28, 2016) (citing cases); *Walsh v. CorePower Yoga LLC*, 2017 WL 4390168, at *10 (N.D. Cal. Oct. 3, 2017) (which Mr. Hunt cites (Hunt Decl. ¶ 42)). The hours spent are even less reasonable in light of the fact that Mr. Hudak conducted very similar research to support a fees application in 2017, less than one year prior to EcoRights' filing of the instant Motion. *See Our Children's Earth II*, 2017 WL 783490, at *11 ("Plaintiffs undertook a 'market rate' analysis and seek compensation for that research from this case. The analysis was performed primarily by billing attorney Christopher Hudak. Hudak reviewed fee awards in a number of different types of cases from the Northern District, including class action litigation (antitrust, wage and hour, consumer protection, and securities) as well as one anti-SLAPP case and one FOIA case."). Mr. Sproul also declares that, in the course of drafting fees motion in three other cases in the past three years (*Our Children's Earth I* and *II*, and *Pacificans for a Scenic Coast v. Cal. DOT*, N.D. Cal. Case No. 15-2090), he has "necessarily acquired expertise and extensive data concerning the prevailing hourly rates for attorneys in the San Francisco Bay Area legal market." C. Sproul Decl. ¶ 14, Dkt. No. 102. It is

16

reasonable for EcoRights to update the research it performed in connection with those recent cases; however, EcoRights does not explain why this alone would require 21 hours of research. And the 21 hours described above also do not include the dozens of hours EcoRights counsel spent communicating about this issue, or drafting, editing and revising attorney declarations in support of the Motion. *See id.*; *see also* Reply C. Sproul Decl.; Hunt Decl.

The Court cannot find that a reasonable client would have authorized counsel to forge ahead with incurring significant fees in drafting a motion before the Court determined whether the parties would proceed by briefing or by settlement; nor can the Court find that a reasonable client would have paid counsel to spend more than 300 hours on a fee application, especially at the hourly rates charged by counsel in this matter, and the amount of prior research that counsel already had performed on this topic. *Cf. Pollinator Stewardship Council v. U.S. E.P.A.*, 2017 WL 3096105, at *14 (9th Cir. 2017) (declining to reduce EAJA fee request for 85 hours petitioners spent on fee application in "complex and important appeal" of EPA decision to register pesticide petitioners claimed was harmful to bees, where petitioners requested a total of 884 hours for the case).

**C.  Lodestar**

The Court finds that counsel could not have billed a private client $702,000 for what was essentially a contentious, hard-fought discovery dispute, which did not involve depositions, experts, or particularly complex issues. *See Gonzalez*, 729 F.3d at 1202; *see also Our Children's Earth II*, 2017 WL 783490, at *11 ("I also do not find plaintiffs' focus—as support for their requested hourly rates in these cases—on large scale, complex class action cases to be persuasive. That is not to say that FOIA cases cannot be complex. But the high rates awarded for complex class action cases can be explained in large part by the necessity in those cases for plaintiffs' counsel to incur significant cost outlays (for experts, document review systems, travel, depositions, etc.) as well as attorney time (to review hundreds of thousands of documents, numerous depositions, etc.) which are not typically required in FOIA cases and were not required in these cases."). The Court finds EcoRights' counsel staffed the matter robustly with six attorneys, which necessarily increased fees for communications and coordination of activities;

17

requests a very high hourly rate[9]; prematurely incurred hundreds of thousands of dollars in preparing and filing the Fees Motion, which increased the overall fees at issue and made settlement of the fees issue less likely; and spent excessive hours drafting documents such as the initial case management conference statement, motions for summary judgment that recycled previously-briefed arguments, and the instant Motion.

Extrapolating counsel's billing on the CMC statement, Second Summary Judgment Motion, and Fees Motion, and based on the Court's overall experience with the case and its review of the billing records, the Court finds the claimed hours are excessive and that a 55% across-the-board reduction is appropriate. The resulting $316,000 in fees is a considerable award, which reflects the fact that FEMA's ability or willingness to timely comply with its obligations under FEMA significantly increased EcoRights' fees in this matter.

**D.  Costs**

EcoRights seeks $1,728 in costs. FEMA does not oppose the request. The Court awards EcoRights the full amount it seeks in costs.

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART EcoRights' Motion, and awards $316,000 in fees and $1,728 in costs to EcoRights.

**IT IS SO ORDERED.**

Dated: June 14, 2018

MARIA-ELENA JAMES
United States Magistrate Judge

---

[9] Based on the year in which work was performed, C. Sproul requests an hourly rate between $775 and $825; F. Evanson requests an hourly rate between $675 and $735; and D. Hunt between $610 and $655. Reply C. Sproul Decl., Ex. 1. More junior attorneys billed between $350 and $470 per hour. *Id.*

18